UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:05-CV-01290 (RBW) |
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO | ) ) ) ) ) | |
| and | ) ) | |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF AMERICAN POSTAL WORKERS UNION, AFL-CIO, IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

The American Postal Workers Union, AFL-CIO ("the APWU"), asks the Court to grant it summary judgment against the United States Postal Service and the National Postal Mail Handlers Union, a Division of the Laborers' International Union, AFL-CIO ("the MHU"). The material facts are not in contention. A dispute over whether employees represented by the APWU or the MHU should perform certain work was heard before arbitrator Eric J. Schmertz, who issued an award ("the Award"). All parties agree that the three parties' mutual agreements governing work jurisdiction disputes – the memorandum dated April 16, 1992, entitled "Memorandum of Understanding" pertaining to "Regional

1

Instruction 399[1] - Dispute Resolution Procedures" ("the MOU on Dispute Resolution Procedures") – specifies the procedures for resolving jurisdictional disputes among the parties, and defines arbitrator Schmertz's authority.

The Award states: "The grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the [Mail Handlers'] collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum." The only issue for the Court to decide is whether the Award exceeded the arbitrator's authority under the MOU on Dispute Resolution Procedures when the arbitrator referred the dispute before him to the grievance procedure contained in the bilateral collective bargaining agreement between the MHU and the Postal Service.

The arbitrator's decision that the Mail Handlers' dispute was not arbitrable was correct (but not for the reason he gave), but his additional order referring the dispute to the grievance-arbitration process under the Mail Handler's collective bargaining agreement with the Postal Service – to which the APWU is not a party – was impermissible under the MOU on Dispute Resolution Procedures because those procedures and the arbitration forum created by it are the exclusive procedures and forum for deciding jurisdictional disputes.

The Postal Service, it should be noted, agrees with the APWU

---

[1] The parties generally refer to Regional Instruction 399 as "RI-399."

2

that the Award was beyond the arbitrator's authority.  The Postal
Service put its case succinctly in Defense A in its answer to the
MHU cross-claim as follows (Docket No. 14):

> Enforcement of the Award of Arbitrator Schmertz dated
> March 23, 2005 would be improper because the Award
> relied on an invalid bilateral agreement dated November
> 24, 1992, that was inconsistent with the Dispute
> Resolution Procedures set forth in the parties'
> tripartite agreement, which are the exclusive
> procedures for resolving jurisdictional disputes among
> the parties.

MATERIAL FACTS

Annexed to the motion is the Michael M. Gallagher, a
National Business Agent ("NBA") in the Clerk Division of the APWU
("Gallagher Dec.").  APWU Exh. 1.  He is a National Business
Agent in the Clerk Division of the APWU.  He has held this
position for approximately 17 years.  Among his duties, he serves
as the APWU representative on the National Dispute Resolution
Committee ("NDRC"), which is made up of representatives of the
Postal Service, the MHU, and the APWU.  He has been the APWU's
representative on the NDRC since November 2001.  Prior to that,
he was the APWU's Eastern Regional Dispute Resolution Committee
representative since its inception in 1992.  He has been a
advocate in cases involving jurisdictional disputes involving the
APWU and the MHU since 1987.  He is familiar with the process of
resolving work jurisdiction disputes between members of the clerk
craft represented by the APWU and members of the mail handler
craft represented by the MHU.  Gallagher Dec. ¶ 1.

The issue of which craft – the clerk craft or the mail

3

handler craft – is to be assigned to carry out various functions within the Postal Service is governed by RI-399.  The MHU and the APWU each has its own collective bargaining agreement with the Postal Service.  Neither union is a party to the other union's collective bargaining agreement.  The grievance procedure is likewise separate under each collective bargaining agreement. Id. ¶ 2.

On April 16, 1992, the parties entered into a agreement entitled "Memorandum of Understanding" pertaining to "Regional Instruction 399 - Dispute Resolution Procedures" ("the MOU on Dispute Resolution Procedures").  Id. ¶ 3, Exh. 1.  Prior to this agreement, each union would file its own grievance under its own collective bargaining agreement if it believed that the Postal Service mistakenly assigned functions to the other craft.  These grievances would be heard by arbitrators selected by the Postal Service and the union in question.  These arbitrators were not selected by the other union.  For example, if the APWU challenged an assignment to the mail handler craft represented by the MHU, it would file a grievance which, if it were not resolved in the grievance procedure, would be heard by an arbitrator from the APWU-Postal Service panel of arbitrators.  The MHU might then seek to intervene in the arbitration before the APWU-Postal Service-selected arbitrator.  Some arbitrators allowed intervention and some did not.  If the grievance was sustained without the MHU's intervention, the MHU would typically file its own grievance, which would be heard by a MHU-Postal Service-

4

selected arbitrator.  In one instance of which I am aware, a MHU arbitrator issued an award which contradicted a prior APWU arbitrator award.  Gallagher Dec. ¶ 3.

The MHU and the Postal Service sued the APWU to compel tripartite arbitration.  The court ruled in favor of the MHU and the Postal Service.  After this decision, the parties began negotiations which led to a number of agreements, including the MOU on Dispute Resolution Procedures.  These agreements have been in effect since that time.  These agreements supplanted the process of having jurisdictional disputes heard and decided in the parties' bilateral grievance process, and were intended to be the exclusive procedures for resolving jurisdictional disputes among the parties. Id. ¶ 4.

The parties thereafter developed mutually agreed to  answers to questions in a document called "Q and A - RI-399 Dispute Resolution Procedures. "  Id. ¶ 5, Exh. 2.

The MHU filed a grievance over the staffing of the copy room and label room at the Brooklyn, NY, facility.  This dispute was heard before Arbitrator Eric J. Schmertz.  Gallagher Dec. ¶ 6, Exh. 3.  Arbitrator Schmertz was appointed by the parties to the MOU on Dispute Resolution Procedures specifically to hear and decide disputes arising under the MOU on Dispute Resolution Procedures.  Only arbitrators appointed by all three parties under the MOU on Dispute Resolution Procedures were empowered to hear and decide disputes arising under the MOU on Dispute Resolution Procedures.  Likewise, arbitrators appointed by all

three parties under the MOU on Dispute Resolution Procedures were empowered to hear only disputes arising under the MOU on Dispute Resolution Procedures.  Gallagher Dec. ¶ 6.

By agreement dated May 28, 1992, the parties agreed that disputes over existing assignments arising under the MOU on Dispute Resolution Procedures must have been filed by April 29, 1992.  Id. ¶ 7, Exh. 4.  In the proceeding before Arbitrator Schmertz, the APWU and the Postal Service contended that under MOU on Dispute Resolution Procedures, the MHU was required to have filed grievances by April 29, 1992, over the work in question for the dispute to be heard, unless there was an operational change, new work in a facility, or a new facility or consolidation of facilities.  Because the dispute was untimely, having been filed on or about October 16, 1993 (after April 29, 1992, deadline under the May 28, 1992, agreement) and the work in dispute was not new work, or work being done in a new or consolidated facility or the work resulting from an operational change, the Postal Service and the APWU argued that the dispute was not arbitrable.  The arbitrator did not rule on this argument.  Gallagher Dec. ¶ 7.

The Postal Service also argued that it had a bilateral agreement with the MHU dated November 24, 1992, which, among other things, held all MHU jurisdictional disputes in abeyance and required any such grievances to be filed before the expiration of the 120 day period.  Id. ¶ 8, Exh. 5.  The Postal Service contended that, because the MHU did not file the dispute

6

in question until October 16, 1993, beyond the 120 period, the
dispute was also untimely under the bilateral agreement and
therefore not arbitrable, an argument which the arbitrator
accepted.  Gallagher Dec. ¶ 8.

Under the MOU on Dispute Resolution Procedures, the
bilateral agreement between the MHU and the Postal Service dated
November 24, 1992, was null and void because all agreements under
the MOU on Dispute Resolution Procedures had to be tri-lateral.
The bilateral agreement was reached in the process of the Postal
Service's consideration of an effort "to resolve crossing craft
grievances and RI-399 issues ....."   Q and A number 3 makes it
clear that if any party believes that a grievance involves an RI-
399 jurisdictional issue, it must be referred to the Dispute
Resolution Committee covering the Brooklyn facility.  Q and A
number 4 makes it clear that any bilateral settlement of a
grievance which even arguably involves jurisdictional issues is
"null and void."  Therefore, the arbitrator was mistaken.  Id. ¶
9.

The arbitrator also held that, although he had no
jurisdiction over the dispute because of the November 24, 1992,
agreement between the MHU and the Postal Service, the grievance
could nonetheless be heard by an arbitrator selected by the MHU
and the Postal Service under their own collective bargaining
agreement.  The Award states: "The grievances of the Mail
Handlers, regarding the staffing of the Label room and the Copy
room are arbitrable under the [MHU's] collective bargaining

7

agreement with the Postal Service but not arbitrable in the RI-399 Forum." Id. ¶ 10.

Gallagher explained the position of the APWU on the award. Id. ¶ 11. The Award was in violation of the jurisdiction conferred on the arbitrator by the MOU on Dispute Resolution Procedures for the following reasons:

(A) The parties have agreed that under the MOU on Dispute Resolution Procedures all bilateral agreements such as the one relied on by Arbitrator Schmertz are null and void.

(B)  The MOU on Dispute Resolution Procedures supplanted the grievance-arbitration procedures under the MHU collective bargaining agreement with respect to all jurisdictional disputes.

(C)  The arbitrator was not empowered under the MOU on Dispute Resolution Procedures to direct a dispute to any grievance resolution process other than the one established by the MOU on Dispute Resolution Procedures.

(D) The MOU on Dispute Resolution Procedures did not grant the arbitrator jurisdiction to make a determination under the MHU-Postal Service collective bargaining agreement that the dispute before him could be heard in the grievance-arbitration procedures of the MHU-Postal Service collective bargaining agreement.

PRINCIPLES APPLICABLE TO SUMMARY JUDGMENT

The summary judgment standard is the basic vehicle to establish the continued existence of a claim and to narrow a case down to disputed material issues that need to be resolved by a

fact-finder.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-324
(1986) ("One of the principal purposes of the summary judgment
rule is to isolate and dispose of factually unsupported claims or
defenses....).  Summary judgment is appropriate where there is no
genuine issue as to any material fact and the moving party has
demonstrated that it is entitled to a judgment as a matter of
law.  Rule 56 (c), F. R. Civ. P.  Although in deciding a motion
for summary judgment, the court "must view the evidence in the
light most favorable to [the non-moving party], draw all
reasonable inferences in [its] favor, and eschew making
credibility determinations or weighing the evidence." Lathram v.
Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003), only disputes over
facts which affect the outcome of the case will properly preclude
the entry of summary judgment.  Anderson v. Liberty Lobby, 477
U.S. 242 (1986).  As to the "genuineness" of the dispute,
moreover, summary judgment must be granted unless there is
sufficient evidence for a jury to return a verdict for the non-
moving party.  Anderson, 477 U.S. at 248. "If the evidence is
merely colorable or it is not significantly probative, summary
judgment is proper." Id. at 249-50.  A party may not rely upon
speculation or conjecture to defeat the motion.  Rather, to
satisfy the requirements of Celotex and Anderson, the non-moving
party must come forward with sufficient evidence to allow a jury
to find in its favor on each and every essential element on which
it bears the burden of proof at trial.  If it is unable to show
that there is a "genuine" dispute over "material" facts, then the

motion for summary judgment must be granted.

PRINCIPLES APPLICABLE TO VACATING ARBITRATION AWARDS

The collective bargaining agreement in question in this case is the MOU on Dispute Resolution Procedures, under which Arbitrator Schmertz was appointed.  "A reviewing court is only to decide whether the grievance is arbitrable, and, if so, whether the arbitrator's award 'draws its essence from the collective bargaining agreement.'"  Washington Hospital Center v. Service Employees International Union, Local 722, 796 F. Supp. 574, 576 (D.D.C. 1992) (citing United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, at 582, 597 (1960)).  Although the scope of the court's review is narrow, "[a]n arbitration award that fails to draw its essence from the collective bargaining agreement cannot stand."  Madison Hotel v. Hotel Employees Restaurant Employees International Union, Local 25, 144 F.3d 855, 858 (D.C. Cir. 1998) (citing United Steelworkers of America v. Enterprise Wheel, 363 U.S. 593, 597 (1960)).  An arbitrator may not exceed the scope of the authority granted to the arbitrator by the parties' agreement.  An arbitrator is confined to interpretation and application of the agreement; he does not sit to dispense his own brand of industrial justice.  "An arbitrator cannot, for instance, 'render [ ] a judgment based on external legal sources, wholly without regard to the terms of the parties' contract.'"  Madison Hotel, 144 F.3d at 859 (quoting American Postal Workers Union v. United States Postal Service, 789 F.2d 1, 8 (D.C. Cir. 1986)).

10

ARGUMENT

As Gallagher explained(Gallagher Dec. ¶ 4), the situation prior to the April 16, 1992, MOU on Dispute Resolution Procedures for resolution of jurisdictional disputes was chaotic.  Prior to this agreement, each union would file its own grievance under its own collective bargaining agreement if it believed that the Postal Service mistakenly assigned functions to the other craft. These grievances would be heard by arbitrators selected by the Postal Service and the union in question.  These arbitrators were not selected by the other union.  For example, if the APWU challenged an assignment to the MHU mail handler craft, it would file a grievance which, if it were not resolved in the grievance procedure, would be heard by an arbitrator from the APWU-Postal Service panel of arbitrators.  The MHU might then seek to intervene in the arbitration before the APWU-Postal Service-selected arbitrator.  Some arbitrators allowed intervention and some did not.  If the grievance was sustained without the MHU's intervention, the MHU would typically file its own grievance, which would be heard by a MHU-Postal Service-selected arbitrator. In one instance of which I am aware, a MHU arbitrator issued an award which contradicted a prior APWU arbitrator award.

The MHU and the Postal Service sued the APWU to compel tripartite arbitration.  The court ruled in favor of the MHU and the Postal Service.  United States Postal Serv. v. American Postal Workers Union, AFL-CIO, 893 F.2d 1117 (9th Cir. 1990); National Post Office Mail Handlers, Watchmen, Messengers, and

Group Leaders Division of the Laborers' International Union of
North America, AFL-CIO, *et al.*, 907 F.2d 190 (D.C. Cir. 1990)
(finding issue preclusion)[2].  After the latter decision, the
parties began negotiations which led to a number of agreements,
including the MOU on Dispute Resolution Procedures.  These
agreements have been in effect since that time.  These agreements
supplanted the process of having jurisdictional disputes heard
and decided in the parties' bilateral grievance process, and were
intended to be the exclusive procedures for resolving
jurisdictional disputes among the parties.  Id. ¶ 4.

The MOU on Dispute Resolution Procedures begins with
"General Principles," including the recognition that "[t]he
parties to this Agreement agree to **a new procedure** for resolving
jurisdictional disputes under Regional Instruction 399 ..."
(emphasis added).  In general terms, when the MOU became
effective, no new jurisdictional disputes were permitted to be
filed, and existing disputes were referred to tripartite Dispute
Resolution Committees at the Local, Regional and National Levels
in an effort to resolve them.  "Any settlement entered into at
any level must be a tripartite settlement" (id. at 2).

The document states: "A panel of two (2) arbitrators will be
jointly selected by the parties for each of the five (5) regions.
...  **Such panel of arbitrators shall hear only jurisdictional**

---

Although the Postal Service was named as a defendant, it
admitted all the allegations in the MHU complaint and cross-
claimed against the APWU, arguing collateral estoppel.  Id. at
190-191.

**cases.**" _Id._ at 4 (emphasis added).  Arbitrator Schmertz was one of the Regional Panel arbitrators appointed to decide jurisdictional disputes.

The MOU also provided for a selection of a single arbitrator for arbitration of jurisdictional disputes involving "interpretive issues" which are "of general application." _Id._ at 6.  Disputes arising in new or consolidated facilities, or in the event of new work or operational changes, were to be initiated, processed through Dispute Resolution committees, and if unresolved, arbitrated before one of the arbitrators selected under the procedures specified in the MOU.  _Id._ at 7-8.

The MOU on Dispute Resolution Procedures, read as a whole, is plainly a self-contained regime encompassing all jurisdictional disputes involving these parties.  Nothing in the document even suggests the possibility of referring jurisdictional disputes to the bilateral grievance procedures of the separate collective bargaining agreements which the Postal Service maintains with each of the two unions.

The Award, if it is allowed to stand, undoes the parties' work in negotiating and implementing a tripartite procedure for dealing with jurisdictional disputes.  If the Postal Service complies with the Award and entertains this jurisdictional dispute in the grievance-arbitration procedure under MHU-Postal Service collective bargaining agreement, the APWU will be forced either to seek to intervene in a proceeding before an arbitrator selected by the MHU and the Postal Service, but not by it, or

13

file its own grievance under the APWU-Postal Service collective bargaining agreement. The MOU on Dispute Resolution Procedures was intended to supplant the use of these bilateral procedures which caused the parties so many problems earlier.

The arbitrator held that the MHU dispute over the assignments in the Brooklyn facility was beyond his jurisdiction to consider because it was untimely. The decision was correct, but not for the reasons he gave.[3] The arbitrator exceeded his authority, which is limited to resolving disputes under the Dispute Resolution Procedures established under the MOU, by enforcing a void bilateral agreement between the MHU and the Postal Service. Although the APWU might seem to benefit from the finding that the MHU grievance was not arbitrable, fidelity to its agreement under MOU on Dispute Resolution Procedures compels the APWU to contend that the arbitrator committed an error going to the very basis of his authority in this respect.

Under the MOU on Dispute Resolution Procedures, the bilateral agreement between the MHU and the Postal Service dated November 24, 1992, was null and void because all agreements under the MOU on Dispute Resolution Procedures had to be tri-lateral. The bilateral agreement was reached in the process of the Postal Service's consideration of an effort "to resolve crossing craft grievances and RI-399 issues ....."   Q and A number 3 makes it

---

The dispute was indeed untimely, but not for the reason given by Arbitrator Schmertz. Rather, it was untimely under the MOU dated May 28, 1992. Gallagher Dec. ¶ 7 & Exh. 4. That issue is not before the Court.

14

clear that if any party believes that a grievance involves an RI-399 jurisdictional issue, it must be referred to the Dispute Resolution Committee covering the Brooklyn facility.  Q and A number 4 makes it clear that any bilateral settlement of a grievance which even arguably involves jurisdictional issues is "null and void."  Therefore, it is the position of the APWU that the arbitrator exceeded his authority by giving effect to a null and void bilateral agreement.  Gallagher Dec. ¶ 9.

The arbitrator also held that, although he had no jurisdiction over the dispute because of the November 24, 1992, agreement between the MHU and the Postal Service, the grievance could nonetheless be heard by an arbitrator selected by the MHU and the Postal Service under their own collective bargaining agreement.  The Award states: "The grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the [MHU's] collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum."  This was an error of jurisdictional dimensions and requires the Award to be vacated.  Even more clearly than his reliance on the bilateral agreement dealing with time limits, this aspect of the Award is far beyond his authority, and threatens to cause grave damage to the trilateral regime under MOU on Dispute Resolution Procedures.

First, the Award was in violation of the arbitrator's jurisdiction because the procedures under the MOU completely supplanted – in legal terminology, preempted – the grievance-

arbitration procedures under the MHU collective bargaining agreement.  The parties agreed on one and only one forum to hear jurisdictional disputes: the one created by the MOU on Dispute Resolution Procedures.  The document leaves no room for another forum for resolving such disputes.

Second, the MOU on Dispute Resolution Procedures did not grant the arbitrator jurisdiction to make a determination under the MHU-Postal Service collective bargaining agreement that the dispute before him could be heard in the grievance-arbitration procedures of the MHU-Postal Service collective bargaining agreement.  His authority, rather, was limited to the interpretation and application of MOU on Dispute Resolution Procedures.

The arbitrator's intention in issuing this Award is clear. Arbitrator Schmertz believed he was obliged to find that the MHU grievance was not arbitrable because the MHU made a commitment to the Postal Service to observe a deadline to file it.  He did not want to take away the MHU's ability to have the dispute heard on the merits, however, and so he crafted the solution of referring it to the MHU-Postal Service grievance procedure.  The arbitrator arrived at this perceived solution entirely on his own.  In doing so, however, the arbitrator did not make a decision which "dr[ew] its essence" from the MOU on Dispute Resolution Procedures, but instead "dispense[d] his own brand of industrial justice," Enterprise Wheel, 363 U.S. at 597, which the Supreme Court has said he may not do. The Award must therefore be vacated.

16

CONCLUSION

For these reasons and those appearing in the record, the APWU's motion for summary judgment should be granted.


Respectfully submitted,

/s/ Anton G. Hajjar

Anton G. Hajjar (D.C. Bar No. 359267)
O'DONNELL, SCHWARTZ & ANDERSON
1300 L Street, NW, Suite 200
Washington, D.C. 20005-4178
Telephone (202) 898-1707
Facsimile (202) 682-9276


Dated: June 30, 2006

17