UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN POSTAL WORKERS UNION, )
AFL-CIO, )
 )
 )
 )
                  Plaintiff, )
 )
    v. )    No. 1:05-CV-01290 (RBW)
 )
NATIONAL POSTAL MAIL HANDLERS )
UNION, A DIVISION OF LABORERS' )
INTERNATIONAL UNION OF NORTH )
AMERICA, AFL-CIO )
 )
        and )
 )
UNITED STATES POSTAL SERVICE, )
 )
                  Defendants. )
 )

## DECLARATION OF MICHAEL M. GALLAGHER

I, Michael M. Gallagher, declare under penalty of perjury that the following is true:

1. I am a National Business Agent in the Clerk Division of the American Postal Workers Union, AFL-CIO ("APWU"). This is an elected position. I have held this position for approximately 17 years. Among my duties, I serve as the APWU representative on the National Dispute Resolution Committee ("NDRC"), which is made up of representatives of the United States Postal Service, the National Postal Mail Handlers Union, a Division of the Laborers International Union of North America ("the MHU"), and the APWU. I have been the APWU's representative on the NDRC since November 2001. Prior to that, I was the APWU's Eastern Regional Dispute

Resolution Committee representative since its inception in 1992. I have been a advocate in cases involving jurisdictional disputes involving the APWU and the MHU since 1987. I am familiar with the process of resolving work jurisdiction disputes between members of the clerk craft represented by the APWU and members of the mail handler craft represented by the MHU.

2. The issue of which craft – the clerk craft or the mail handler craft – is to be assigned to carry out various functions within the Postal Service is governed by Regional Instruction 399 ("RI-399"). The MHU and the APWU each has its own collective bargaining agreement with the Postal Service. Neither union is a party to the other union's collective bargaining agreement. The grievance procedure is likewise separate under each collective bargaining agreement.

3. On April 16, 1992, the parties entered into a agreement entitled "Memorandum of Understanding" pertaining to "Regional Instruction 399 - Dispute Resolution Procedures" ("the MOU on Dispute Resolution Procedures"). Exh. 1. Prior to this agreement, each union would file its own grievance under its own collective bargaining agreement if it believed that the Postal Service mistakenly assigned functions to the other craft. These grievances would be heard by arbitrators selected by the Postal Service and the union in question. These arbitrators were not selected by the other union. For example, if the APWU challenged an assignment to the mail handler craft represented by the MHU, it would file a grievance which, if it were not resolved in the

2

grievance procedure, would be heard by an arbitrator from the APWU-Postal Service panel of arbitrators. The MHU might then seek to intervene in the arbitration before the APWU-Postal Service-selected arbitrator. Some arbitrators allowed intervention and some did not. If the grievance was sustained without the MHU's intervention, the MHU would typically file its own grievance, which would be heard by a MHU-Postal Service-selected arbitrator. In one instance of which I am aware, a MHU arbitrator issued an award which contradicted a prior APWU arbitrator award.

4. The MHU and the Postal Service sued the APWU to compel tripartite arbitration. The court ruled in favor of the MHU and the Postal Service. After this decision, the parties began negotiations which led to a number of agreements, including the MOU on Dispute Resolution Procedures. These agreements have been in effect since that time. These agreements supplanted the process of having jurisdictional disputes heard and decided in the parties' bilateral grievance process, and were intended to be the exclusive procedures for resolving jurisdictional disputes among the parties.

5. The parties thereafter developed mutually agreed to answers to questions in a document called "Q and A - RI-399 Dispute Resolution Procedures." Exh. 2.

6. The MHU filed a grievance over the staffing of the copy room and label room at the Brooklyn, NY, facility. This dispute was heard before Arbitrator Eric J. Schmertz. Exh. 3.

3

Arbitrator Schmertz was appointed by the parties to the MOU on Dispute Resolution Procedures specifically to hear and decide disputes arising under the MOU on Dispute Resolution Procedures. Only arbitrators appointed by all three parties under the MOU on Dispute Resolution Procedures were empowered to hear and decide disputes arising under the MOU on Dispute Resolution Procedures. Likewise, arbitrators appointed by all three parties under the MOU on Dispute Resolution Procedures were empowered to hear only disputes arising under the MOU on Dispute Resolution Procedures.

7. By agreement dated May 28, 1992, the parties agreed that disputes over existing assignments arising under the MOU on Dispute Resolution Procedures must have been filed by April 29, 1992. Exh. 4. In the proceeding before Arbitrator Schmertz, the APWU and the Postal Service contended that under MOU on Dispute Resolution Procedures, the MHU was required to have filed grievances by April 29, 1992, over the work in question for the dispute to be heard, unless there was an operational change, new work in a facility, or a new facility or consolidation of facilities. Because the dispute was untimely, having been filed on or about October 16, 1993 (after April 29, 1992, deadline under the May 28, 1992, agreement) and the work in dispute was not new work, or work being done in a new or consolidated facility or the work resulting from an operational change, the Postal Service and the APWU argued that the dispute was not arbitrable. The arbitrator did not rule on this argument.

8. The Postal Service also argued that it had a bilateral

4

agreement with the MHU dated November 24, 1992, which, among other things, held all MHU jurisdictional disputes in abeyance and required any such grievances to be filed before the expiration of the 120 day period. Exh. 5. The Postal Service contended that, because the MHU did not file the dispute in question until October 16, 1993, beyond the 120 period, the dispute was also untimely under the bilateral agreement and therefore not arbitrable, an argument which the arbitrator accepted.

    9. Under the MOU on Dispute Resolution Procedures, the bilateral agreement between the MHU and the Postal Service dated November 24, 1992, was null and void because all agreements under the MOU on Dispute Resolution Procedures had to be tri-lateral. The bilateral agreement was reached in the process of the Postal Service's consideration of an effort "to resolve crossing craft grievances and RI-399 issues ....." Q and A number 3 makes it clear that if any party believes that a grievance involves an RI-399 jurisdictional issue, it must be referred to the Dispute Resolution Committee covering the Brooklyn facility. Q and A number 4 makes it clear that any bilateral settlement of a grievance which even arguably involves jurisdictional issues is "null and void." Therefore, the arbitrator was mistaken.

    10. The arbitrator also held that, although he had no jurisdiction over the dispute because of the November 24, 1992, agreement between the MHU and the Postal Service, the grievance could nonetheless be heard by an arbitrator selected by the MHU

5

and the Postal Service under their own collective bargaining agreement. The Award states: "The grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the [MHU's] collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum."

11. It is the position of the APWU that the award issued by the arbitrator was in violation of the jurisdiction conferred on the arbitrator by the MOU on Dispute Resolution Procedures for the following reasons:

(A) The parties have agreed that under the MOU on Dispute Resolution Procedures all bilateral agreements such as the one relied on by Arbitrator Schmertz are null and void.

(B) The MOU on Dispute Resolution Procedures supplanted the grievance-arbitration procedures under the MHU collective bargaining agreement with respect to all jurisdictional disputes.

(C) The arbitrator was not empowered under the MOU on Dispute Resolution Procedures to direct a dispute to any grievance resolution process other than the one established by the MOU on Dispute Resolution Procedures.

(D) The MOU on Dispute Resolution Procedures did not grant the arbitrator jurisdiction to make a determination under the MHU-Postal Service collective bargaining agreement that the dispute before him could be heard in the grievance-arbitration procedures of the MHU-Postal Service collective bargaining agreement.

Dated: 6/28/06                                     _____
                                                   Michael M. Gallagher