Q AND A - RI-399 DISPUTE RESOLUTION PROCEDURES

The United States Postal Service, the American Postal Workers Union, AFL-CIO and the National Postal Mail Handlers Union have jointly produced this question and answer document on the RI-399 Dispute Resolution Procedures.

1. What issues have the National Dispute Resolution Committee identified as subjects for discussion at that level?

> Answer: The NDRC has identified several issues for discussion at the National Level. The National parties are not presently in agreement as to whether or not these issues are properly at the National Level. Additionally, the National parties have not agreed to the proper phraseology to describe the issues. The issues include:
>
> 1. Containerization of trays/tubs
> 2. OCR mail preparation
> 3. Dock connection transfers
> 4. Spreading of mail
> 5. Containerization of ACDCS mail
> 6. SPBS
> 7. MOD scales system
> 8. Presort
>
> The above listed terminology for each issue is used for identification purposes only. The language used to describe each issue is not intended to be determinative of any substantive issue.

2. If these issues are pending in cases presently before either the RDRC or the LDRC, what, if any, action should be taken by those committees?

> Answer: The RDRC and/or the LDRC should identify the facilities in which disputes over these issues exist and place those disputes on hold pending the outcome of the national discussion.

3. If a grievance exists or is filed alleging a violation of the contract other than RI-399 (e.g. Article 7.2) and one of the parties believes the issue in the grievance constitutes a jurisdictional dispute, what if anything should be done with the grievance?

> Answer: It must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim. If it is determined it involves a jurisdictional claim, the grievance will be processed in the Dispute Resolution Procedures. If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, that question is

appealable through the Dispute Resolution Procedures up to and including arbitration for resolution prior to the parties addressing the merits of the dispute. The three parties shall review cases at the lowest possible level which raise the potential of containing a jurisdictional dispute so that the proper procedure is utilized to resolve disputes/grievances.

4. If a settlement of a grievance is signed after April 29, 1992 between only two of the parties on a subject which is arguably properly addressed by the Committee, what status does that settlement have?

   Answer: It is not a proper settlement and is considered null and void. This is true even if a claim exists that the written settlement is a written confirmation of an oral settlement reached prior to April 29, 1992. This answer also applies to cases involving contract provisions other than RI-399 if the answer to question 3 had been properly applied to the grievance and it was determined to involve a jurisdictional claim.

5. If a jurisdictional grievance was settled between only two of the parties prior to April 29, 1992 but it was not implemented as of that date, what is the proper method for handling that settlement?

   Answer: The case file, including the settlement, should be referred to the Regional Committee for review. If the Regional Committee agrees it is a proper settlement the local parties will be so advised and the settlement will be implemented. If the Regional Committee can not agree the settlement is proper, the local parties will be so advised. The employer can then implement the settlement and the adversely affected union can enter a dispute with the local committee. The time limits for entering this dispute will begin on the date the adversely effected union is notified of the Regional Committee's determination.

6. If a dispute is unresolved by the Local Committee, who must receive a copy of the appeal from the Local Committee's decision?

   Answer: The moving union must send a copy of the complete file to each of the Regional parties. A listing of the addresses is attached to this document.

7. Does a standard appeal form exist for appeals under the RI-399 Dispute Resolution Procedure?

   Answer: Standard appeal forms will be provided through the individual unions to their locals and the Regional Committee members.

Page 2

8. If a grievance exists in an Associate Office which is not represented by an established local of one of the union parties, who selects the Local Dispute Resolution Committee member for that office?

    Answer: The union who filed the grievance must notify the Regional Committee of the existence of the grievance and the Regional Committee member of the union without a local in that office will designate the local member of the Committee.

9. Are members of the Local Dispute Resolution Committee entitled to compensation for time spent in performing their responsibilities?

    Answer: The provision of Article 17 shall be applied.

10. What date will be used for determining date of appeal to arbitration in the scheduling process under the new procedures?

    Answer: All cases covered by the Transition Agreement will be decisioned by the Regional or National Committee and the moving union will be required to appeal the case to arbitration. The date of appeal from the Committee's decision will be the controlling date.

11. If a local committee identifies an operation/function which existed on April 29, 1992, which was routinely staffed by both crafts and neither craft had a dispute pending claiming jurisdiction on April 29, 1992, who should be listed as the proper craft in the inventory for this operation/function?

    Answer: Both crafts should be listed in column three (3) of the Installation Inventory of Mail Processing Operations. The assignment of craft employees in that operation shall continue as it existed on April 29, 1992.

_____
Moe Biller, President
American Postal Workers Union

_____
Glenn Berrien, President
National Post Office MH Union

_____
Joseph J. Mahon, Jr.
Vice President, Labor Relations
United States Postal Service

10/21/92
Date