UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, <br><br> and <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendants. | Case No. 1:05-CV-01290 (RBW/ak) |

---

**DEFENDANT/COUNTER-CLAIMANT/CROSS-CLAIMANT
NATIONAL POSTAL MAIL HANDLERS UNION'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant and Counter-Claimant/Cross-Claimant National Postal Mail Handlers Union (the "NPMHU") respectfully submits this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

## BACKGROUND

### A.    Overview

This case arises out of an arbitration award issued by Arbitrator Eric J. Schmertz in favor of the NPMHU. The dispute at issue in the arbitration involved two grievances originally filed under the NPMHU's collective

bargaining agreement with the United States Postal Service ("USPS" or the "Postal Service") and subsequently referred to a tripartite dispute resolution process that included all three parties to this case — the NPMHU, the American Postal Workers Union (the "APWU"), and the Postal Service.  In the arbitration award under review here, Arbitrator Schmertz concluded that the dispute had been referred to the tripartite process in error and ordered the grievances to be returned for arbitration under the NPMHU-USPS collective bargaining agreement.  The APWU has sued to vacate the arbitration award, and the NPMHU has counterclaimed and cross-claimed to enforce or confirm the award.

**B.      "Jurisdictional Disputes" and "Cross-Craft Grievances"**

The NPMHU and the APWU are both labor unions, and each serves as the collective bargaining representative for certain employees of the Postal Service.  *See* Material Facts, at ¶¶ 1-3.  The Postal Service has entered into separate national collective bargaining agreements ("National Agreements") with both the NPMHU and with the APWU.

Because changes in technology and in the means by which mail is processed have blurred the original distinctions between the work performed by members of the mail handler "craft" represented by the NPMHU and the clerical "craft" represented by the APWU, there have been frequent disputes over which craft has jurisdiction over particular work.  *See id.* at ¶ 6.  In 1979, the Postal Service issued Regional Instruction No. 399 ("RI-399"), which delineates criteria

for making craft assignments and designates the primary craft assignment for many functions performed by Postal Service employees. *See id.* at ¶ 7.

For many years after RI-399 was issued, from 1979 to 1992, the NPMHU and the APWU continued to bring grievances seeking to change craft assignments or determine undecided craft assignments, referred to by the parties as "jurisdictional disputes," under their respective National Agreements because there was no tripartite process for adjudicating such disputes. *See id.* at ¶ 8. In 1992, all three parties to this case entered into an agreement entitled "Regional Instruction 399 – Dispute Resolution Procedures" ("RI-399 Dispute Resolution Procedures"), which provides for the resolution of jurisdictional disputes through proceedings involving all three parties and describes the procedures for making craft assignments for new work, for work in new or consolidated facilities, or for work after there is an operational change. *See id.* at ¶ 9. Such jurisdictional disputes include cases in which the craft assignment is undecided or cases in which one union seeks to change the craft assignment. *See* Material Facts, at ¶ 12.

By its own terms, however, the RI-399 dispute resolution process is limited to cases in which the jurisdiction over craft assignments is open to dispute. Even after adoption of the RI-399 Dispute Resolution Procedures in 1992, disputes over the performance of work in violation of the craft assignments – *i.e.*, where the craft assignment, or jurisdiction, of work already has been decided but the Postal Service allows the wrong craft employee to perform the work – still must be brought as grievances under Article 15 of the

applicable NPMHU-USPS or APWU-USPS National Agreements.  The theory of such grievances is that the Postal Service is violating Article 7.2 of the National Agreement by assigning work that belonged to employees in the bargaining unit filing the grievance to employees outside of that bargaining unit.  *See* Hill Decl. at ¶ 11.  The parties refer to such grievances to enforce existing craft assignments as "cross-craft" or "crossing craft" grievances.  *See* Material Facts at ¶ 11.

Both the APWU and the NPMHU continue to bring cross-craft grievances on a regular basis.  According to a 2005 report by the USPS Office of the Inspector General, cross-craft grievances were among the three most frequently filed types of grievances against the Postal Service in fiscal years 2003 and 2004.  *See* White Paper on the Nature of Grievances and the Initiatives Taken to Reduce and Prevent Them, *available at* http://www.uspsoig.gov/foia_files/HM-OT-05-001.pdf, at 3.  As part of the arbitration record at issue in the present case, the NPMHU submitted to Arbitrator Schmertz arbitration awards from three recent cross-craft grievances in New York, as well as numerous other documents that distinguish cross-craft grievances from jurisdictional disputes.  *See* Hill Decl. Ex. 9, App. B.  Indeed, in at least one case, the APWU simultaneously has pursued the same dispute as both a cross-craft grievance under the APWU-USPS National Agreement and a jurisdictional dispute under the RI-399 process.  *See* Declaration of Richard Collins ("Collins Decl.") Ex. 1 (Award of Arbitrator Schmertz, Feb. 16, 2006), at 2.

If a grievance initially is filed as a cross-craft grievance and one of the parties believes that it actually is a jurisdictional dispute that seeks to *determine* or *change* craft assignments, rather than a cross-craft grievance to *enforce* existing craft assignments, the party may remove the dispute from the grievance process under Article 15 of the National Agreement to the tripartite jurisdictional process described in the RI-399 Dispute Resolution Procedures. *See* Material Facts, at ¶ 12.  Often, it is not obvious whether a dispute over work assignments is a cross-craft grievance or a jurisdictional dispute, because a party opposing a cross-craft grievance may dispute that the work has been assigned to the party pressing the grievance.  *See* Hill Decl. at ¶ 14.  Thus, the fact that a case has been referred to the RI-399 jurisdictional dispute resolution process by one party does not necessarily mean that the case is properly in that process.

If a cross-craft grievance is referred erroneously to the RI-399 dispute resolution process, it should be returned to the grievance process under Article 15 of the appropriate National Agreement.  *See* Material Facts at ¶ 13.  For many years, the three parties to this case have recognized the difficulties in distinguishing between jurisdictional disputes properly heard under the RI-399 Dispute Resolution Procedures and cross-craft grievances properly filed under the Article 15 grievance process found in each union's National Agreement with the Postal Service.  *See* Hill Decl. at ¶ 14.  To ease this confusion, all three parties signed an August 2000 Settlement Agreement that expressly provided for how such cases should be handled.  *See id.* at ¶¶ 14-15; Material Facts at ¶

13.  In particular, the August 2000 Settlement Agreement clarifies that cross-craft grievances removed in error to the RI-399 dispute resolution process are to be returned to the collective bargaining grievance process.  *See id.* at ¶ 14. The relevant portion of the August 2000 Settlement Agreement specifically provides as follows:

> The parties agree that those grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement.

*See id.*

### C.    <u>The Instant Grievances</u>

This case arises from two 1993 grievances filed by the NPMHU alleging that work in the Label Room and the Duplicating Room of the Brooklyn General Mail Facility ("GMF") was improperly being performed by clerical employees represented by the APWU.  *See id.* at ¶ 15.  The grievances were filed as cross-craft grievances under Article 15 of the NPMHU-USPS National Agreement, because the work in question involved tasks that were "clearly Mail Handler functions."  *See id.* at ¶ 16.  The Postal Service denied the grievances at the initial steps of the grievance procedure on the ground that the NPMHU relied on national craft assignment descriptions and failed to identify positions assigned to the Mail Handlers at the GMF.  *See id.* at ¶¶ 17-18.  In accordance with the contractual grievance procedure, the grievances were then scheduled for arbitration in March 1999 under the NPMHU-USPS National Agreement. *See id.* at ¶ 19.   Approximately one month before the scheduled hearing,

however, the Postal Service unilaterally referred the grievances to the RI-399 dispute resolution process.  *See id.* at ¶ 20.

The dispute was scheduled for a hearing before Arbitrator Eric J. Schmertz, *see* Material Facts, at ¶ 21, a former Dean of Hofstra University School of Law with more than thirty years of labor arbitration experience, *see* http://bulletin.hofstra.edu/content.php?catoid=13&page=e_schmertz.html. Arbitrator Schmertz served on a panel of arbitrators appointed by the parties to resolve disputes under the RI-399 dispute resolution process.  *See* Material Facts at ¶ 21.  Hearings were held on the dispute on January 21, 2005 and February 18, 2005, during which the parties presented their respective positions.  *See id.* at ¶ 22.  The arbitrator also received written opening statements and post-hearing briefs from the parties.  *See id.* at ¶ 23.

During the arbitration, the APWU and USPS both argued that the grievances were untimely filed, with the APWU focusing on the deadlines within the RI-399 dispute resolution process and the USPS focusing on a local agreement for deadlines applying to both cross-craft grievances and jurisdictional disputes.  *See id.* at ¶ 24.  With respect to timeliness, the NPMHU argued that the Postal Service, by failing to raise timeliness by Step 2 of the grievance process, had waived any objection on the basis of timeliness.  *See id.* at ¶ 25.  Indeed, Article 15.3B of the NPMHU-USPS National Agreement provides that "if the Employer fails to raise the issue of timeliness at Step 2 . . . such objection to processing the grievance is waived."  *See id.*

Additionally, the NPMHU argued that the case was properly filed as a cross-craft grievance, because the NPMHU has exclusive primary craft jurisdiction of the disputed work nationally. *See id.* at ¶ 26. The NPMHU presented alternative arguments for the consideration of Arbitrator Schmertz – that the arbitrator either could resolve the dispute in the RI-399 forum because the APWU disputed the jurisdiction of the work, or that the arbitrator could refer the dispute back to the Article 15 grievance process under the NPMHU-USPS National Agreement. *See id.* With respect to this latter argument, the NPMHU specifically noted that returning the dispute to the Article 15 grievance process under the NPMHU-USPS National Agreement would be consistent with the August 2000 Settlement Agreement's provision stating that "grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement." *See id.* at ¶¶ 14, 27.

In his award issued on March 23, 2005, Arbitrator Schmertz concluded that the dispute was arbitrable under the NPMHU-USPS National Agreement, rather than within the RI-399 dispute resolution process. *See* Hill Decl. Ex. 15. Regarding the arguments that the grievances were untimely filed, the arbitrator concluded that the Postal Service waived any defense on this basis by failing to raise the issue during the grievance process. *See id.* at 3-5. Although the grievances also were untimely within the RI-399 dispute

resolution process, and the objection on the basis of untimeliness within the
RI-399 forum was not waived, Arbitrator Schmertz declined to apply the RI-399
time limit to bar his consideration of the threshold issue of whether the dispute
was a cross-craft or jurisdictional dispute.  *See id.* at 5-7.  Instead, he referred
the dispute back to the grievance process under Article 15 of the NPMHU-USPS
National Agreement for further proceedings.  *See id.* at 7.

On June 27, 2005, the APWU filed the instant complaint seeking to
vacate the award.  *See* Complaint (d/e 1).  The APWU alleges that the
underlying dispute is a jurisdictional dispute that can be heard only within the
RI-399 dispute resolution process, and that Arbitrator Schmertz therefore
exceeded his authority by returning the dispute for resolution under Article 15
of the NPMHU-USPS National Agreement.  *See id.* at ¶¶ 6, 10, 12.  The NPMHU
filed a counterclaim/cross-claim against the APWU and the Postal Service,
seeking to confirm the arbitration award and to compel further proceedings
consistent with that award.  *See* Answer and Counterclaim of Defendant
NPMHU ("NPMHU Answer") (d/e 9) at ¶ 4-5.[1]

## ARGUMENT

The Court's authority to review the merits of a labor arbitrator's award is
extremely limited.  Courts must defer to and enforce a labor arbitration award
if it "draws its essence" from the applicable labor agreements.  Under that

---

[1] The NPMHU's Answer and Counterclaim are combined in one document (d/e 9), but the paragraph numbers start over at the beginning of the Counterclaim. We use "NPMHU Answer" to refer to the Answer section and "NPMHU Counterclaim" to refer to the Counterclaim section.

narrow standard of review, the arbitration award in this case must be enforced. The award was well within the arbitrator's authority; it draws its essence from the applicable contracts; and there is no allegation that it is contrary to public policy, a product of corruption or bias, or unenforceable for any other reason. The NPMHU, therefore, is entitled to summary judgment denying the APWU's request to vacate the arbitration award and granting the NPMHU's request to confirm the award and compel further proceedings consistent with that award.

### A.    <u>Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  If the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  A nonmoving party has met its burden of showing that a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A scintilla of evidence is insufficient; summary judgment may be granted if "the evidence is merely colorable" or "not significantly probative."  *Anderson*, 477 U.S. at 249-51.

There is no genuine issue as to any fact material to the resolution of this dispute, and the case properly may be decided on summary judgment. As we now show, the NPMHU is entitled to summary judgment as a matter of law.

**B.    Court Review of Labor Arbitration Awards is Extremely Deferential**

The scope of review of labor arbitration awards is "extremely narrow." *APWU v. USPS*, 52 F.3d 359, 361 (D.C. Cir. 1995). It is well established that courts are not to review a labor arbitrator's determination of the merits of a grievance, and that they may set aside such awards only in very limited circumstances.

Private dispute resolution through grievances and arbitration under labor agreements "is at the very heart of the system of industrial self-government." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960). "Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties." *Id.* Because of the nature of labor arbitration, the arbitrator's source of law is not confined to the express provisions of the contract, and the arbitrator may consider the parties' past practices, the practices of the industry as a whole, and the structure of the relevant agreements as a whole in formulating the award. *See id.*; *Madison Hotel v. Hotel & Rest. Employees, Local 25*, 144 F.3d 855, 859 (D.C. Cir. 1998). Moreover, the arbitrator has flexibility to bring his informed judgment to bear

in order to reach a fair solution to a problem, especially when formulating remedies, because specific remedies may never have been contemplated when drafting the agreement.  *See United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960).

Because the parties have authorized the arbitrator to give meaning to their agreements, courts cannot reject an arbitration award on the ground that the arbitrator misinterpreted the parties' agreements, or has committed factual or legal errors.  *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504 (2001); *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987); *APWU v. USPS*, 789 F.2d 1, 6-8 (D.C. Cir. 1986) (the parties are bound by arbitrator's allegedly erroneously legal interpretation).  As the Supreme Court has emphasized, the "refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.  The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards."  *Enterprise Wheel*, 363 U.S. at 596.

To be sure, "the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice."  *Misco*, 484 U.S. at 38.  For example, if an arbitrator issued an award "wholly without regard to the terms of the parties' contract, then the award could not be said to draw its essence from the contract."  *APWU v. USPS*, 789 F.2d at 8.  Thus, "[i]t is only when the arbitrator *must* have based his award on

some body of thought, or feeling, or policy, or law that is outside the contract

… that the award can be said not to draw its essence from the collective

bargaining agreement." *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d

180, 184-85 (7th Cir. 1985) (emphasis in original; internal quotation marks

and citation omitted). "But as long as the arbitrator is *even arguably*

construing or applying the contract and acting within the scope of his

authority, that a court is convinced he committed serious error does not suffice

to overturn his decision." *Misco*, 484 U.S. at 38 (emphasis added).

The "scope of the arbitrator's authority is itself a question of contract

interpretation that the parties have delegated to the arbitrator." *W.R. Grace &*

*Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic*

*Workers of Am.*, 461 U.S. 757, 765 (1983); *see also Madison Hotel*, 144 F.3d at

857. The applicable labor agreements determine the scope of the arbitrator's

authority, so the arbitrator's interpretation of the scope of his authority is

simply one aspect of his interpretation of the labor agreements. Accordingly,

the arbitrator's conclusions regarding the scope of his authority are entitled to

"the same judicial deference as an arbitrator's interpretation of a collective

bargaining agreement" generally. *Madison Hotel*, 144 F.3d at 857.

Ambiguities in arbitration awards are approached with the same

deference. Courts are not entitled to review the merits of the contract dispute

even if the basis of the arbitrator's decision is ambiguous. *See W.R. Grace &*

*Co.*, 461 U.S. at 764; *APWU v. USPS*, 789 F.2d at 5 (noting that "even in the

face of an ambiguous arbitration award, a judge has no authority to second-guess arbitral judgments").

Where an arbitration award is ambiguous and there is an allegation that the arbitrator exceeded his authority, the Supreme Court has held that ambiguity is not a reason to refuse to enforce an arbitration award, even if the ambiguity permits the inference that the arbitrator may have exceeded his authority.  *See Enterprise Wheel*, 363 U.S. at 598.  Rather, the Court emphasized that "[a]rbitrators have no obligation to the court to give their reasons for an award.  To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions."  *Id.* (internal footnote omitted).

Therefore, courts must uphold the award if there is any "possible interpretive route to the award" that is within the arbitrator's authority, even if the arbitrator did not articulate such reasoning.  *See Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1505-06 (7th Cir. 1991); *see also Labor Relations Div. of Constr. Indus. of Mass., Inc. v. Int'l Bhd. of Teamsters, Local No. 379*, 29 F.3d 742, 747 (1st Cir.1994) ("We see no problem with upholding the arbitrator's decision on grounds or reasoning not employed by the arbitrator himself."); *Columbia Aluminum Corp. v. United Steelworkers of Am., Local 8147*, 922 F. Supp. 412, 420 (E.D. Wash. 1995) (the court will "not infer the non-existence of a particular reason merely from the award's silence on a given issue").

In sum, review of labor arbitration awards calls for "the greatest deference imaginable," *Utility Workers Union of Am., Local 246 v. NLRB*, 39 F.3d 1210, 1216 (D.C. Cir. 1994), and such awards may be set aside only "in rare instances." *Eastern Associated Coal Corp. v. United Mine Workers*, 531 U.S. 57, 62 (2000).

As we now show, the present case does not present one of those "rare instances" when vacatur of a labor arbitration award is warranted. To the contrary, the award issued by Arbitrator Schmertz on March 23, 2005 clearly was based on, and fully consistent with, the parties' preexisting agreement to allow cross-craft disputes to be resolved under Article 15 of the grieving union's National Agreement with the Postal Service. In accordance with that agreement, Arbitrator Schmertz remanded these disputes for further processing under the grievance procedure found in Article 15 of the NPMHU-USPS National Agreement.

**C.     Under the Applicable Deferential Standard, the Court has No Warrant to Overturn the Arbitrator's Ruling**

As discussed above, the scope of the arbitrator's authority is itself a question of contract interpretation, which is entitled to the same judicial deference as the arbitrator's award generally. *See W.R. Grace & Co.*, 461 U.S. at 765; *Madison Hotel*, 144 F.3d at 857. Under the highly deferential standard for judicial review of labor arbitration awards, there is simply no basis for the APWU's contention that the arbitrator exceeded the scope of his authority when he returned the dispute for arbitration of the merits under the NPMHU-USPS National Agreement.

15

To the contrary, returning a cross-craft grievance to the grievance procedure under Article 15 of the relevant National Agreement, when it previously was referred in error to the RI-399 dispute resolution process, clearly is within the authority of an RI-399 arbitrator. At a minimum, even should the Court disagree that the arbitrator's authority encompasses that remedy, it cannot be seriously disputed that Arbitrator Schmertz' determination in this regard draws its essence from the applicable contracts and thus is entitled to this Court's deference.

1.    If it ever were a matter of dispute among the parties, it must now be considered firmly established that an arbitrator in an RI-399 proceeding has the authority to do precisely what Arbitrator Schmertz did in this case – to return a grievance that was erroneously referred to the RI-399 jurisdictional process back to the grievance procedure for resolution under Article 15 of the relevant National Agreement. That conclusion follows from the August 2000 Settlement Agreement signed by all three parties to this case, and has been implicitly or explicitly embraced by at least three RI-399 arbitration awards.[2]

---

[2] That conclusion also is implicit in the structure of the tripartite dispute resolution process itself, and thus is not dependent solely on the August 2000 Settlement Agreement. Under an October 1992 interpretive agreement explaining the RI-399 dispute resolution process, also signed by all three parties to this case, when one of the parties believes that a grievance involves jurisdictional issues, it must be referred to the RI-399 process. *See* Hill Decl. Ex. 6, at 1. Although the October 1992 interpretive agreement does not specifically provide that disputes referred to the dispute resolution process in error should be transferred back to the Article 15 grievance procedure, it does seek to ensure "that the proper procedure is utilized to resolve disputes/grievances." *See id.* at 2. It would make little sense to require that any dispute that *might* be jurisdictional *must* be referred to the RI-399 process if there were no mechanism for returning any dispute transferred in error back

The August 2000 Settlement Agreement – a collectively bargained agreement signed by all three parties to this case – confirms that cross-craft grievances removed in error to the RI-399 jurisdictional process are to be returned to the grievance procedure under Article 15 of the relevant National Agreement.  That Settlement Agreement states that "grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement."  *See* Hill Decl. Ex. 6.  Although the Settlement Agreement also states that "Regional and Local Dispute Resolution Committees are responsible for identifying such [non-jurisdictional] grievances," *id.*, nothing in that agreement suggests that if these Committees do not identify a non-jurisdictional dispute and the case progresses to arbitration, the arbitrator lacks the power to implement the terms of the Settlement Agreement and return the case from the RI-399 dispute process to the Article 15 grievance procedure.

It is not surprising, therefore, that at least three arbitrators hearing cases under the RI-399 Dispute Resolution Procedures have concluded that they had the authority to refer non-jurisdictional cases back to the grievance process.  At least one other RI-399 arbitrator has granted the same relief that Arbitrator Schmertz granted in this case.  Arbitrator Lloyd Byars concluded

---

for processing under the National Agreement.  If it were otherwise, whenever a non-jurisdictional dispute was referred in error to the jurisdictional process, the "proper procedure . . . to resolve disputes/grievances" could not be followed.

that a grievance brought by the NPMHU and referred to the RI-399 dispute resolution process actually was non-jurisdictional.  *See* Collins Decl. Ex. 2 (Award of Arbitrator Byars, Dec. 12, 2004), at 5-7.  Arbitrator Byars relied on the August 2000 Settlement Agreement and the description of jurisdictional disputes therein.  He concluded that the dispute in that case was "concerned with a non-jurisdictional issue and therefore must be resolved under Article 15 of the NPMHU Collective Bargaining Agreement."  *See id.* at 7.

Indeed, the APWU itself – in another case brought before Arbitrator Schmertz under the RI-399 process – has argued for precisely that relief.  *See* Collins Decl. Ex. 3 (Award of Arbitrator Schmertz, Dec. 16, 2005).  In that case, the APWU "challenge[d] the jurisdiction of th[e] RI399 Arbitration, by asserting that the above-cited disputes should be adjudicated under Article 15 of the collective bargaining agreement between the APWU and the Postal Service."  *Id.* at 2.  The parties, therefore, stipulated that one of the substantive issues for Arbitrator Schmertz' decision in that case was "[w]hether those disputes are 'cross-craft' issues, subject to contractual adjudication or 'jurisdictional,' subject to RI399 determination."  *Id.*  The NPMHU and USPS argued that the APWU had waived its challenge to resolution of the dispute in the RI-399 forum, and Arbitrator Schmertz agreed.  *See id.* at 3, 5-7.  At no point in that case, however, did any of the parties contest the arbitrator's power to return the case to the contractual grievance process under Article 15 of the relevant National Agreement if the arbitrator determined the case to be a cross-craft grievance removed in error to the RI-399 dispute resolution process.

Likewise, Arbitrator Charles Schmidt considered another NPMHU request to refer a dispute back to the grievance procedure under Article 15 of the NPMHU-USPS National Agreement. *See* Collins Decl. Ex. 4 (Award of Arbitrator Schmidt, Oct. 10, 2005). As in the arbitration at issue in this case, the APWU "argue[d] that the arbitrator's remedial scope is limited and may not include a remedy which would require that some or all of the matters referenced herein to be referred to the bilateral process under the National Agreement." *See id.* at 3-4. The arbitrator reached the merits of the NPMHU's argument, concluding that the grievances "under the specific factual record herein cannot be considered for possible deferral to the Article 15 procedures, for the parties have unanimously agreed that they are jurisdictional claims under R.I. 399." *Id.* at 5-7. Arbitrator Schmidt considered and rejected on the merits the NPHMU's argument that the case involved a cross-craft grievance that should be referred back to the grievance procedure found in Article 15, thus implicitly rejecting the APWU's position that he had no power to order that relief.

In short, Arbitrator Schmertz' conclusion that he had the authority to return a cross-craft grievance for processing under Article 15 of the applicable National Agreement is fully consistent with the August 2000 Settlement Agreement signed by all three parties to this case and with the conclusions reached by at least three arbitrators in other RI-399 arbitrations. It is thus clear that it is within an RI-399 arbitrator's authority to return cases determined to be cross-craft grievances for processing under the applicable National Agreement.

2.     The relevant question for this Court, however, is not whether an RI-399 arbitrator actually has the authority to return a cross-craft grievance to the grievance procedure under Article 15 of the National Agreement, but rather whether Arbitrator Schmertz' determination to that effect drew its essence from the relevant labor contracts.  *See W.R. Grace & Co.*, 461 U.S. at 765; *Madison Hotel*, 144 F.3d at 857.   To ask that question is to answer it.  Whether or not Arbitrator Schmertz' decision was correct, it was well within his authority as a labor arbitrator interpreting the relevant agreements.  Accordingly, this Court is required to defer to the arbitrator's construction of those agreements, and to enforce or confirm the arbitration award.

### D.     <u>The APWU's Arguments to the Contrary are Unavailing</u>

Although we will, of course, respond at greater length to whatever arguments the APWU and the Postal Service advance in their briefs, we briefly address here two points that we expect the APWU to advance based on its complaint and its previous arguments in arbitration.  Neither of these arguments has merit.

1.     <u>Any Ambiguity in the Arbitrator's Opinion Does Not Alter the Conclusion that the Arbitrator Acted within his Authority</u>

It certainly can be argued that Arbitrator Schmertz' arbitration award is not, in all respects, a model of clarity, and that there are ambiguities in his determination that the matter before him involved a non-jurisdictional, cross-craft grievance rather than a jurisdictional dispute.  As we explained above, however, ambiguities in an arbitrator's statement of reasons for a decision – or even total silence regarding the basis for the decision – are not a reason to

20

overturn the award. *See supra* at 13-14. The relevant question is not whether Arbitrator Schmertz clearly articulated his basis for returning the grievance to the grievance procedure under Article 15 of the National Agreement, but rather whether there is a "possible interpretive route to the award" that is within his authority. *See Chicago Typographical Union No. 16*, 935 F.2d at 1505-06.

Here, as we have shown, there clearly is a "possible interpretive route to the award," which draws its essence from the relevant labor contracts. Arbitrator Schmertz might well have articulated that route more clearly and fully than he did. His conclusion that the dispute was "arbitrable under the collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum," *see* Hill Decl. Ex. 15, at 7, might arguably be read in other ways. Under the governing legal standards, however, it simply is not open to the Court to entertain speculation that, for example, the arbitrator might have meant that he was choosing to refer the dispute to the grievance procedure under Article 15 of the National Agreement *even though* it was a jurisdictional dispute. *Cf.* Compl. at ¶ 12 (alleging that the RI-399 dispute resolution process is the exclusive process for resolving jurisdictional disputes and that an arbitrator is not permitted to "rule on whether jurisdictional dispute may be heard in the grievance procedure").

Such an interpretation of the arbitrator's award in this case would be particularly inappropriate given that the NPMHU's post-hearing brief expressly focused on the argument that the grievances were filed properly as cross-craft grievances that could be resolved under Article 15, *see* Hill Decl. Ex. 12, at 3-

16, and also given that there is no indication of any argument during the arbitration proceeding, nor any indication in the arbitrator's award, to suggest that if a dispute were indeed a jurisdictional, rather than cross-craft, dispute it nevertheless could be returned for processing under one of the National Agreements.

Whatever ambiguity there may be in the arbitrator's decision does not, in short, alter the conclusion that, at a minimum, the arbitrator had a "possible interpretive route to [this] award" that was within his authority, and that the Court should accordingly defer to that award.[3]

> 2.    The Arbitration Award Must be Enforced Because it Draws
>        its Essence from the Applicable Contracts, Whether or Not
>        the Arbitrator's Determination that this was a Cross-Craft
>        Grievance was Correct

Finally, any argument that Arbitrator's Schmertz' decision to return the grievance for processing under the National Agreement was wrong because the dispute actually was a jurisdictional dispute rather than a cross-craft grievance

---

[3] Any argument that the arbitrator exceeded his authority by declining to apply the time limits for the RI-399 dispute resolution process to his threshold decision on arbitrability fails for similar reasons.  Although the arbitrator did not articulate clearly his reasons for that decision, *see* Hill Decl. Ex. 15, at 5-7, his decision incorporates the most plausible interpretation of the parties' agreements.  If the provisions of the relevant National Agreement relating to timeliness were not applied to the threshold determination whether a dispute is a cross-craft grievance under the applicable National Agreement or a jurisdictional dispute within the tripartite RI-399 dispute resolution process, the requirement under Article 15 of the National Agreement that the Postal Service raise timeliness of a grievance within the first two steps of the process or waive the objection would be rendered meaningless.  Otherwise, the Postal Service could refer any grievance in which it had waived timeliness to the RI-399 process and assert the defense – perhaps, as in this case, several years after waiving it.

would be misplaced.[4]  The issue before the Court is not whether the arbitrator was right or wrong.  If the arbitrator's award "draw[s] its essence from the contract," the fact "that a court is convinced he committed serious error does not suffice to overturn his decision."  *Misco*, 484 U.S. at 38.

Here, the NPMHU filed the underlying dispute as a cross-craft grievance, and the Postal Service treated the dispute as a cross-craft grievance when it initially denied the claim at Steps 2 and 3 of the grievance procedure and scheduled the matter for arbitration.  *See supra* at 6.  Those grievances alleged that the work in dispute clearly was within the NPMHU's jurisdiction under nationally recognized craft assignments.  *See id.*  During the hearings before Arbitrator Schmertz, the NPMHU argued that the underlying disputes were properly considered cross-craft grievances, and as such were arbitrable under Article 15 of the NPMHU-USPS National Agreement.  *See supra* at 7-8.  The NPMHU specifically requested that the arbitrator return the matter to the grievance procedure under Article 15 of the National Agreement for further

---

[4] Although not necessary to any determination by this Court, it is clear that Arbitrator Schmertz' decision is in fact correct.  The NPMHU filed the underlying dispute as a cross-craft grievance and argued from the beginning that the assignment of work in the Label Room and Duplicating Room of the GMF to employees represented by the APWU violated nationally recognized craft assignments.  *See* Material Facts, at ¶¶ 15-16.  The NPMHU sought to enforce these national craft assignments in regard to the work in question.  *See id.*; Hill Decl. Ex. 7, at NPMHU 0041-49 (grievances with citations to national craft assignments and descriptions of those assignments).  If the national craft assignments encompass the work at issue, an arbitrator under the National Agreement should enforce those craft assignments, and conclude that the APWU-represented employees performing the work were improperly "crossing craft."  Accordingly, the dispute underlying this litigation is properly considered a cross-craft grievance, which can and should be resolved under Article 15 of the NPMHU-USPS National Agreement.

arbitration proceedings, relying on the 2000 Settlement Agreement signed by all three parties to this case (which itself states that disputes referred in error to the RI-399 process should be removed from that process and returned to Article 15 of the relevant National Agreement). *See supra* at 7. And at least one other RI-399 arbitrator in a similar case has granted precisely that remedy, concluding that the dispute before him was a non-jurisdictional dispute that must be removed from the RI-399 forum in favor of arbitration under the relevant National Agreement. *See supra* at 17-18.

In short, any argument that Arbitrator Schmertz' award did not "draw its essence from the contract," *Misco*, 484 U.S. at 38, or that the arbitrator was not at least "arguably construing or applying the contract and acting within the scope of his authority," *id.*, is without merit and fails as a matter of law. Whether or not Arbitrator Schmertz was right in returning the parties' dispute to the grievance procedure under Article 15 for arbitration, this simply is not the rare case in which vacatur of a labor arbitration award is warranted under the highly deferential standard of review that should be applied.[5]

### CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for the NPMHU, deny the APWU's request to vacate the arbitration award, and grant the NPMHU's counterclaim/cross-claim to confirm the award and compel

---

[5] There has been no allegation that the arbitration award should be vacated on any other ground, such as being contrary to public policy, a product of corruption or bias, or unenforceable for any other reason.

further arbitration proceedings of the underlying dispute under the grievance procedure found in Article 15 of NPMHU-USPS National Agreement.

Respectfully submitted,

__/s/ Bruce R. Lerner___
Bruce R. Lerner (D.C. Bar No. 384757)
Lisa M. Powell
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, NW, Suite 1000
Washington, DC 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
Email: blerner@bredhoff.com

*Attorneys for Defendant*
*National Postal Mail Handlers Union*

Dated:  June 30, 2006