UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>　　　Plaintiff,<br><br>　　　v.<br>(RBW/ak)<br><br>NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,<br><br>　　　and<br><br>UNITED STATES POSTAL SERVICE,<br><br>　　　Defendants. | Case No. 1:05-CV-01290 |

# Exhibit 2 to Collins Declaration

07135.pdf
L.BYARS:DECEMBER12,2004
REMANDED:APW/NPMHU
93051220:REGIONAL

# RI-399 JURISDICTIONAL DISPUTE ARBITRATION PANEL

In the Matter of the Arbitration

between

UNITED STATES POSTAL SERVICE

and

AMERICAN POSTAL WORKERS UNION,

and

NATIONAL POSTAL MAIL HANDLERS
UNION

**POST OFFICE:** MID-FLORIDA P&DC LAKE MARY, FL.

**CASE NUMBER:** H90M-IH-J 93051220

| | |
|---|---|
| BEFORE: | Lloyd L. Byars<br>Arbitrator |
| APPEARANCES: | |
| For the U. S. Postal Service: | Roberta H. Albright<br>Labor Relations Specialist |
| For the APWU:<br>(Intervener) | Billy Woods<br>National Business Agent |
| For the NPMHU: | David Dean<br>NPMHU Advocate |
| Place of Hearing: | Lake Mary, FL |
| Date of Hearing: | October 19, 2004 |
| Briefs Due: | November 15, 2004 |

AWARD: The Grievance is concerned with a non-jurisdictional issue and therefore must be resolved under Article 15 of the NPMHU Collective Bargaining Agreement.

Date of Award:                                             December 12, 2004

_____
Lloyd L. Byars, Arbitrator

The hearing on the above referenced case was held on October 19, 2004 at the Mid-Florida Processing & Distribution Center (P&DC) located in Lake Mary, Florida. All parties were present for the hearing and were

given the opportunity to present evidence, examine witnesses, and argue their cases. At the beginning of the hearing, the representative of the National Postal Mail Handlers Union (NIPMHU) raised the issue of arbitrability contending that the subject dispute should not be heard under the RI-399 Dispute Resolution Procedures (DRP), but rather should be heard under the procedures in Article 15 of the Collective Bargaining Agreement (CBA). The United States Postal Service (USPS) and the American Postal Workers Union (APWU) disagreed with the NPMHU arguing that the dispute should be heard in accordance with the RI-399 DRP. The parties requested that they be allowed to write briefs on the arbitrability issue and agreed to a submission date of November 15, 2004. All three parties submitted briefs on or before this date and the record was closed.

## STATEMENT OF THE ISSUE

Does this Grievance involve a jurisdictional dispute that must be resolved under RI-399 DRP or is it a non-jurisdictional dispute that must be resolved under Article 15 of the NPMHU National Agreement?

## CHRONOLOGY OF EVENTS

Based on an analysis of the exhibits and the briefs filed by the parties, the following events and dates are pertinent to this dispute:

1. The Step 1 meeting was held on June 1, 1993. The NPMHU charged that Management was utilizing clerks to do mail handler work. One of the corrective actions requested was that Management should cease and desist assigning such work to the clerk craft.[1]

2. The Step 2 meeting was held on July 15, 1993. The Grievance Summary - Step 2 form indicates that the positions of the parties did not change.[2]

---

[1] See Joint Exhibit #1, pages 17 and 21.

[2] See Joint Exhibit #1, *Modified PS Form 2609,* p. 14.

3. The NPMHU filed corrections and/or additions to the Step 2 decision on August 4, 1993 arguing that the facts or contentions set forth in the Step 2 decision were incomplete or inaccurate. The NPMHU also stated that the purpose of this grievance is to show that Management is intentionally giving our flip over to the clerks.[3]

4. The Grievance was appealed to Step 3 on August 4, 1993. The Union argued that any by-pass should be faced and cancelled by the mail handler craft.[4]

5. In a letter dated September 24, 1993, Management denied the Step 3 Grievance appeal. The letter states, in part, "Whereas the mail handler craft does not have exclusive jurisdiction of the cancellation of mail, if the union felt a dispute exists with the assignment of the mail to the OCR operation, the appropriate recourse would have been to address the issue under the Dispute Resolution Procedures. These National level procedures deem any other appeal of work jurisdiction disputes procedurally defective."[5]

6. The Grievance was appealed to regular arbitration on October 20, 1993. The Union defined the issue as "Management is bypassing Flip Flop Operation and having this work performed by clerk craft employees in violation of Article 7.2."[6]

7. Mr. David Dean, President of Local 318 of the NPMHU, requested that Mr. Jewell Reed, Regional Director - Southern Region of the NPMHU, refer the instant Grievance and two other grievances to Step 4 on December 16, 1993.[7]

8. On April 8, 1994, Mr. William Quinn, the National President of the NPMHU, and Ms. Gloria Gray, a Labor Relations Specialist with the USFS, agreed to refer the instant Grievance to the Regional Dispute Resolution

Committee (RDRC) in accordance with the RI-399 Dispute Resolution Procedures.[8]

9.     Ten years later, on July 8, 2004 the RDRC finally discussed the instant Grievance and still could not resolve the dispute.[9]

**POSITION OF THE NATIONAL POSTAL MAIL HANDLERS UNION (NPMHU)**

The NPMHU contends that this case is a non-jurisdictional dispute involving Management's decision to stop facing and canceling the reject letters from the Advanced Facer-Canceler System (AFCS) choosing instead to run the mail through the OCR and send it out to carriers across the country. The Union argued that the primary craft to face and cancel the reject letters was never changed or challenged. Management merely chose not to perform the canceling function. The Union admitted that it initially claimed that the work was being transferred to the clerks.[10] The reality was that the mail was no longer being canceled by anyone in the facility. The local Management never considered the case to be jurisdictional and justified their right to make the change based on maintaining the efficiency of operations.

---

[3] See Joint Exhibit #1, p. 13.

[4] See Joint Exhibit #1, p. 12.

[5] See Joint Exhibit #1, p. 10.

[6] See Joint Exhibit #1, p. 9.

[7] See Joint Exhibit #1, p. 6.

[8] See Joint Exhibit #1, p. 3.

[9] See NPMHU Brief, pp. 15-16.

[10] The Mail Processors were actually performing the work.

The MPMHU also contended that all three parties (USPS, APWU, and NPMHU) agreed that the primary craft to cancel originating mail was the Mail Handler craft.[11] Furthermore, the NPMHU never challenged the Mail Processors as the primary craft to load and sweep the OCR's regardless of what mail they processed.

In its brief, the NPMHU devoted several pages to the issue of cross-craft versus jurisdictional disputes.[12] The Union argued that it has serious problems with the USPS claiming that any grievance that discusses primary craft assignments or even mentions RI-399 must be jurisdictional in nature and therefore referred to the RI-399 Dispute Resolution Process (DRP). The Union argued that Management makes these referrals because they provide several advantages for Management. First, jurisdictional cases generally allow the USPS to avoid the monetary liability that is normally attached to Article 7.2 cross-craft violations. Second, some Management representatives refer cases to the RI-399 DRP because they believe the criteria to establish a violation of any kind are much higher for the Unions than they would be under Article 15 of the CBA and that any Management action can be sustained under the guise of efficiency. Another reason Management prefers jurisdictional arbitration the NPMHU contends is because it is a three-party process that results in one Union siding with Management against the other Union. Finally, the Union believes that so many cases are referred to RI-399 DRP because Management has nothing to lose and everything to gain. Once the issue is referred to DRP, no repetitive cases can be processed to step three.

---

[11] Management Exhibit #1, pp. 1-17.

[12] NPMHU Brief, pp. 7-13.

>As far as this Grievance is concerned, the Union pointed out that neither Management nor the Union claimed this case to be jurisdictional at Step 1 or Step 2 of the grievance process. In both steps the Union cited Article 7.2 and sought a monetary remedy and a cease and desist order. The local management's reason for denial of this Grievance at Step 1 referred to Article 3.3/3.4 of the National Agreement. In Step 2, the Management response was that the Union failed to establish a violation of the cited articles. Furthermore, the Union asserts that in its Corrections and Additions to Management's decision the Shop Steward erroneously stated that "Clerks are canceling the mail that leaves this facility."[13] However, the Union argues that even if clerks were canceling the mail that would still not make this a jurisdictional case.

>The Union contends that the Step 3 decision is where this Grievance went wrong. In its decision Management first asserts that this Grievance is a challenge of Management's right to maintain efficiency of operations. The Union alleges that if Management had stopped at that point the Union would have scheduled the case for regular regional arbitration as an Article 7.2 cross-craft grievance. However, Management in its denial of the Grievance went on to say it was procedurally defective based on RI-399 DRP. The Union acknowledges that according to the Q&A on RI-399 the Union cannot go forward with this Grievance as a regular regional arbitration case when there has been a Management claim of a jurisdictional dispute. The Union claimed that the RDRC was not even meeting in 1993 and did not agree to a procedure to arbitrate cases until January 1998.

---

[13] See Joint Exhibit #1, p. 13.

>At the Step 4 meeting on the instant Grievance, Management drafted a letter to refer this case to the RI-399 DRP.[14] The referral letter was signed by a Management representative and Mr. William H. Quinn, National President of the NPMHU. The Union contends that his signature does not mean or somehow bind the Union to an agreement that the case is jurisdictional rather than cross-craft. The Union argues that the only agreement between the Union and Management is stated in the referral letter as follows:

>>After reviewing this matter, we agreed that in accordance with the RI-399 Dispute Resolution Procedures, the above-referenced case is to be referred to the Regional Dispute Resolution Committee.[15]

The Union points out that the RDRC met on July 8, 2004 and could not reach agreement on whether this Grievance involved a jurisdictional claim.

**POSITION OF THE UNITED STATES POSTAL SERVICE (USPS)**

>The USPS states that there is no dispute that the NPMHU agreed to place this Grievance in the DRP as demonstrated by the signature of the President of the NPMHU on the referral letter. Management argues that the Union is attempting to ignore the decision of the Union President. Management also contends that the Union attempted to change the issue as it moved through the steps in the grievance process. Initially the issue identified by the NPMHU was whether Management took work which had been performed by mail handlers and reassigned it to clerk employees. Later in its request to refer this Grievance to Step 4, the Union refers to an interpretive issue involving the utilization of city delivery carriers to cancel mail. Management argues that the parties at the national level found that the matter was not interpretative and referred it to the RDRC.

---

[14] See Joint Exhibit #1, p.3.

[15] Ibid.

Management further contends that Question 3 of a document entitled "Q and A -RI-399 Dispute Resolution Procedures"[16] requires that if one of the parties believes the issue constitutes a jurisdictional dispute the Grievance must be referred to the DRP. Management also points out that a "Settlement Agreement"[17] signed by all three parties dealt with a number of issues including non-jurisdictional cases. This Agreement provides that Regional and Local Dispute Resolution Committees are responsible for identifying those grievances that did not deal with jurisdictional issues.

## POSITION OF THE AMERICAN POSTAL WORKERS UNION (APWU)

The APWU argued that the NPMHU agreed to put this Grievance in the DRP as evidenced by the signature of the NPMHU President William Quinn on the referral letter. The APWU also points out that Question 3 of the Q and A - RI-399 DRP requires that if any party feels that a grievance is a jurisdictional dispute it must be referred to the RI-399 DRP.

## OPINION OF THE ARBITRATOR

On April 16, 1992 the USPS, NPMHU, and APWU issued a "Memorandum of Understanding" in Regional Instruction 399 agreeing to a new procedure for resolving jurisdictional disputes. Shortly thereafter, on October 21, 1992 the parties issued another document entitled "Q and A -RI-399 Dispute Resolution Procedures" that was designed to clarify issues relating to RI-399. This document contains a series of eleven (11) questions and answers. Question and Answer #3 reads as follows:

3.   If a grievance exists or is filed alleging a violation of the contract other than RI-399 (e. g. Article 7.2) and one of the parties believes the issue in the grievance constitutes a jurisdictional dispute, what if anything should be done with the grievance?

Answer: It must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim. If it is determined it involves a jurisdictional claim, the grievance will be processed in the Dispute Resolution Procedures. If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, that question is appealable through the Dispute Resolution Procedures up to and including arbitration for resolution prior to the parties addressing the merits of the dispute. The three parties shall review cases at the lowest possible level which raise the potential of containing a jurisdictional dispute so that the proper procedure is utilized to resolve disputes/grievances.[18]

---

[16] See Joint Exhibit #6, p. 1-2.

[17] See Joint Exhibit #8, Settlement Agreement.

[18] See Joint #6, pp. 1-2.

The language in Question and Answer #3 is clear and unambiguous. If one of the parties believes that a grievance involves a jurisdictional claim, the grievance must be referred to the Dispute Resolution Committee (DRC). The DRC makes a determination on whether the grievance involves a jurisdictional claim. If the DRC cannot reach agreement on whether the grievance involves a jurisdictional claim, the question is answered through the DRP up to and including arbitration. This is the procedure and the procedure has been followed in the instant grievance.

The NPMHU strongly argued that after the publication of the Q & A -RI-399, few if any cross-craft grievances existed anymore. All it takes is for one party to believe that a jurisdictional claim existed. Furthermore, the NPMHU argued that Management did not have to provide a basis for its alleged belief and that they could make the claim at any step of the grievance procedure. While abuses of the DRP are possible, that does not change the wording of Item #3 of Q&A -RI-399. It is clear that although he might disagree with the referral of this Grievance to the DRP, Mr. Quinn felt that given Item #3 "he had no choice"[19] but to sign the referral letter. The

NPMHU argued that signing the referral letter does not mean that it is agreeing that the instant case is jurisdictional. The arbitrator agrees that referring the Grievance to the RDRC is merely one step in the procedure for determining whether the Grievance is jurisdictional.

---

[19] See the Brief of the NPMHU, p. 15.

On August 3, 2000, the three parties reached agreement on issues involving Operations 110-129 and 180-189, Dock Connection Transfers, and Non-Jurisdictional Cases. This "Settlement Agreement"[20] was intended as clarification to existing Memoranda of Understanding, Letters of Intent and previous correspondence. Item #3 of this agreement is concerned with Non-Jurisdictional Cases and is relevant to this Grievance. Item #3 reads as follows:

The parties agree that those grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement. Regional and Local Dispute Resolution Committees are responsible for identifying such grievances.

For these purposes, non-jurisdictional cases are those cases in which the underlying craft jurisdiction is not under challenge. These cases are cases where there exists an inventory that has been properly completed and signed by representatives of all three parties; cases where there was no dispute pending as of April 29, 1992, and there has been no claim of New or Consolidated Facilities, New Work, or Operational Change since that date; and cases where the remedy sought by the grieving union does not include permanent reassignment of the work to a different craft. The mere citation of or reference to RI-399 either in a union's grievance or in a management response to a grievance does not mean that the case involves a jurisdictional dispute; rather, the parties must examine each case to determine whether it involves a jurisdictional dispute that must resolved under RI-399 or whether it is a non-jurisdictional case that should be resolved under Article 15 of the appropriate National Agreement.

Under the language of this agreement and Item #3 of the Q & A -RI-399 DRP, Regional and Local Dispute Resolution Committees are responsible for identifying non-jurisdictional grievances. If the parties cannot agree, the issue is appealable through the DRP up to and including arbitration.

---

[20] See Joint Exhibit #8.

This agreement defines non-jurisdictional cases as being those cases in which the underlying craft jurisdiction is not under challenge and goes on to give specific criteria to assist the RDRC, the LDRC, and jurisdictional arbitrators in determining non-jurisdictional and jurisdictional cases. Non-jurisdictional cases are cases where:

1. an inventory exists that has been properly completed and signed by representatives of all three parties;

2. no dispute exists as of April 29, 1992;

3. no claim made of New or Consolidated Facilities, New Work, or Operational Change since April 29, 1992, or

4. no cases exist where the remedy sought by the grieving union does not include permanent reassignment of the work to a different craft.

Summarized below is an analysis of the instant grievance in regard to these four (4) conditions.

Condition #1 - On March 11, 1993, an Installation Inventory of Mail Processing Operations for the Florida P&DC was approved by all three parties. In that inventory Mail Handler is indicated as the primary craft for Operation 010 -Function #6, Operation 011-Function #4, Operation 014-Function #6, and Operation 015-Function #6.[21] The Union submitted a document dated February 5, 1999 that all three parties agreed on the

primary craft, operation, description, and dispatches relevant to the RI-399 for the Mid-Florida P&DC. This document maintained the primary craft assignments that are at issue in this Grievance.

Condition #2 - No evidence was offered that a dispute was pending as of April 29, 1992.

Condition #3 - No evidence was offered that there had been a claim of New or Consolidated Facilities, New Work, or Operational Change since April 29, 1992.

Condition #4 - The remedy sought by the grieving union does not include permanent reassignment of the work to a different union.

All four conditions necessary to made a decision on whether this Grievance is jurisdictional or non-jurisdictional point to the conclusion that this is a non-jurisdictional case.

### AWARD

The Grievance is concerned with a non-jurisdictional issue and therefore must be resolved under Article 15 of the NPMHU Collective Bargaining Agreement.

---

[21] Management Exhibit #1 and NPMHU Exhibit #6.