UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, ) ) ) ) Plaintiff, ) ) v. ) (RBW/ak) ) NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, ) ) ) ) ) and ) ) UNITED STATES POSTAL SERVICE, ) ) Defendants. ) | Case No. 1:05-CV-01290 |

# Exhibit 4 to Collins Declaration

RI-399  JURISDICTIONAL DISPUTE ARBITRATION PANEL

|  |  |  |
|---|---|---|
| In the Matter of the Arbitration | ) | |
| | ) | |
| between | ) | |
| | ) | |
| UNITED STATES POSTAL SERVICE | ) | POST OFFICE: Jersey City, NJ |
| | ) | NJI-FMC |
| and | ) | CASE NUMBERS: |
| | ) | A90M-1A-J94049968 94066 |
| AMERICAN POSTAL WORKERS UNION | ) | A98M-1A-J99221400 99056 |
| AFL-CIO | ) | A98M-1A-J99221407 99055 |
| | ) | |
| and | ) | Class Action NJI & BMC |
| | ) | |
| NATIONAL POSTAL MAIL HANDLERS | ) | |
| UNION | ) | |

BEFORE ARBITRATOR CHARLES T. SCHMIDT, JR.

APPEARANCES

    For the U.S. Postal Service:   JoAnn M. Gornicz, Labor Relations Specialist

    For the APWU:          Michael E. LaPoint, APWU Advocate

    For the NPMHU:       Lawrence Hill, N.Y. State Rep. Local 300

Place of Hearing:        Jersey City, NJ

Date of Hearing:        3-23-05 & 6-24-05

AWARD:             The Dispute is not Arbitrable

Date of Award         10-10-05

Charles T. Schmidt, Jr. Ph.D.
Arbitrator

1

R.I.-399 JURISDICTIONAL DISPUTE ARBITRATION PANEL

---

In the matter of the Arbitration amongst:

American Postal Workers Union

    - and -                            Award and Opinion
                                       Of the Arbitrator

The United States Postal Service

    - and -

The National Postal Mail Handlers Union

Case Numbers: A90M-1A-J94049968 94066
               A98M-1A-J99221400 99056
               A98M-1A-J99221407 99055

---

This dispute arises under the terms and conditions of the April, 1992 MOU between the USPS, the APWU and the NPMHU entitled Regional Instruction 399-Dispute Resolution Procedures (Joint Exhibit No. 1). The undersigned Arbitrator was appointed to hear and decide these disputes under the procedural and other requirements of these RI 399 procedures.

Accordingly, this Arbitrator was thus appointed, notice was given and hearings conducted on 3/23/05 and 6/24/05 in Jersey City, N.J., at which time the parties appeared and were given the opportunity to present their cases, including the presentation of evidence, documentation and other proofs, and the opportunity to present, examine and cross-examine witnesses. Witnesses were sworn. Representing the APWU was Michael E. LaPoint; the USPS by JoAnn Gornicz; and the NPMHU by Lawrence Hill. All parties submitted post hearing briefs as full components of the case record. All filings were within the 8/26/05 time frame established at the 6/24/05 hearing.

2

ISSUE IN DISPUTE:

The NPMHU as the moving party presented three (3) grievances, two of which (Nos. 99-055 and 99-056)[1] claimed violations of Articles 5, 7.2 and 12 of the National Agreement ... that USPS management is crossing crafts by assigning clerk craft employees to perform mail handler duties on the GG lines of PSM 3&4 in the Bulk Building. The third grievance (no. 94-066)[2] is an alleged violation of R.I. 399 ... that USPS management improperly assigned clerks to the NMO in the 281 operation. Grievances 99-055 and 99-56 were filed in June, 1999 and 94-066 is May, 1994.

Thereafter, the parties jointly agreed that there remained a threshold issue of procedural ARBITRABILITY, and agreed the issue to be:

IS THE DISPUTE ARBITRABLE?

USPS POSITION:

The "Service" maintains that these three (3) grievances are not arbitrable on procedural grounds.

The basis for this position is the 4/16/92 MOU, "R.I. 399 Dispute Resolution Procedures", as well as the

3/23/94 Agreement addressing R.I. 399 inventories. Within the 4/16/92 MOU the parties have agreed

that "No new disputes will be initiated at the local level by either Union challenging jurisdictional work

assignments in any operations as they currently exist. Except as otherwise specifically provided in the

New or Consolidated Facilities, New Work, or Operation Change Sections contained in this

memorandum ..." And, under the 3/23/94 Agreement (RI 399 inventories) ..." as of June 1, 1994, any

pending disputes/grievances which have not been documented through (the Agreements procedures) will

be considered closed."

Accordingly, the USPS concludes Grievance A90M 1A 94049969 (940660 (J-6) Class Action

NJI& BMC was grieved on or about 4/28/94, grievance A98M 1A 99221400 (99058) (J-4) Class Action

NJI & BMC was filed on or about 6/4/99 and grievance A98M 1A J 99221407 (99055) (J-5) Class

---

[1]Joint Exhibits Nos. 4 &5

[2] Joint Exhibit No. 6

Action NJI & BMC was grieved on 6/4/99. These grievances were filed well beyond the allowable parameters for filing RI 399 jurisdictional disputes as outlined in the documents referenced above nor did they articulate nor substantiate any of the three permissible exceptions. Therefore it is the position of the postal Service that these grievances be judged as not arbitrable and thus denied.

APWU POSITION:

The APWU concurs with the USPS that these grievances are not arbitrable and must be denied. Introduced by its' formal/printed opening statement and supported by its' post-hearing brief, the APWU asserts that where all three parties entered into the Memorandum of Understanding in April, 1992, the agreed principles included: "with the exception of New or Consolidated Facilities, New Work or Operational Changes, no new disputes will be initiated at the local level by either union challenging jurisdictional work assignments in any operations as they existed on April 29, 1992."

With respect of the three (3) cases which are in dispute, the first of three, 94066, was filed by the Mail Handlers on May 3, 1994. This is two years after the date for filing a grievance over a dispute for jurisdiction. The second, 99056, and third, 94055, were filed on June 5, 1999. This is over seven years after April 29, 1992. Even the Mail Handlers Union at their Regional level noted in a letter to the Local Mail Handler representative that these two cases may not be suitably presented at their (regional) level.

Thus, the APWU continues, clearly, the Dispute Resolution MOU controls the means and ways of how new disputes after April 29, 1992 will be initiated. The Mail Handlers Union chose to file grievances with the employer under their contract provisions and failed to utilize the tripartite procedures. The Language in the Dispute Resolution Procedures is clear. No New disputes will be initiated by either Union. The Mail Handlers DID NOT advance any of the three exceptions appropriately within the scope of the tripartite procedures. The grievances therefore must be denied according to the APWU.

4

The APWU also argues that the arbitrator's remedial scope is limited and may not include a remedy which would require that some or all of the matters referenced herein to be referred to the bilateral processes under the National Agreement.

NPMHU POSITION:

The essence of the NPMHU position is that the grievances were properly filed in 1994 and 1999 through the "regular" Article 15 grievance procedure since "between December of 1992 until at least November of 2000, there were (1) no RI-399 appeal forms agreed upon by the parties, and, (2) there were no identifications whatsoever of who, under RI-399 procedures to appeal to on the local, regional and national basis." The NPMHU also claims to rely upon statements allegedly made by APWU, RDRC subcommittee member Suslak that grievances filed by either party in the system during the 1990's and early 2000's were in a "black hole" for that time period and that it was his understanding...that any case which was sent to arbitration by that RDRC subcommittee was fully eligible to be heard on the merits ... and those cases would not suffer the scrutiny of allegations of technical defects."

The NPMHU continues that the accepted protocol was ... all disputes were considered to be properly filed through the regular Article 15 grievance procedure. Moreover, the NPMHU maintains, had it not been for the USPS referral into the dispute resolution procedure, these three (3) cases would have been arbitrated by Article 15 arbitrators as cross craft cases.

The NPMHU further references other RI-399 arbitration decisions and claims that arbitrator "Has now come to the inevitable conclusion that the arbitrability challenges should be denied on the basis that both unions were up against critical institutional problems and ... that the parties had intended that the issues proceed to arbitration notwithstanding those arbitrability and timeliness issues."

Finally, the NPMHU maintains that cases 99056 and 99055 were properly filed as purely legal

5

cross craft cases, since the Mail Handlers were clearly designated to be the primary craft. And, accordingly, these two 1999 cases should most properly be rendered as restoration to Status quo ante commensurate with the Essex Junction Case, or at the very least, referred to the Article 15 arbitration forum as was ruled in the referenced Brooklyn cases since the USPS generated facility inventory assignments were never effectively challenged. And, in the 94066 case, the work was identical to work that the Mail Handlers were already performing within the section. As such, without a USPS management mandatory formal notification, the dispute must be relegated to a cross craft grievance under Article 15, or heard on the merits under R.I. 399 to determine which craft is primary.

Accordingly, the NPMHU believes that all three (3) grievances are arbitrable under either R.I. 399 or Article 15 procedures ... (but) "The cases really mandate referral back to the regular Article 15 grievance procedure ... More properly, it should be referred back..." (NPMHU Opening Statement).

## DISCUSSION AND AWARD:

The two (2) central reasons (there may be others) for a challenge to the arbitrability of grievances filed under the R.I. 399 procedures are timeliness (filed after the 9/16/92 MOU) and a failure to establish that the grievance(s) falls under one of the three (3) exceptions (New or Consolidated Facilities, New Work, or Operational Changes).

Herein, all three (3) grievances were filed long after the 4/16/92 MOU; i.e. #99055 and 99056 were both filed on 6/4/1999 and #94066 on 5/3/1994. Moreover, there was no evidence which absolutely established that any of these three (3) grievances supported a claim to be an "exception"; i.e. they were not related to "new or consolidated facilities;" nor to "new work;" nor to operational changes."

Thus, it is immediately certain that these three (3) cases cannot meet the arbitrability conditions of the RI-399 MOU.

6

However, the NPMHU has raised the argument that at least two (2) of these cases (#99055 and 99056) and perhaps # 94066 as well remain arbitrable under either the R.I. 399 Procedures, or, as cross craft grievances under the CBA's Article 15; the theory being, inter alia, that critical "Institutional Problems" or a set of specific fact circumstances warrant such a conclusion by this Arbitrator.

I am not so persuaded. All three (3) of these grievances were filed on Standard Grievance Forms. Nos. 99055 and 99056 claim violations of Article 5, 7.2 and 12 of the National CBA, with No. 94066 claiming a R.I.-399 violation. The NPMHU argument that 99055 and 99056 should be referred to the Article 15 forum is specifically addressed within the tri-partite Q & A, R.I. -399 document.

**Q3.    If a grievance exists or is filed alleging a violation of the contract other than RI-399 (e.g. Article 7.2) and one of the parties believes the issue in the grievance constitutes a jurisdictional dispute, what if anything should be done with the grievances?**

**Answer: It must be referred to the Dispute Resolution Committee for an initial determination as to whether or not it involves a jurisdictional claim. If it is determined it involves a jurisdictional claim, the grievance will be processed in the Dispute Resolution Procedures. If the Committee is in disagreement as to whether or not the grievance involves a jurisdictional claim, that question is appealable through the Dispute Resolution Procedures up to and including arbitration for resolution prior to the parties addressing the merits of the dispute. The three parties shall review cases at the lowest possible level which raise the potential of containing a jurisdictional dispute so that the proper procedure is utilized to resolve disputes/grievances.**

Thus, these 1999 grievances were referred to the Regional DRC. There is no record that the Committee disagreed that they were grievances involving a jurisdictional claim. Accordingly, the RDRC referred these two grievances to arbitration on 10/13/2004 (3/23/2005 hearing) and on 5/13/2005 (6/24/2005 hearing). In both notices, the RDRC specifically identified its authority to do so as being "Pursuant to Regional Instruction 399 Procedures ..." Clearly then, the RDRC unanimously identified these grievances as R.I. 399 alleged violations. There was no recorded disagreement. In addition, each notice specifically guarantees that issues of timeliness and/or arbitrability are not waived by any of the parties to these disputes.

7

Therefore, Nos. 99055 and 99056, under the specific factual record herein cannot be considered for possible deferral to the Article 15 procedures, for the parties have unanimously agreed that they are jurisdictional claims under R.I. 399. <u>As such they are not arbitrable.</u> Claims filed in 1999 are more than 7 years beyond the April, 1992 deadline established by the MOU. Moreover, there was no convincing evidence that the work was new, that there were operational changes or that facilities had been consolidated or were new.

Case No. 94066 must likewise be dismissed for the same reasons. Initially filed as a R.I. 399 jurisdictional dispute in 1994, it was never suggested to be otherwise. But it too was delinquent under the R.I. 399 Procedures by approximately 2 years and did not fall under the 399 exceptions.

I am not unmindful of the "dark hole" or "institutional barrier(s)" described by others as contributing to the time delays and appeals under these R.I. 399 Procedures. However, these failures to the process are for these three (3) parties to correct or modify — for I am bound to the very specific and unambiguous language of the MOU defining timeliness and exceptions.

AWARD:

Thus, for the reasons advanced heretofore:

The DISPUTE <u>IS NOT</u> ARBITRABLE.

Grievances Nos. 99055, 99056 and 94066 ARE DENIED.

Saunderstown, RI
October 10, 2005

Charles T. Schmidt, Jr. , Ph.D.
Arbitrator