UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, ) ) ) ) Plaintiff, ) ) v. ) ) NATIONAL POSTAL MAIL HANDLERS ) UNION, A DIVISION OF THE ) LABORERS' INTERNATIONAL UNION ) OF NORTH AMERICA, ) ) and ) ) UNITED STATES POSTAL SERVICE, ) ) Defendants. ) | Case No. 1:05-CV-01290 (RBW/ak) |

## DECLARATION OF LAWRENCE HILL

I, Lawrence Hill, swear and affirm under penalty of perjury the following:

1.    My name is Lawrence Hill. I am above the age of 18. I make this declaration in connection with the Motion for Summary Judgment filed by Defendant and Counter-Claimant/Cross-Claimant National Postal Mail Handlers Union (the "NPMHU") n the above-captioned case. The declaration is based on my own personal knowledge or on information obtained from NPMHU records.

- 1 -

2. I am currently serving my sixth elected term as New York State Executive Board Member for NPMHU Local 300, which represents Mail Handlers in the New York metropolitan area in the States of New York, New Jersey and Connecticut. I have served as an arbitration advocate for Local 300 since approximately 1987. I have additionally served as a Chief Shop Steward and Shop Steward for Local 300, among other union duties, and I have completed over thirty-six years as a Career Regular Mail Handler in the Long Island Postal District.

3. The NPMHU is the exclusive collective bargaining representative of members of the Mail Handler craft employed by Defendant United States Postal Service ("USPS"). Local 300 of the NPMHU represents approximately seven thousand mail handlers throughout the entire New York metropolitan area.

4. The NPMHU and the American Postal Workers Union (the "APWU") each have negotiated a national collective bargaining agreement with the Postal Service, often referred to as the NPMHU-USPS or the APWU-USPS "National Agreement," respectively. A true and correct copy of excerpts of the NPMHU-USPS National Agreement is attached to this Declaration as Exhibit 1, and a true and correct copy of excerpts of the APWU-USPS National Agreement is attached to this Declaration as Exhibit 2.

5. Article 15 of each National Agreement specifies the procedure for bringing and processing grievances under each Agreement. As an advocate for Local 300 of the NPMHU, I participate in the grievance/arbitration procedure by investigating grievances, researching authority, and processing grievances

throughout all steps of the grievance/arbitration procedure specified in the NPMHU-USPS National Agreement.

6. Because changes in technology and in the means of processing mail have blurred the original distinctions between the work performed by mail handlers represented by the NPMHU and clerks represented by the APWU, there have been frequent disputes over whether particular work should be performed by employees represented by the NPHMU or the APWU.

7. In 1979, the Postal Service issued Regional Instruction No. 399 ("RI-399"), which delineates criteria for making craft assignments and designates the primary craft assignment for many functions performed by Postal Service employees.  *See* Ex. 1, at 157-179.

8. RI-399 was challenged by the APWU and upheld in a tripartite arbitration award issued by Arbitrator Howard G. Gamser in October 1981.  A true and correct copy of the Gamser Award upholding RI-399 is attached to this Declaration as Exhibit 3.

9. After RI-399 was issued, from 1979 to 1992, the NPMHU and the APWU continued to bring jurisdictional disputes seeking to change or determine craft assignments under their respective collective bargaining agreements because there was no tripartite process for adjudicating such disputes.

10. In April 1992, the NPMHU, the APWU, and the Postal Service signed a tripartite agreement adopting and describing new procedures for

resolving disputes over craft assignments and for making craft assignments for new work, for work in new or consolidated facilities, and for work when there is an operational change.  A true and correct copy of this agreement, entitled "Regional Instruction 399 – Dispute Resolution Procedures" ("RI-399 Dispute Resolution Procedures"), is attached to this Declaration as Exhibit 4.

11.   Even after 1992, where the craft assignment, or jurisdiction, of work already has been decided, either union may bring disputes over the performance of work in violation of such craft assignments under Article 15 of its respective National Agreement.  For example, the Postal Service violates Article 7.2 of the NPMHU-USPS National Agreement if it assigns work within the jurisdiction of the NPMHU to employees outside of the NPMHU bargaining unit, and grievances to enforce Article 7.2 are filed under Article 15 of the NPMHU-USPS National Agreement.  Such grievances to enforce craft assignments are referred to as "cross-craft" or "crossing craft" grievances by the parties.

12.   As a shop steward, I have handled more than one hundred cross-craft grievances.  I have personally advocated approximately 35 class action regional arbitrations of cross-craft grievances in the last five to ten years.

13.   If one of the parties believes that a grievance brought under Article 15 of one of the National Agreements actually is a jurisdictional dispute that seeks to create or change craft assignments, rather than a cross-craft grievance that seeks to enforce craft assignments, that grievance may be referred to the RI-399 dispute resolution process, described in the RI-399 Dispute Resolution

Procedures.  In 1992, all three parties adopted a document explaining the new RI-399 process, entitled "Q and A – RI-399 Dispute Resolution Procedures," which states that a dispute is to be referred to the RI-399 dispute resolution process for a determination if any party believes it is a jurisdictional dispute.  A true and correct copy of this agreement is attached to this Declaration as Exhibit 5.

14.     Often, it is not obvious whether a dispute over work assignments is a cross-craft grievance or a jurisdictional dispute, because a party opposing a cross-craft grievance may dispute that the work has been assigned to the party pressing the grievance.  The difficulty distinguishing between cross-craft grievances properly heard under the National Agreements and jurisdictional disputes properly heard under the RI-399 Dispute Resolution Procedures has been clear to all three parties for many years.

15.     If a cross-craft grievance is referred to the RI-399 process in error, it should be returned for processing under the applicable National Agreement.  All three parties to this dispute memorialized this understanding in a tripartite Settlement Agreement in August 2000.  A true and correct copy of this Settlement Agreement is attached to this Declaration as Exhibit 6.

16.     The relevant portion of the August 2000 Settlement Agreement specifically provides as follows:

> The parties agree that those grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the

> RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement.

*See* Ex. 6.

17. The dispute underlying this case started with two grievances filed by members of Local 300 of the NPMHU in October 1993. These grievances challenged the Postal Service's staffing of the Label Room and Duplicating (Copy) Room of the Brooklyn General Mail Facility ("GMF") with clerical employees represented by the APWU.

18. The grievances stated that these functions clearly were within the jurisdiction of Mail Handlers, under the national Standard Positions 2-578, 2-579, 2-580, 2-581, 2-632, and SPO KP 0008 assigning the functions to the Mail Handler craft. True and correct copies of documents from the grievance process, including the grievances, the Standard Positions cited, letters denying the grievances, a letter scheduling the grievances for arbitration, and a letter removing the grievances to the RI-399 process are attached to this Declaration as Exhibit 7.

19. In November 1993, the Postal Service denied the grievances at Step 2 of the contractual grievance procedure, on the ground that the functions covered by the Standard Positions listed in the grievances were not authorized positions at the GMF. *See* Ex. 7, at NPMHU 0050-51.

20. In March 1994, the Postal Service denied the grievances at Step 3 of the contractual grievance procedure, on the grounds that the grievance lacked specificity and documentation, and that the NPMHU failed to identify

- 6 -

positions that were in the inventory of jurisdictional assignments created at the GMF when the facility opened.  *See id.* at NPMHU 0052-53.

21.   In accordance with the procedure specified in Article 15 of the NPMHU-USPS National Agreement, the grievances were certified for arbitration and scheduled for a hearing in March 1999.  *See id.* at NPMHU 0054.

22.   In February 1999, approximately one month before the scheduled arbitration hearing, the Postal Service referred the grievances to the RI-399 dispute resolution process because it believed the grievances presented jurisdictional disputes that needed to be resolved in that process.  *See id.* at NPMHU 0055.

23.   Under the RI-399 dispute resolution process, a dispute is referred initially to the Local Dispute Resolution Committee and then to the Regional Dispute Resolution Committee.  If it is not resolved at these levels, it is scheduled for arbitration.

24.   The grievances in this case were not resolved by the Dispute Resolution Committees and were scheduled for arbitration before Arbitrator Eric J. Schmertz, who was serving on a panel of arbitrators appointed by all three parties to resolve disputes under the RI-399 dispute resolution process.  I was the advocate who handled the arbitration for the NPMHU.  I have advocated arbitration cases within the RI-399 dispute resolution process since 2004.

25.  Arbitrator Schmertz held hearings on the dispute on January 21, 2005 and February 18, 2005. At the initial hearing on January 21, the APWU and USPS both argued that the dispute was untimely, so the arbitrator decided to first consider arbitrability during the February 18, 2005 hearing, and only later consider the merits of the dispute if it was determined to be arbitrable within the RI-399 dispute resolution process.

26.  At the February 2005 hearing, each party presented its respective position. The parties also submitted written opening statements and post-hearing briefs to Arbitrator Schmertz. True and correct copies of the NPMHU's, the APWU's, and the Postal Service's Opening Statements are attached to this Declaration as Exhibits 8, 9 (the NPMHU submitted an opening statement at each hearing), 10, and 11, respectively. True and correct copies of the NPMHU's, the APWU's, and the Postal Service's Post-Hearing Briefs are attached to this Declaration as Exhibits 12, 13, and 14, respectively.

27.  During the arbitration, I argued, on behalf of the NPMHU, that the case was properly filed as a cross-craft grievance under Article 15 of the NPMHU-USPS National Agreement, because the NPMHU has exclusive primary craft jurisdiction of the disputed work nationally. *See* Ex. 9, at 4, 10-16, 19-22, Ex. 12, at 3-10. However, because the APWU disputed the jurisdiction of the work (and because the disputes already had been pending for a decade and the NPMHU hoped to avoid any further delay), I made alternative arguments: that the arbitrator could resolve the dispute in the RI-399 forum, or alternatively that the dispute could be referred back for arbitration as cross-

craft grievances under the Article 15 of the NPMHU-USPS National Agreement. *See* Ex. 9, at 21-23, Ex. 12, at 11-16 ("A decision must be made to either refer the cases back into the Article 15 grievance procedure, or to render it a jurisdictional case that must be resolved under RI-399.").

28.   In particular, with respect to this latter argument, I relied on the August 2000 Settlement Agreement, quoted in paragraph 16 above, which provides that grievances not dealing with jurisdictional issues that are referred to the RI-399 Dispute Resolution Procedures should be referred back for processing under Article 15 of the appropriate National Agreement.

29.   The APWU and USPS both argued that the grievances were untimely filed, with the APWU focusing on the deadlines within the RI-399 process and the UPSP focusing on a local agreement to hold cross-craft grievances and jurisdictional disputes in abeyance for a period of time and then file them by a particular date. *See id.* Exs. 10, 11, 13, 14.

30.   With respect to the Postal Service's argument that the dispute was untimely, I argued, among other things, that the Postal Service had waived any objection based on timeliness by failing to raise it by Step 2 of the grievance process, in accordance with Article 15.3B of the National Agreement. *See* Ex. 1, at Art. 15.3(B), Ex. 9, at 5-6, Ex. 12, at 2.

31.   Arbitrator Schmertz agreed that the grievances properly could be arbitrated under the NPMHU-USPS National Agreement, rather than within the RI-399 dispute resolution process, and he returned the dispute for further

arbitration proceedings under the grievance process found in Article 15 of that National Agreement. A true and correct copy of Arbitrator Schmertz's Opinion and Award is attached to this Declaration as Exhibit 15.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and is based on my personal knowledge. Executed this 30th day of June, 2006 at Jericho, New York.

            /s/Lawrence Hill
            Lawrence Hill