UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN POSTAL WORKERS UNION,　　)
AFL-CIO,　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff,　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　　　　　)　　Case No. 1:05-CV-01290
　　(RBW/ak)　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
NATIONAL POSTAL MAIL HANDLERS　　)
UNION, A DIVISION OF THE　　　　　　　)
LABORERS' INTERNATIONAL UNION　　)
OF NORTH AMERICA,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　and　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
UNITED STATES POSTAL SERVICE,　　)
　　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　　)

# Exhibit 1 to Hill Declaration





# AGREEMENT

between

## National Postal Mail Handlers Union
### A Division of The Laborers' International Union of North America, AFL-CIO

and

## United States Postal Service

**November 21, 2000 - November 20, 2004**

Article 6.6

from which they were laid off or reduced in force. Preference eligibles will be accorded no recall rights greater than non-preference eligibles except as required by law. Notice of vacant assignments shall be given by certified mail, return receipt requested, and a copy of such notice shall be furnished to the local union president. An employee so notified must acknowledge receipt of the notice and advise the Employer of his or her intentions within 5 days after receipt of the notice. If the employee accepts the position offered he or she must report for work within 2 weeks after receipt of notice. If the employee fails to reply to the notice within 5 days after the notice is received or delivery cannot be accomplished, the Employer shall offer the vacancy to the next employee on the list.

If an employee declines the offer of a vacant assignment in his or her seniority unit or does not have a satisfactory reason for failure to reply to a notice, the employee shall be removed from the recall list.

B    An employee reassigned from a losing installation pursuant to Section 6.3E above and who has retreat rights shall be entitled under this Article to exercise those retreat rights before a vacancy is offered to an employee on the recall list who is junior to the reassigned employee in craft seniority.

## Section 6.6 Protective Benefits

A    Severance Pay

Employees who are separated because of a layoff or reduction in force shall be entitled to severance pay in accordance with Part 435 of the Employee and Labor Relations Manual.

B    Health and Life Insurance Coverage

Employees who are separated because of a layoff or a reduction in force shall be entitled to the health insurance and life insurance coverage and to the conversion rights provided for in the Employee and Labor Relations Manual.

## Section 6.7 Union Representation Rights

A    The interpretation and application of the provisions of this Article shall be grievable under Article 15. Any such grievance may be introduced at the Regional/Area (i.e., Step 3) level and shall be subject to priority arbitration.

B    The Employer shall provide to the Union a quarterly report on all reassignments, layoff and reductions in force made under this Article.

12

---

Article 7.1

C    Preference eligibles are not deprived of whatever rights of appeal such employees may have under applicable laws and regulations. However, if an employee exercises these appeal rights, the employee thereby waives access to any procedure under this agreement beyond Step 3 of the grievance-arbitration procedure.

## Section 6.8 Intent

The Employer shall not lay off, reduce in force, or take any other action against a non-protected employee solely to prevent the attainment by that employee of protected status.

## ARTICLE 7
## EMPLOYEE CLASSIFICATIONS

## Section 7.1 Definition and Use

A    Regular Work Force

The regular work force shall be comprised of two categories of employees which are as follows:

A1    Full-Time

Employees in this category shall be hired pursuant to such procedures as the Employer may establish and shall be assigned to regular schedules consisting of five (5) eight (8) hour days in a service week.

A2    Part-Time

Employees in this category shall be hired pursuant to such procedures as the Employer may establish and shall be assigned to regular schedules of less than forty (40) hours in a service week, or shall be available to work flexible hours as assigned by the Employer during the course of a service week.

B    Supplemental Work Force

The Supplemental work force shall be comprised of casual employees. Casual employees are those who may be utilized as a limited term supplemental work force, but may not be employed in lieu of full or part-time employees. During the course of a service week, the Employer will make every effort to insure that qualified and available part-time flexible employees are utilized at the straight time rate prior to assigning such work to casuals.

13

## Article 7.2

The number of casuals who may be employed in any accounting period, other than the two (2) accounting periods per fiscal year identified as set forth below, shall not exceed 12.5%, on an installation basis, of the total number of employees covered by this Agreement. The Employer shall notify the Union, at the National level and at the appropriate installation, of which two (2) accounting periods in each fiscal year during which it may exceed the 12.5% limitation in that installation; such notice will be provided at least six (6) months in advance of the beginning date of the affected accounting period(s). Casuals are limited to two (2) ninety (90) day terms of casual employment in a calendar year. In addition to such employment, casuals may be reemployed during one (1) of the two (2) identified accounting periods in each installation for not more than twenty one (21) days; notice of this period shall be provided at the same time and in the same manner as notice of the accounting period exceptions, as outlined above. The Employer will provide the Union at the installation level with an accounting period report listing the number of mail handler casuals at each installation. This report will be provided within fourteen (14) days of the close of the accounting period. In the event that the Employer exceeds the 12.5 percent limitation, a remedy, if any, will be determined by the individual facts and on a case-by-case basis.

[See Letters, pages 120-122]

### Section 7.2 Employment and Work Assignments

A  Normally, work in different crafts, occupational groups or levels will not be combined into one job. However, to provide maximum full-time employment and provide necessary flexibility, management may establish full-time schedule assignments by including work within different crafts or occupational groups after the following sequential actions have been taken:

For PSDS offices, and for former PSDS offices utilizing the ETC system as of the date of this Agreement, the Employer will provide the Union, on an accounting period basis, at the installation level, with a report which lists the number of non-mail handler casuals and hours worked in each facility within that installation, who have worked in those operations designated as 010 and 210 during the previous accounting period. This report will be provided within fourteen (14) days of the close of the accounting period.

14

## Article 7.3

A1  All available work within each separate craft by tour has been combined.

A2  Work of different crafts in the same wage level by tour has been combined.

B  The appropriate representatives of the affected Unions will be informed in advance of the reasons for establishing the combination full-time assignments within different crafts in accordance with this Article.

C  In the event of insufficient work on any particular day or days in a full-time or part-time employee's own scheduled assignment, management may assign the employee to any available work in the same wage level for which the employee is qualified, consistent with the employee's knowledge and experience, in order to maintain the number of work hours of the employee's basic work schedule.

D  During exceptionally heavy workload periods for one occupational group, employees in an occupational group experiencing a light workload period may be assigned to work in the same wage level, commensurate with their capabilities, to the heavy workload area for such time as management determines necessary.

[See Memo, page 122]

### Section 7.3 Employee Complements

The Employer shall staff all postal installations which have 200 or more man years of employment in the regular work force as of the date of this Agreement with 90% full-time mail handlers. For purposes of this section, part-time regular mail handlers are not to be considered a part of the full-time or part-time work force for purposes of the percentage reference referred above. The number of part-time regular mail handlers who may be employed in any period in a particular installation shall not exceed 6 percent of the total number of employees in that installation covered by this Agreement. The Employer shall maximize the number of full-time employees and minimize the number of part-time employees who have no fixed work schedules in all postal installations. A part-time flexible employee working eight (8) hours within ten (10), on the same five (5) days each week over a six-month period will demonstrate the need for converting the assignment to a full-time position.

[See Memos, pages 122, 123]

15

## Article 14.9

J   In installations where employees represented by the Union accept, handle and/or transport hazardous materials, the Employer will establish a program of promoting safety awareness through communications and/or training, as appropriate. Elements of such a program would include, but not be limited to:

J1   Informational postings, pamphlets or articles in postal and Area publications.

J2   Distribution of Publication 52 to employees whose duties require acceptance of and handling hazardous items.

J3   On-the-job training of employees whose duties require the handling and/or transportation of hazardous items. This training will include, but is not limited to, hazard identification; proper handling of hazardous materials; personal protective equipment availability and its use; cleanup and disposal requirements for hazardous materials.

J4   All mailbags containing any hazardous materials, as defined in Publication 52, will be appropriately identified so that the employee handling the mail is aware that the mailbag contains one or more hazardous material packages.

J5   Personal protective equipment will be made available to employees who are exposed to spills and breakage of hazardous materials.

### Section 14.9 Field Federal Safety and Health Councils

In those cities where Field Federal Safety and Health Councils exist, one representative of the Mail Handler Union who is on the Local Safety and Health Committee in an independent postal installation in that city and who serves as a member of such Councils, will be permitted to attend the meetings. Such employee will be excused from regularly assigned duties without loss of pay. Employer-authorized payment as outlined above will be granted at the applicable straight time rate, provided the time spent in such meetings is a part of the employee's regular work day.

## ARTICLE 15
## GRIEVANCE-ARBITRATION PROCEDURE

### Section 15.1 Definition

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint

## Article 15.2

of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

### Section 15.2 Grievance Procedure—Steps

Step 1: (a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required.

A Step 1 Union grievance may involve a complaint affecting more than one employee in the office. Whenever the facts giving rise to a grievance relate to an incident/issue occurring or arising on a specific date and involve more than one employee in the office, a Step 1 or Step 2 grievance may only be initiated by the Union as a Union grievance on behalf of all involved employees within a specific work location in an installation as provided in Article 17.2A or as defined by local practice. Should any grievances concerning the same incident/issue be filed at Step 1 by individual employees, the Union will consolidate all such grievances and select a representative grievance which may be appealed to Step 2. Should multiple grievances concerning the same incident/issue be improperly filed/initiated at Step 1 by the Union, management shall notify the Union, and if so notified, the Union shall consolidate all such grievances and select a representative grievance which may be heard at Step 1.

(b) In any discussion at Step 1 the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

(c) If no resolution is reached as a result of such discussion, the supervisor shall render a decision orally stating the reasons for the decision. The supervisor's decision should be stated during the discussion, if possible, but in no event shall it be given to the Union representative (or the grievant, if no Union representative was requested) later than five (5)

**Article 15.2**

days thereafter unless the parties agree to extend the five (5) day period. Within five (5) days after the supervisor's decision, the supervisor shall, at the request of the Union representative, initial the standard grievance form that is used at Step 2 confirming the date upon which the decision was rendered.

(d) The Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision. Such appeal shall be made by completing a standard grievance form developed by agreement of the parties, which shall include appropriate space for at least the following:

1.  Detailed statement of facts;

2.  Contentions of the grievant;

3.  Particular contractual provisions involved; and

4.  Remedy sought.

The parties at the national level shall agree upon a computer-generated version of the standard grievance form that may be used to appeal an adverse decision to Step 2.

Step 2: (a) The standard grievance form appealing to Step 2 shall be filed with the installation head or designee. In any associate post office of twenty (20) or less employees, the Employer shall designate an official outside of the installation as the Step 2 official, and shall so notify the Union Step 1 representative.

(b) Any grievance initiated at Step 2, pursuant to Article 2 of this Agreement, must be filed within fourteen (14) days of the date on which the Union or the employee first learned or may reasonably have been expected to have learned of its cause.

(c) The installation head or designee will meet with the steward or a Union representative as expeditiously as possible, but no later than seven (7) days following receipt of the Step 2 appeal unless the parties agree upon a later date. In all grievances appealed from Step 1 or filed at Step 2, the grievant shall be represented in Step 2 for all purposes by a steward or a Union representative who shall have authority to settle or withdraw the grievance as a result of discussions or compromise in this Step. The installation head or designee in Step 2 also shall have authority to grant or settle the grievance in whole or in part.

(d) At the meeting the Union representative shall make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought. The Union representative may also furnish written statements from witnesses or other individuals. The Employer

**Article 15.2**

representative shall also make a full and detailed statement of facts and contractual provisions relied upon. The parties' representatives shall cooperate fully in the effort to develop all necessary facts, including the exchange of copies of all relevant papers or documents in accordance with Article 31. The parties' representatives may mutually agree to jointly interview witnesses where desirable to assure full development of all facts and contentions. In addition, in cases involving discharge either party shall have the right to present no more than two witnesses. Such right shall not preclude the parties from jointly agreeing to interview additional witnesses as provided above.

(e) Where grievances appealed to Step 2 involve the same, or substantially similar issues or facts, one such grievance to be selected by the Union representative shall be designated the "representative" grievance. If not resolved at Step 2, the "representative" grievance may be appealed to Step 3 of the grievance procedure. All other grievances which have been mutually agreed to as involving the same, or substantially similar issues or facts as those involved in the "representative" grievance shall be held at Step 2 pending resolution of the "representative" grievance, provided they were timely filed at Step 1 and properly appealed to Step 2 in accordance with the grievance procedure.

(f) Following resolution of the "representative" grievance, the parties involved in that grievance shall meet at Step 2 **within seven (7) days of their receipt of that resolution, unless the parties agree upon a later date, to identify** the other pending grievances involving the same, or substantially similar issues or facts, **and to apply the resolution to those grievances.** Disputes over the applicability of the resolution to the "representative" grievance shall be resolved through the grievance-arbitration procedures contained in this Article; in the event it is decided that the resolution of the "representative" grievance is not applicable to a particular grievance, the merits of that grievance shall also be considered.

(g) Any settlement or withdrawal of a grievance in Step 2 shall be in writing or shall be noted on the standard grievance form and shall be furnished to the Union representative within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day period. Any such settlement or withdrawal shall not be a precedent for any purpose, unless the parties specifically so agree or develop an agreement to dispose of future similar or related problems.

(h) Where agreement is not reached, the Employer's decision shall be furnished to the Union representative in writing within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day

## Article 15.2

period. The decision shall include a full statement of the Employer's understanding of (1) all relevant facts, (2) the contractual provisions involved, and (3) the detailed reasons for denial of the grievance.

(i) If the Union representative believes that the facts or contentions set forth in the decision are incomplete or inaccurate, such representative should, within ten (10) days of receipt of the Step 2 decision, transmit to the Employer's representative a written statement setting forth corrections or additions deemed necessary by the Union. Any such statement must be included in the file as part of the grievance record in the case. The filing of such corrections or additions shall not affect the time limits for appeal to Step 3.

(j) The Union may appeal an adverse Step 2 decision to Step 3. Any such appeal must be made within fifteen (15) days after receipt of the Employer's decision unless the parties' representatives agree to extend the time for appeal. Any appeal must include copies of (1) the standard grievance form, (2) the Employer's written Step 2 decision, and, if filed (3) the Union corrections or additions to the Step 2 decision.

Step 3: (a) Any appeal from an adverse decision in Step 2 shall be in writing to the appropriate management official at the Grievance/Arbitration Processing Center with a copy to the Employer's Step 2 representative, and shall specify the reasons for the appeal.

(b) The grievant shall be represented at Step 3 level by the Union's Regional representative, or designee. The Step 3 meeting of the parties' representatives to discuss the grievance shall be held at the respective Postal Service office (former regional headquarters) within fifteen (15) days after it has been appealed to Step 3. Each party's representative shall be responsible for making certain that all relevant facts and contentions have been developed and considered. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative likewise shall have authority to grant the grievance in whole or in part. In any case where the parties' representatives mutually conclude that relevant facts or contentions were not developed adequately in Step 2, they shall have authority to jointly return the grievance to the Step 2 level for full development of all facts and further consideration at that level. In such event, the parties' representatives at Step 2 shall meet within seven (7) days after the grievance is returned to Step 2. Thereafter, the time limits and procedures applicable to Step 2 grievances shall apply.

(c) The Employer's written Step 3 decision on the grievance shall be provided to the Union's Step 3 representative within fifteen (15) days after the parties have met in Step 3, unless the parties agree to extend the

## Article 15.2

fifteen (15) day period. Such decision shall state the reasons for the decision in detail and shall include a statement of any additional facts and contentions not previously set forth in the record of the grievance as appealed from Step 2. Such decision also shall state whether the Employer's Step 3 representative believes that no interpretive issue under this Agreement or some supplement thereto which may be of general application is involved in the case.

(d) The Union, at the Regional level, may appeal an adverse decision directly to arbitration at the Regional level within twenty-one (21) days after the receipt of the Employer's Step 3 decision in accordance with the procedure hereinafter set forth; provided the Employer's Step 3 decision states that no interpretive issue under this Agreement or some supplement thereto which may be of general application is involved in the case.

(e) If either party's representative maintains that the grievance involves an interpretive issue under this Agreement, or some supplement thereto which may be of general application, the Union representative shall be entitled to appeal an adverse decision to Step 4 (National level) of the grievance procedure. Any such appeal must be made within twenty-one (21) days after receipt of the Employer's decision and include copies of the standard grievance form, the Step 2 and Step 3 decisions and, if filed, any Union corrections and additions filed at Steps 2 or 3. The Union shall furnish a copy of the Union appeal to the appropriate management official at the Grievance/Arbitration Processing Center.

**The party whose representative maintains that the grievance involves an interpretive issue shall provide the other party a written notice specifying in detail the precise interpretive issue(s) to be decided. The Employer's notice shall be included in the Step 3 decision. The Union's written notice shall be automatically included as part of the grievance record in the case but the filing of such notice shall not affect the time limits for appeal.**

[See Memos, pages 137, 138]

Step 4: (a) In any case properly appealed or referred to this Step the parties shall meet at the National level promptly, but in no event later than thirty (30) days after filing such appeal or referral in an attempt to resolve the grievance. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative shall have authority to grant or settle the grievance in whole or in part. The parties' Step 4 representatives may, by mutual agreement, return any grievance to Step 3 where (a) the parties agree that no national interpretive issue is fairly presented or (b) it appears that all

## Article 15.3

relevant facts have not been developed adequately. In such event, the parties shall meet at Step 3 within fifteen (15) days after the grievance is returned to Step 3. Thereafter the procedures and time limits applicable to Step 3 grievances shall apply. Following their meeting in any case not returned to Step 3, a written decision by the Employer will be rendered within fifteen (15) days after the Step 4 meeting unless the parties agree to extend the fifteen (15) day period. The decision shall include an adequate explanation of the reasons therefor. In any instance where the parties have been unable to dispose of a grievance by settlement or withdrawal, the Union shall be entitled to appeal it to arbitration at the National level within thirty (30) days after receipt of the Employer's Step 4 decision.

[See Memo, page 138]

### Section 15.3 Grievance Procedure—General

A. The parties expect that good faith observance, by their respective representatives, of the principles and procedures set forth above will result in settlement or withdrawal of substantially all grievances initiated hereunder at the lowest possible step and recognize their obligation to achieve that end. Every effort shall be made to ensure timely compliance and payment of monetary grievance settlements and arbitration awards. **The Employer agrees that upon receipt of necessary paperwork, from the grievant and/or union, concerning a grievance settlement of arbitration award, monetary remuneration will be made. The necessary paperwork is the documents and statements specified in Subchapter 436.4 of the ELM. The Employer will provide the union copies of appropriate pay adjustment forms, including confirmation that such forms were submitted to the appropriate postal officials for compliance and that action has been taken to ensure that the affected employee(s) receives payment and/or other benefits. In the event that an employee is not paid within sixty (60) days after submission of all the necessary paperwork, such employee, upon request, will be granted authorization from management to receive a pay advance equal to seventy (70) percent of the payment owed the employee. In the event of a dispute between the parties concerning the correct amount to be paid, the advance required by this section will be the amount that is not in dispute.**

74

## Article 15.3

B. The failure of the employee or the Union in Step 1, or the Union thereafter to meet the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered as a waiver of the grievance. However, if the Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employee or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived.

C. Failure by the Employer to schedule a meeting or render a decision in any of the Steps of this procedure within the time herein provided (including mutually agreed to extension periods) shall be deemed to move the grievance to the next Step of the grievance-arbitration procedure.

D. It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated as a grievance at the Step 4 level by the Union. Such a grievance shall be initiated in writing and must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the contention of the Union. Thereafter the parties shall meet in Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the grievance in Step 4, the Union then may appeal it to arbitration, within thirty (30) days thereafter.

E. The parties have agreed to jointly develop and implement a Contract Interpretation Manual (CIM) within six (6) months after the effective date of the 1998 National Agreement. The CIM will set forth the parties' mutual understanding regarding the proper interpretation and/or application of the provisions of this Agreement. It is not intended to add to, modify, or replace, in any respect, the language in the current Agreement; nor is it intended to modify in any way the rights, responsibilities, or benefits of the parties under the Agreement. However, production of the CIM demonstrates the mutual intent of the parties at the National level to encourage their representatives at all levels to reach resolution regarding issues about which the parties are in agreement and to encourage consistency in the application of the terms of the

75

**Article 15.4**

Agreement. For these reasons, the positions of the parties as set forth in the CIM shall be binding on the representatives of both parties in the resolution of disputes at the Local and Regional levels, and in the processing of grievances through Steps 1, 2 and 3 of the grievance-arbitration procedure. In addition, the positions of the parties as set forth in the CIM are binding on the arbitrator, in accordance with the provisions of Article 15.A6, in any Regional level arbitration case in which the CIM is introduced. The CIM will be updated periodically to reflect any modifications to the parties' positions which may result from National level arbitration awards, Step 4 decisions, or other sources. The parties' representatives are encouraged to utilize the most recent version of the CIM at all times.

[See Memos, pages 140, 141, Letters, pages 141, 143, 156]

## Section 15.4 Arbitration

### A   General Provisions

A1   A request for arbitration shall be submitted within the specified time limit for appeal.

A2   No grievance may be arbitrated at the National level except when timely notice of appeal is given the Employer in writing by the Union. No grievance may be appealed to arbitration at the Regional level except when timely notice of appeal is given in writing to the appropriate management official at the Grievance/Arbitration Processing Center by the certified representative of the Union in the particular Region. Such representative shall be certified to appeal grievances by the Union to the Employer at the National level.

A3   All grievances appealed to arbitration will be placed on the appropriate pending arbitration list(s) in the order in which appealed. The Employer, in consultation with the Union, will be responsible for maintaining appropriate dockets of grievances, as appealed, and for administrative functions necessary to assure efficient scheduling and hearing of cases by arbitrators at all levels.

A4   In order to avoid loss of available hearing time, except in National level cases, a sufficient number of back-up cases shall be scheduled in accordance with Article 15.4B2 to be heard in the event of late settlement or withdrawal of grievances before the hearing. In the event that the parties settle a

76

**Article 15.4**

case or either party withdraws a case five (5) or more days prior to the scheduled arbitration date, the backup cases on the appropriate arbitration list shall be scheduled. In the event that either party withdraws a case less than five (5) days prior to the scheduled arbitration date, and the parties are unable to agree on scheduling other cases on that date, the party withdrawing the case shall pay the full costs of the arbitrator for that date. If the parties settle a case less than five (5) days prior to the scheduled arbitration date and are unable to agree to schedule other cases, the parties shall share the costs of the arbitrator for that date. This paragraph shall not apply to National level arbitration cases.

A5   Arbitration hearings normally will be held during working hours where practical. Employees whose attendance as witnesses is required at hearings during their regular working hours shall be on Employer time when appearing at the hearing, provided the time spent as a witness is part of the employee's regular working hours. Absent a more permissive local past practice and at no cost to the Employer, the Employer will permit one (1) change of work schedule per case scheduled for arbitration for either the grievant or a witness, provided notice is given to his or her immediate supervisor at least two (2) days prior to the scheduled arbitration hearing.

A6   All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Unless otherwise provided in this Article, all costs, fees and expenses charged by an arbitrator will be shared equally by the parties.

A7   The parties agree that, upon receipt of the award, each arbitrator's fees and expenses shall be paid in a prompt and timely manner.

A8   All arbitrators on the District Regular Contract/Discipline Panels and the District Expedited Panels and on the National Panel shall serve for the term of this Agreement and shall continue to serve for six (6) months thereafter, unless the parties otherwise mutually agree.

[See Letter, page 143]

77

A9    Arbitrators on the National and on the District Regular Contract/Discipline and District Expedited Panels shall be selected by the method agreed upon by the parties at the National Level. The parties shall meet for this purpose within ninety (90) days after signing this Agreement. In the event the parties cannot agree on individuals to serve on these panels, or to fill any vacancies, selection shall be made by the alternate striking of names from the appropriate list.

[See Letter, page 144]

B    Regional Level Arbitration—Regular

B1    In each District three (3) separate dockets of cases to be heard in arbitration shall be maintained for the Union by the Employer at the Area Level:

B1a    one for all removal cases and cases involving suspensions for more than 30 days;

B1b    one for all cases appealed or referred to Expedited Arbitration; and

B1c    one for all other cases appealed to arbitration at the Regional Level.

B2    Regional Arbitration Scheduling

B2a    All cases will be scheduled from their respective dockets for each District on a first-in, first-out order based on appeal to arbitration date unless the Union and Employer otherwise agree at the Regional level.

B2b    The parties agree that all cases will be heard in arbitration within 90 days from the date of the grievance appeal to arbitration. If a grievance is not heard in arbitration within the 90 days, the grievance will be scheduled as the first primary case on the next available arbitration hearing date. If, one (1) year after the effective date of this Agreement, this hearing requirement is not complied with by a particular District Panel(s) for three (3) consecutive Accounting Periods, the parties will meet to jointly select a sufficient number of additional arbitrators for that panel(s) to ensure compliance with this hearing requirement. Such meetings and addition of arbitrators will continue, as jointly agreed to by the parties, until the panel(s) is in compliance with the hearing requirement.

B2c    The primary case(s) assigned for each arbitration date will be listed on the scheduling letter. Unless mutually agreed otherwise, a maximum of two (2) primary cases from the District Regular Contract and District Regular Discipline dockets and a minimum of six (6) cases from the District Expedited docket will be listed on the respective scheduling letters. In addition every open case from the particular post office where the primary case(s) are located will be scheduled in the event the primary case(s) are resolved or withdrawn; a listing of such cases will be attached to the scheduling letter. If multiple cases exist at the primary location, the cases will be heard in order of appeal date, unless otherwise mutually agreed by the parties. The primary cases will be backed up with three (3) additional cases from the same District and Union geographic area. It is understood that the parties will resolve or arbitrate the cases at this primary location prior to moving to the first back-up location. The parties agree that cases will be heard rather than lose a hearing date.

The primary case(s) and the back-up cases will appear in the scheduling letter to the arbitrator and the parties, which will be submitted no later than forty-five (45) days prior to the scheduled hearing date, unless the parties at the Area/Regional level agree otherwise in a specific instance.

B2d    If all cases at the primary location are resolved or withdrawn, the first back-up case shall become the scheduled case. If the first back-up case is resolved or withdrawn, additional back-up cases will consist of any open cases (see Section 4B2a for priority scheduling) at the post office location where the first back-up case is scheduled. The scheduling of these cases at the first back-up location shall go in order of appeal date to arbitrators unless otherwise agreed at the Area/Regional level. If all cases at the first back-up location are resolved or withdrawn, the second back-up case shall become the scheduled case. If that case is resolved or withdrawn, any open cases (see Section 4B2a for priority scheduling) at the

## Article 15.4

second back-up location will be scheduled as above, first-in, first-out. If all cases at the second back-up location are resolved or withdrawn, the third back-up case shall become the scheduled case, and the same procedures shall apply for scheduling additional cases at that location.

B2e In the event that all back-up locations are exhausted, the location will be determined by the order of appeal date of cases within the same District and Union geographic area and will continue until no arbitration appeals remain either in the original District or union geographic area.

B2f If the procedures in B2c through B2e are exhausted, additional locations will be determined by the parties based upon mutual agreement at the Area/Regional level. If no agreement is reached, scheduling of cases will be based upon the order in which cases were appealed to Regional arbitration.

B2g The appropriate management official at the Grievance/Arbitration Processing Center will provide to the Union at the Regional level a list of the pending cases on each docket by District listed in order of first-in, first-out.

B2h If more than one hearing on a particular date is scheduled for a particular union geographic area, the union at the Regional level may request, and the Employer will agree to a mutually acceptable scheduling adjustment to another union geographic area.

B3 Only discipline cases involving suspensions of 30 days or less and those other disputes as may be mutually determined by the parties shall be appealed or referred to Expedited Arbitration in accordance with Section 4C hereof.

B4 Cases appealed or referred to arbitration, which involve removals or suspensions for more than 30 days, shall be scheduled from the appropriate District Regular Discipline docket for hearing at the Regional Level at the earliest possible date in the order in which appealed by the Union or referred.

80

## Article 15.4

B5 If a written request is submitted by either party at least thirty (30) days prior to the scheduled hearing date for a case(s) appealed to Regional arbitration, the parties will promptly (normally no later than ten (10) calendar days after the request is received by the other party) conduct pre-arbitration discussions regarding the specified case(s).

B6 If either party concludes that a case appealed or referred to Regional Arbitration involves an interpretative issue under the National Agreement or some supplement thereto which may be of general application, that party may withdraw the case from arbitration and refer the case to Step 4 of the grievance procedure. The party referring the case to Step 4 shall pay the full costs of the arbitrator for that date unless another scheduled case is heard on that date.

**The party whose representative maintains that the grievance involves an interpretive issue shall provide the other party a written notice specifying in detail the precise interpretive issue(s) to be decided and that party's contention with regard to the issue. A copy of the notice will be provided to the designated management and union officials at the Area/Regional level.**

B7 The arbitrators on each District Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties.

B8 Normally, there will be no transcripts of arbitration hearings or filing of post-hearing briefs in cases heard in Regular Regional level arbitration, except either party at the National level may request a transcript, and either party at the hearing may request to file a post-hearing brief. However, each party may file a written statement setting forth its understanding of the facts and issues and its argument at the beginning of the hearing and also shall be given an adequate opportunity to present argument at the conclusion of the hearing.

B9 The arbitrator in any given case should render an award therein within thirty (30) days of the close of the record in the case.

C Regional Level Arbitration Expedited

C1 The parties agree to continue the utilization of an expedited arbitration system for disciplinary cases of 30 days

81

**Article 15.4**

suspension or less which do not involve interpretation of this Agreement and for such other cases as the parties may mutually determine. This system may be utilized by agreement of the Union through the Union and the Vice-President, Labor Relations, or designee. In any such case, the Federal Mediation and Conciliation Service or American Arbitration Association shall immediately notify the designated arbitrator. The designated arbitrator is that member of the District Expedited Panel who, pursuant to a rotation system, is scheduled for the next arbitration hearing. Immediately upon such notification the designated arbitrator shall arrange a place and date for the hearing promptly but within a period of not more than ten (10) working days. If the designated arbitrator is not available to conduct a hearing within the ten (10) working days, the next panel member in rotation shall be notified until an available arbitrator is obtained.

C2  The parties agree that all cases will be heard in arbitration within 90 days from the date of the grievance appeal to arbitration. If a grievance is not heard in arbitration within the 90 days, the grievance will be scheduled as the first case to be heard on the next available arbitration date. If, one (1) year after the effective date of this Agreement, this hearing requirement is not complied with by a particular District Panel(s) for three (3) consecutive Accounting Periods, the parties will meet to jointly select a sufficient number of additional arbitrators for that panel(s) to ensure compliance with this hearing requirement. Such meetings and addition of arbitrators will continue, as jointly agreed to by the parties, until the panel(s) is in compliance with the hearing requirement.

C3  If either party concludes that the issues involved are of such complexity or significance as to warrant reference to the District Regular Contract/Discipline Arbitration Panel(s), that party shall notify the other party of such reference at least twenty-four (24) hours prior to the scheduled time for the expedited arbitration.

C4  The hearing shall be conducted in accordance with the following:

C4a  the hearing shall be informal;

C4b  no briefs shall be filed or transcripts made;

82

**Article 15.4**

C4c  there shall be no formal rules of evidence;

C4d  the hearing shall normally be completed within one day;

C4e  if the arbitrator or the parties mutually conclude at the hearing that the issues involved are of such complexity or significance as to warrant reference to the District Regular Contract/Discipline Arbitration Panel, the case shall be referred to that panel; and

C4f  the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within forty-eight (48) hours after conclusion of the hearing. Such decision shall be based on the record before the arbitrator and may include a brief written explanation of the basis for such conclusion. These decisions will not be cited as a precedent. The arbitrator's decision shall be final and binding. An arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within forty-eight (48) hours of the close of the hearing.

C5  No decision by a member of the District Expedited Panel in such a case shall be regarded as a precedent or be cited in any future proceeding, but otherwise will be a final and binding decision.

C6  The District Expedited Arbitration Panel shall be developed by the National parties, on a geographic area basis, with the aid of the American Arbitration Association and the Federal Mediation and Conciliation Service.

[See MOU, page 145]

D  National Level Arbitration

D1  Only cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level.

D2  A docket of cases appealed to arbitration at the National level shall be maintained for the Union. The arbitrators on the National Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. Cases on the docket will be scheduled for arbitration in the order in which appealed, unless the Union and Employer otherwise agree.

83

## Article 15.5

### Section 15.5 Administration

The parties recognize their continuing joint responsibility for efficient functioning of the grievance procedure and effective use of arbitration. The Employer will furnish to the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each District docket separately:

A   number of cases appealed to arbitration;

B   number of cases scheduled for hearing;

C   number of cases heard;

D   number of scheduled hearing dates, if any, which were not used;

E   the total number of cases pending but not scheduled at the end of the quarter.

## ARTICLE 16
## DISCIPLINE PROCEDURE

### Section 16.1 Statement of Principle

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations. Any such discipline or discharge shall be subject to the grievance-arbitration procedure provided for in this Agreement, which could result in reinstatement and restitution, including back pay.

### Section 16.2 Discussions

For minor offenses by an employee, management has a responsibility to discuss such matters with the employee. Discussions of this type shall be held in private between the employee and the supervisor. Such discussions are not considered discipline and are not grievable. Following such discussions, there is no prohibition against the supervisor and/or the employee making a personal notation of the date and subject matter for their own personal record(s). However, no notation or other information pertaining to such discussion shall be included in the employee's personnel folder. While such discussions may not be cited as an element of a prior adverse record in any subsequent disciplinary action against an employee, they may be, where relevant and timely, relied upon to establish that employees have been made aware of their obligations and responsibilities.

### Section 16.3 Letter of Warning

A letter of warning is a disciplinary notice in writing, identified as an official disciplinary letter of warning, which shall include an explanation of a deficiency or misconduct to be corrected.

[See MOU, page 146]

### Section 16.4 Suspensions of Less Than 14 Days

In the case of discipline involving suspensions of less than fourteen (14) days, the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended, but that such suspension shall be served while on duty with no loss of pay (no-time-off suspension). No-time-off suspensions shall be considered to be of the same degree of seriousness, and will satisfy the same step in the pattern of progressive discipline as the time-off suspension being replaced. As such, no-time-off suspensions are equivalent to the previously issued time-off suspensions as an element of past discipline.

### Section 16.5 Suspensions of 14 or More Days or Discharge

In the case of discipline involving suspensions of fourteen (14) days , the employee against whom disciplinary action is sought to be initiated shall be served with a written notice of the charges against the employee and shall be further informed that he/she will be suspended after fourteen (14) calendar days during which ten day period the employee shall remain on the job or on the clock (in pay status) at the option of the Employer. However, if the Union or the employee initiates a timely grievance prior to the effective date of the action and if the grievance is timely appealed to Step 2, the grievant shall not begin to serve the suspension until after the Step 2 decision has been rendered.

In the case of suspensions of more than fourteen (14) days, or discharge, any employee shall, unless otherwise provided herein, be entitled to an advance written notice of the charges against him/her and shall remain either on the job or on the clock at the option of the Employer for a period of thirty (30) days. Thereafter, the employee shall remain on the rolls (non-pay status) until disposition of the case has been had either by settlement with the Union or through exhaustion of the grievance arbitration procedure.

A preference eligible who chooses to appeal a suspension of more than fourteen (14) days or his discharge to the Merit Systems Protection Board (MSPB) rather than through the grievance arbitration procedure shall remain on the rolls (non-pay status) until disposition of the case has

David P. Cybulski, Manager
Labor Relations
U.S. Postal Service

## LETTER OF INTENT
## REGIONAL INSTRUCTION 399

The parties recognize that Regional Instruction 399 identifies the mail handler craft as the primary craft for the transportation of mail. In this regard, when mail is transported via an elevator, the principle contained in Regional Instruction 399 that the mail handler craft is the primary craft for transportation of mail applies.

\* \* \* \* \*

| Regional Instructions | | Part 300 |
|---|---|---|
| | | Postal Operations |
| | | 1085-PO-204 |
| | | Filing No. |
| | | 399 |
| Subject | Date | |
| Mail Processing Work | 2/16/79 | |
| Assignment Guidelines | | |

### I. INTRODUCTION

The enclosed "Mail Processing Work Assignment Guidelines," provide primary craft designations relative to the performance of specific mail processing work functions. Compliance with the principles contained therein is mandatory and applicable to the assignment of all categories of employees in the regular work force. These assignment guidelines are to be implemented at all postal installations which perform mail processing, in accordance with the implementation criteria outlined below and consistent with the terms of the 1978 National Agreement.

### II. IMPLEMENTATION CRITERIA

A    Efficient and Effective Operation

All actions taken relative to implementation of these guidelines must be consistent with an efficient and effective operation. Consistent with this obligation, no postal installation shall declare employees excess, increase the number of employees and/or increase work hours solely as a result of this instruction.

B    Four (4) Hours Criteria

If there are four (4) or more hours of continuous work consisting of one or more work functions in one or more operations designated to the same primary craft, the performance of the work should be assigned to an employee of that primary craft.

157

---

1998 National Agreement have, by their terms, become moot. As such, we agreed to remove them from the 2000 USPS-NPMHU National Agreement.

This is to affirm, however, that the parties will continue to rely upon the terms of those Memoranda in the event that any dispute may arise as to the application of their terms. We further agree that their removal from the National Agreement is not intended to affect any pending grievances on subcontracting or other issues that may be affected by those Memoranda.

**Andrea B. Wilson**
**Manager**
**Labor Relations**
**U.S. Postal Service**

William H. Quinn
National President
National Postal Mail Handlers
Union, AFL-CIO
1101 Connecticut Avenue NW, Suite 500
Washington, DC 20036-4304

Dear Mr. Quinn:

During negotiation of the **1998** National Agreement, we agreed that references to a union, craft or bargaining unit are limited to the National Postal Mail Handlers Union and the craft it represents, with the following understandings:

Article 1.5: The Postal Service will continue to inform the NPMHU of all new positions whether or not the positions are within the craft unit represented by the NPMHU.

Article 6: This article will continue to apply to all bargaining units covered by the September 15, 1978 Award of James J. Healy.

Article 15.4.D: The Postal Service will continue to send all National level arbitration scheduling letters and moving papers for all bargaining units to the NPMHU.

Article 33.2: This article will continue to permit employees in non-NPMHU represented crafts to make application for best qualified positions in the NPMHU represented craft after required procedures are followed.

Transitional employees may not perform mail handler work.

156

C. Distribution Activities

Where the functions of obtaining empty equipment, obtaining unprocessed mail, loading ledges and sweeping are an integral part of the distribution function and cannot be efficiently separated, the entire operation will be assigned to the primary craft performing the distribution activity.

D. Changes in Duty Assignments

No employee's current duty assignment will be modified by removing functions designated to another primary craft until and unless such duty assignment becomes vacant through attrition. In addition, management may continue to revert or abolish positions no longer needed.

E. Assignment of New and/or Additional Work

Assignment of new or additional work, not previously existing in the installation, shall be made in accordance with the primary craft designations contained in this instruction.

III. IMPLEMENTATION PROCEDURES

A. Responsibilities

Sectional Center Managers will review mail processing operations in installations within their designated MSC areas. This review will include, at a minimum, an examination of the work being performed, current duty assignments and a determination concerning what actions will be necessary to comply with the "Mail Processing Work Assignment Guidelines."

B. Identification of Primary Craft

All post offices with mail processing operations will, based on the primary craft designations, identify:

1. full-time clerk or mail handler duty assignments which are assigned to the inappropriate craft.

2. full-time clerk or mail handler duty assignments which include both clerk and mail handler primary craft functions.

3. work functions performed by part-time flexible clerks and mail handlers.

C. Implementation Plan

Based upon the above identification, each sectional center manager will develop a detailed implementation plan which will contain at a minimum:

1. the number of full-time clerk and mail handler employees.

158

2. the number, by tour and duties, of full-time clerks and mail handlers:

    a. with 8 hour assignments in the inappropriate craft.

    b. whose duty assignments include 4 or more (but less than 8) hours of work in the inappropriate craft.

3. the number of full-time clerk and mail handler vacancies as of January 26, 1979.

4. the number of full-time clerk and mail handler vacancies that are anticipated, by postal quarter, during PQ's III and IV, FY 1979, and FY 1980.

5. the number of clerk and mail handler part-time flexible employees.

6. the number of clerk and mail handler part-time flexible employees, by tour, duties and hours, performing primary craft functions designated to a different craft.

7. actions that will be taken to achieve immediate compliance, and those actions which will require phased implementation.

8. the estimated time frame (as may be necessary) for implementation, including quarterly estimates.

9. any current clerk or mail handler functions not covered in the "Mail Processing Work Assignment Guidelines."

D. Adherence

Each sectional center manager will insure that the following actions, when taken, are consistent with this instruction:

1. Review each vacant full-time clerk and mail handler duty assignment.

2. Establishment of new full-time duty assignments.

3. Accession of clerk and mail handler employees.

4. Scheduling and staffing studies.

E. Reporting Requirements

The management sectional center implementation plan will be forwarded by March 19, 1979, through the Division Office to the Regional Director, Mail Processing, who will be responsible for approving the MSC's plan, insuring its timely and effective implementation, and for monitoring performance against the plan. At least once every six months, a designated regional coordinator will review each MSC to determine its progress relative to

159

making proper clerk-mail handler work assignments. The first review cycle must be completed no later than September 1, 1979, with subsequent regional reviews of MSC performance occurring semi-annually thereafter.

C. Neil Benson
Acting Senior Assistant
Postmaster General
Operations Group

Enclosure

Standard distribution plus 2 copies to each MSC

## MAIL PROCESSING WORK ASSIGNMENT GUIDELINES

U.S. Postal Service
November 15, 1978

(The June 15, 1979 (1096-PO-209) Revision to the Mail Processing Work Assignment Guidelines (1085-PO-204) have been incorporated herein.)

11/15/87

## POST OFFICE - PRIMARY CRAFT DESIGNATIONS

| Operation | Function | Primary Craft |
|---|---|---|
| 001 Platform Acceptance and Weigher's Unit | 1. Accept, classify, and compute postage on second-and third-class mail. | Clerk |
| | 2. Determine correct classification of second-and third-class and all other matter mailed under a permit, and determine if sufficient deposit has been made by the mailer to cover the cost of mailing. | Clerk |
| | 3. Accept pre-cancelled and meter matter mailed in bulk quantities and verify postage. | Clerk |
| | 4. Accept other classes of mail and receipts if necessary. | Clerk |

160

| Operation | Function | Primary Craft |
|---|---|---|
| | 5. Advise customers as to proper mailing procedures. | Clerk |
| | 6. Maintain records of permit holders, deposits, withdrawals and miscellaneous information. | Clerk |
| | 7. Make necessary reports andsubmit to the manager of finance or equivalent. | Clerk |
| 010 Originating Mail Preparation | 1. Transport empty equipment | Mail Handler |
| | 2. Obtaining mail (courtesy windows, drop units, staging areas, etc.). | Mail Handler |
| | 3. Open and dump sacks or other containers. | Mail Handler |
| | 4. Cull (separate mail by type, and make basic local/out of town splits into trays, hampers, conveyors, etc.). Distribution to cases or sack/pouch racks will be assigned in accordance with the appropriate distribution operation. | Mail Handler |
| | 5. Tray loose metered mail, etc. | Mail Handler |
| | 6. Face and cancel letters on the facer canceler (Mark II or equivalent). | Mail Handler |
| | 7. Cancel letters on Mark II that were rejected on first pass. | Mail Handler |
| | 8. Hand cancel, cancel with Model G or other device. | Mail Handler |
| | 9. Tray canceled mail for distribution operations. | Mail Handler |
| | 10. Rate and cancel short paid mail. | Clerk |

161

| Operation | Function | Primary Craft |
|---|---|---|
|  | 11. Repair damaged letters. | Mail Handler |
|  | 12. Examine sacks for mail content. | Mail Handler |
|  | 13. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
|  | 14. Back stamping of missent mail. | Mail Handler |
| 020 Originating Meter Mail Preparation | 1. Transporting empty equipment. | Mail Handler |
|  | 2. Prepare originating metered, permit imprint, and official penalty mail received from collection routes, lobby drop, dock, slides, chutes, conveyors, and other sources for distribution. | Mail Handler |
|  | 3. Traying letters and separating mail by type into different containers, separating by local and out of town. | Mail Handler |
|  | 4. Reporting mail with incorrect meter dates and rating short paid mail. | Clerk |
|  | 5. Identification and handling of presorted and riffle mail. | Clerk |
| 029 Riffle Mail | Distribution of customer sequenced mail by ZIP Code, state or otherwise, which is sorted by batches, avoiding piece by piece distribution. | Clerk |
|  | Riffle mail can be sorted at letter cases, tray packs or pouch racks, depending on the make up. |  |

162

| Operation | Function | Primary Craft |
|---|---|---|
| 030 Combined Outgoing-Incoming Letter Primary | 1. *Transporting empty equipment | Mail Handler |
|  | 2. *Obtaining letters from staging areas for distribution. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of letter mail. | Clerk |
|  | 5. Distribution of NIXIE mail. | Clerk |
|  | 6. *Sweeping, containerizing and transporting. | Mail Handler |
|  | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
|  | 8. *Pulling and transporting pouches and/or other containers. | Mail Handler |

*In offices where the tasks of obtaining empty equipment, obtaining unprocessed mail, loading ledges, sweeping and containerizing is an integral part of the distribution function, the entire operation is a function of the primary craft performing the distribution.

| Operation | Function | Primary Craft |
|---|---|---|
| 040 Outgoing Letter Secondary | 1. *Transporting empty equipment. | Mail Handler |
|  | 2. *Obtaining unprocessed mail. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of letter mail. | Clerk |
|  | 5. Distribution of NIXIE mail. | Clerk |
|  | 6. *Sweeping. | Mail Handler |
|  | 7. *Containerizing and transporting. | Mail Handler |
|  | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |

*See asterisk below Operation 030.

163

| Operation | Function | Primary Craft |
|---|---|---|
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 043 State Distribution Letters | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining unprocessed mail. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of letter mail. | Clerk |
| | 5. Distribution of NIXIE mail. | Clerk |
| | 6. *Sweeping. | Mail Handler |
| | 7. *Containerizing and transporting. | Mail Handler |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 044 Sectional Center Distribution Letters | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining unprocessed mail. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of letter mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 8. Distribution of NIXIE mail. | Clerk |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 045 Non-Preferential Distribution Letters | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining unprocessed mail. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of letter mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 8. Distribution of NIXIE mail. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 050/055 Priority Mail Distribution | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Culling, facing and canceling. | Mail Handler |
| | 3. *Opening and dumping. | Mail Handler |
| | 4. *Transporting mail. | Mail Handler |
| | 5. *Loading ledges. | Mail Handler |
| | 6. Distribution of priority mail. | Clerk |
| | 7. *Sweeping. | Mail Handler |
| | 8. *Containerizing. | Mail Handler |
| | 9. *Pulling and transporting pouches or other containers. | Mail Handler |
| | 10. Rating mail matter. | Clerk |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
|  | 11. Maintaining current schedules and schemes. | Clerk |
|  | 12. Handling registry mail | Clerk |
|  | 13. Maintaining receipt and dispatch records. | Clerk |
|  | 14. Identifying and reporting, meeting postal regulations. | Clerk |
| 060 Outgoing Flat Primary | 1. *Transporting empty equipment. | Mail Handler |
|  | 2. *Obtaining unprocessed mail. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of flat mail. | Clerk |
|  | 5. *Sweeping. | Mail Handler |
|  | 6. *Containerizing and transporting. | Mail Handler |
|  | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
|  | 8. Distribution of NIXIE mail. | Clerk |
|  | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 070 Outgoing Flat Secondary | 1. *Transporting empty equipment. | Mail Handler |
|  | 2. *Obtaining unprocessed mail. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of flat mail. | Clerk |
|  | 5. *Sweeping. | Mail Handler |
|  | 6. *Containerizing and transporting. | Mail Handler |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
|  | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
|  | 8. Distribution of NIXIE mail. | Mail Handler |
|  | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 073 State Distribution Flats | 1. *Transporting empty equipment. | Mail Handler |
|  | 2. *Obtaining unprocessed mail. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of flat mail. | Clerk |
|  | 5. Distribution of NIXIE mail. | Clerk |
|  | 6. *Sweeping. | Mail Handler |
|  | 7. *Containerizing and transporting. | Mail Handler |
|  | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
|  | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 074 Sectional Center Flats Distribution | 1. *Transporting empty equipment. | Mail Handler |
|  | 2. *Obtaining unprocessed mail. | Mail Handler |
|  | 3. *Loading ledges. | Mail Handler |
|  | 4. Manual distribution of flat mail. | Clerk |
|  | 5. *Sweeping. | Mail Handler |
|  | 6. *Containerizing and transporting. | Mail Handler |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
| | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 8. Distribution of NIXIE mail. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 075 Outgoing Flat Secondary Non-Preferential | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining unprocessed flats. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of flat mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 8. Distribution of NIXIE mail. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| *080-087 MPLSM Distribution | Machine distribution of all classes of letters. | Clerk |
| | Note: Allied labor required is normally performed by clerks because of the rotation system employed. | |
| 088-089 Optical Character Reader Distribution | OCR machine distribution of all classes of mail. Note: See 080-087 note. | Clerk |
| 090-098 SPLSM Distribution | Machine distribution of all classes of letters. Note: See 080-087 note. | Clerk |

*See asterisk below Operation 030.

168

| Operation | Function | Primary Craft |
|---|---|---|
| 100 Outgoing Parcel Distribution | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Dumping sacks or containers. | Mail Handler |
| | 4. Manual distribution of parcel post, without scheme knowledge. | Mail Handler |
| | 5. Manual distribution of parcel post requiring scheme knowledge. | Clerk |
| | 6. *Pulling and dispatching sacks or other containers. | Mail Handler |
| | 7. *Containerizing and transporting mail to dispatch areas. | Mail Handler |
| | 8. *Hanging sacks and inserting labels. | Mail Handler |
| 105 Mechanized Parcel Sorter | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Dumping sacks or containers. | Mail Handler |
| | 4. Distribution of parcel post through the use of parcel sorting machines. | Clerk |
| | 5. Pulling and dispatching sacks or other containers. | Mail Handler |
| | 6. *Containerizing and transporting mail to dispatch areas. | Mail Handler |
| | 7. *Hanging sacks and inserting labels. | Mail Handler |

*See asterisk below Operation 030.

169

| Operation | Function | Primary Craft |
|---|---|---|
| 109 Rewrap | 1. Transporting empty equipment. | Mail Handler |
| | 2. Obtaining mail from staging area. | Mail Handler |
| | 3. Assembling contents of damaged parcels. | Mail Handler |
| | 4. Operating strapping machines, heat tunnels other rewrap mechanization. Reload mechanization with strapping, film, etc., and provide routine daily maintenance on mechanization. | Mail Handler |
| | 5. Readdressing parcels. | Mail Handler |
| | 6. Keeping records as required. Note: All of the work performed in this operation can be considered an integral function of Operation 100 or 200 and may be assigned to the craft doing that distribution. | Mail Handler |
| 110-129 Outgoing IPP Distribution, Opening and Traying Pouch Sack & Loose Pouch | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Dumping sacks, pouches, or containers. Cull/separate mail by type/characteristics and make basic local/out-of-town splits to trays, hampers, gurneys, conveyors, nutting trucks, or other containers. | Mail Handler |

*See asterisk below Operation 030.

170

| Operation | Function | Primary Craft |
|---|---|---|
| | 4. *Hanging sacks or pouches. | Mail Handler |
| | 5. *Inserting labels. | Clerk |
| | 6. *Cutting bundles and facing letters and flats. | Clerk |
| | 7. Distribution of outgoing IPP's newspapers, rolls, letter or flat bundles, slugs, Special Delivery or Special Handling parcel post. | Clerk |
| | 8. *Pulling sacks, pouches, or containers for dispatch. | Mail Handler |
| | 9. *Containerizing and transporting. | Mail Handler |
| | 10. *Operating "strapping" equipment. | Mail Handler |
| 134 Sectional Center Distribution | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining unprocessed mail. | Mail Handler |
| | 3. *Loading unprocessed mail. | Mail Handler |
| | 4. Manual distribution of mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerization and transporting. | Mail Handler |
| | 7. Distribution of NIXIE mail. | Clerk |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 150 Incoming Letter Primary | 1. *Transporting empty equipment | Mail Handler |

*See asterisk below Operation 030.

171

| Operation | Function | Primary Craft |
|---|---|---|
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of letter mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Distribution of NIXIE mail. | Clerk |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting, as appropriate, mail not meeting postal regulations. | Mail Handler |
| 160 Incoming Letter Secondary | 1. *Transporting empty equipment | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of letter mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Distribution of NIXIE mail. | Clerk |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting, as appropriate, mail not meeting postal regulations. | Mail Handler |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
| 168/169 Box Section Primary and Secondary | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging areas. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. *Hanging and labeling sacks or pouches. | Mail Handler |
| | 5. Manual distribution of mail. | Clerk |
| | 6. Window Service incidental to box section activities. | Clerk |
| | 7. *Pulling and dispatching sacks or pouches. | Mail Handler |
| | 8. Distribution of NIXIE mail. | Clerk |
| | 9. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 10. *Sweeping. | Mail Handler |
| 170 Incoming Flat Primary | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining flats from staging area. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Manual distribution of flat mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. Distribution of NIXIE mail | Clerk |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |

*See asterisk below Operation 030.

| Operation | Function | Primary Craft |
|---|---|---|
| 175 Incoming Flat Secondary | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining flats from staging area. | Mail Handler |
| | 3. *Loading ledges. | Mail Handler |
| | 4. Distribution of flat mail. | Clerk |
| | 5. *Sweeping. | Mail Handler |
| | 6. *Containerizing and transporting mail to dispatch areas. | Mail Handler |
| | 7. Distribution of NIXIE mail. | Clerk |
| | 8. Identifying and reporting, as appropriate, mail not meeting postal regulations. | Clerk |
| | 9. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 180-189 Incoming IPP Distribution, Opening and Traying | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Dumping sacks, pouches, or containers. Cull/separate mail by type/characteristics and make basic local/out-of-town splits to trays, hampers, gurneys, conveyors, nutting trucks, or other containers. | Mail Handler |
| | 4. *Hanging and labeling sacks or pouches. | Mail Handler |

*See asterisk below Operation 030.

174

| Operation | Function | Primary Craft |
|---|---|---|
| | 5. Distribution of incoming IPP's, newspaper rolls, letter or flat bundles, Special Delivery or Special Handling parcel post to sacks, pouches, or containers. | Clerk |
| | 6. *Cutting bundles and facing letters and flats. | Mail Handler |
| | 7. *Containerizing and transporting. | Mail Handler |
| | 8. *Pulling and transporting pouches and/or other containers. | Mail Handler |
| 200 Incoming Parcel Distribution | 1. *Transporting empty equipment. | Mail Handler |
| | 2. *Obtaining mail from staging area. | Mail Handler |
| | 3. *Dumping sacks or containers. | Mail Handler |
| | 4. *Hanging and labeling sacks. | Mail Handler |
| | 5. Manual distribution of parcel post. | Clerk |
| | 6. *Containerizing and transporting. | Mail Handler |
| | 7. *Pulling and dispatching pouches and/or other containers. | Mail Handler |
| 210-239 Platform Operations | 1. Transporting empty equipment. | Mail Handler |
| | 2. Loading and unloading vehicles. | Mail Handler |
| | 3. Separating mixed collection mails. | Mail Handler |

*See asterisk below Operation 030.

175

| Operation | Function | Primary Craft |
|---|---|---|
| | 4. Non-scheme separation of sacks, pouches or outside parcels for further processing. | Mail Handler |
| | 5. Manual sorting of sacks, pouches, and outside parcels for destination dispatch requiring scheme knowledge. | Clerk |
| | 6. Manual separation of sacks, pouches and outside parcels requiring no scheme knowledge. | Mail Handler |
| | 7. Mechanized sorting of sacks, pouches and outside parcels requiring scheme knowledge. | Clerk |
| | 8. Mechanized sorting of sacks, pouches, and outside parcels requiring no scheme knowledge. | Mail Handler |
| | 9. Operating tow motors, fork lifts and jacks. | Mail Handler |
| | 10. Directing traffic. | Mail Handler |
| | 11. Transporting mail to and from platform areas. | Mail Handler |
| | 12. Making dock connection transfer. | Clerk |
| 240-339 Distribution at Stations & Branches | Distribution of mail—The designation of a primary craft can be applied to a detached unit which performs or supports a mail processing operation. | Clerk |

*See asterisk below Operation 030.

176

| Operation | Function | Primary Craft |
|---|---|---|
| 549 Sack Examination | 1. Examining and segregating empty bags. | Mail Handler |
| | 2. Bundling, sacking, tying and labeling empty mail bags. | Mail Handler |

## BULK MAIL CENTERS - PRIMARY CRAFT DESIGNATIONS

In Bulk Mail Centers, where the tasks of transporting empty equipment and mail, as well as other ancillary activities, are an integral part of the distribution function and cannot be separated, the entire operation is a function of the primary craft performing the distribution.

| Operation | Function | Primary Craft |
|---|---|---|
| Inbound Docks | 1. Unload vehicles. | Mail Handler |
| | 2. Stage and transport pallets. | Mail Handler |
| | 3. Dumping hampers. | Mail Handler |
| | 4. Culling. | Mail Handler |
| | 5. Minor on-site parcel repairs. | Mail Handler |
| | 6. Vehicle record keeping. | Clerk |
| | 7. Weigh and acceptance. | Clerk |
| Outbound Docks | 1. Load vehicles. | Mail Handler |
| | 2. Culling. | Mail Handler |
| | 3. Roller table separations. | Mail Handler |
| | 4. Tend missent/malfunction chutes. | Mail Handler |
| | 5. Stage and transport containers. | Mail Handler |
| | 6. Vehicle record keeping. | Clerk |
| Primary Parcel Sorting | 1. Facing and keying. | Clerk |
| | 2. Culling at parcel induction stations. | Clerk |
| | 3. Minor on-site repairs/bag damage. | Clerk |
| | 4. Sort foreign mail. | Clerk |
| | 5. Distribution at roller tables to sacks/containers. | Clerk |

177

| Operation | Function | Primary Craft |
|---|---|---|
| | 6. Distribution at missent/malfunction chutes. | Clerk |
| | 7. Container loader tending. | Mail Handler |
| | 8. Obtaining and moving empty equipment. | Mail Handler |
| Secondary Parcel Sorting | 1. Facing and keying. | Clerk |
| | 2. Culling for minor onsite repairs. | Clerk |
| | 3. Distribution of parcels to sacks/containers. | Clerk |
| | 4. Container loader tending. | Mail Handler |
| | 5. Obtaining and moving empty equipment. | Mail Handler |
| Rewrap IPPs and Non-ZIP Coding | 1. Sack sorting keying. | Mail Handler |
| | 2. Culling and on-site parcel repairs. | Mail Handler |
| | 3. Tend missent/malfunction chutes. | Mail Handler |
| | 4. Rewrap. | Mail Handler |
| | 5. ZIP Coding unzipped mail. | Clerk |
| | 6. Dumping hampers, sacks, etc. | Mail Handler |
| | 7. Culling of irregular parcels. | Mail Handler |
| | 8. Sorting of irregular parcel. | Clerk |
| | 9. Empty equipment handling. | Mail Handler |
| | 10. Transport sacks/containers. | Mail Handler |
| | 11. Sack sorter run out tending. | Mail Handler |
| Sack Shakeout, Container Dumping | 1. Sack shakeout. | Mail Handler |
| | 2. Container dumping. | Mail Handler |
| | 3. Culling for nonmachinable mail and damaged parcels. | Mail Handler |
| | 4. Empty sack processing. | Mail Handler |
| Loose in Mail | 1. Sort, match and recordkeeping. | Clerk |

| Operation | Function | Primary Craft |
|---|---|---|
| | 2. Collect and transport. | Mail Handler |
| | 3. Culling and trash screening. | Mail Handler |
| NMO | 1. NMO sorting. | Mail Handler |
| | 2. Transporting containers and empty equipment. | Mail Handler |
| Outgoing IPP Opening and Distribution | 1. Dumping containers, racks, pallets. | Mail Handler |
| | 2. Culling and bundle repair. | Clerk |
| | 3. Distribute second-and third-class to sacks and containers. | Clerk |
| | 4. Empty equipment handling. | Mail Handler |
| | 5. Transport sacks, containers, pallets. | Mail Handler |