UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO,<br><br>Plaintiff,<br><br>v.<br>(RBW/ak)<br><br>NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA,<br><br>and<br><br>UNITED STATES POSTAL SERVICE,<br><br>Defendants. | Case No. 1:05-CV-01290 |

# Exhibit 2 to Hill Declaration




# AGREEMENT

between
United States Postal Service
and
American Postal Workers Union,
AFL-CIO

## 2000–2003

Handbook EL-912

Article 7.1

2. The Employer shall provide to the affected Union a quarterly report on all reassignments, layoff and reductions in force made under this Article.

3. Preference eligibles are not deprived of whatever rights of appeal such employees may have under applicable laws and regulations. However, if an employee exercises these appeal rights, the employee thereby waives access to any procedure under this agreement beyond Step 3 of the grievance-arbitration procedure.

G. **Intent**

The Employer shall not lay off, reduce in force, or take any other action against a non-protected employee solely to prevent the attainment of that employee of protection status.

## ARTICLE 7
## EMPLOYEE CLASSIFICATIONS

**Section 1. Definition and Use**

A. **Regular Work Force.** The regular work force shall be comprised of two categories of employees which are as follows:

1. **Full-Time.** Employees in this category shall be hired pursuant to such procedures as the Employer may establish and shall be assigned to regular schedules consisting of five (5) eight (8) hour days in a service week.

2. **Part-Time.** Employees in this category shall be hired pursuant to such procedures as the Employer may establish and shall be assigned to regular schedules of less than forty (40) hours in a service

Article 7.1

week, or shall be available to work flexible hours as assigned by the Employer during the course of a service week.

B. **Supplemental Work Force.**

1. The supplemental work force shall be comprised of casual employees. Casual employees are those who may be utilized as a limited term supplemental work force, but may not be employed in lieu of full or part-time employees.

2. During the course of a service week, the Employer will make every effort to insure that qualified and available part-time flexible employees are utilized at the straight-time rate prior to assigning such work to casuals.

3. Beginning January 16, 1999, the number of casuals who may be employed within a District in any accounting period, other than accounting periods 3 and 4, shall not exceed 15% of the total number of career employees within a District covered by this Agreement, and also shall not exceed on average 5.9% of the total number of career employees covered by this Agreement during a fiscal year, exclusive of accounting periods 3 and 4. Disputes concerning violations of the casual cap will be addressed by the parties at the national level.

a. Any District exceeding the 15% casual cap in any accounting period, other than accounting periods 3 and 4, shall reduce their casual workforce by the total number of casuals exceeding the 15% cap within 2 accounting periods from when the violation took place, except that such reductions will not occur in accounting periods 3 and 4. The casual reduction

**Article 7.1**

associated with a violation occurring in accounting period 12 or 13 will occur within the next 2 accounting periods.

b. Any District exceeding the 15% casual cap in more than one accounting period during a fiscal year, other than accounting periods 3 and 4, will be required to settle the violation through a monetary resolution that shall be calculated by utilizing the Level 5, Step A, straight time rate.

4. Casuals are limited to two (2) ninety (90) day terms of casual employment in a calendar year. In addition to such employment, casuals may be reemployed during the Christmas period for not more than twenty-one (21) days.

**C. Transitional Work Force**

1. The transitional work force shall be comprised of noncareer, bargaining unit employees.

2. Over the course of a pay period, the Employer will make a reasonable effort to ensure that qualified and available part-time flexible employees are utilized at straight-time rate prior to assigning such work to transitional employees working in the same work location and on the same tour.

3. Transitional employees shall be hired pursuant to such procedures as the Employer may establish. They will be hired for a term not to exceed 360 calendar days for each appointment. Such employees have no daily or weekly work hour guarantees, except as provided for in Article 8.8.D. Transitional employees will have a break in service of at least 5 days between appointments.

20

---

**Article 7.2**

4. Without limitation as to their use or operational justification, the total number of APWU Transitional Employees working in non-REC sites will be in accordance with the schedule below. The Postal Service will phase out all non-REC Transitional Employees by no later than December 31, 2005.

| Calendar Year | Number |
|---|---|
| January 1, 2002 through December 31, 2002 | 4,000 TE's |
| January 1, 2003 through December 31, 2003 | 4,000 TE's |
| January 1, 2004 through December 31, 2004 | 4,000 TE's |
| January 1, 2005 through December 31, 2005 | 4,000 TE's |

**Section 2. Employment and Work Assignments**

A. Normally, work in different crafts, occupational groups or levels will not be combined into one job. However, to provide maximum full-time employment and provide necessary flexibility, management may establish full-time schedule assignments by including work within different crafts or occupational groups after the following sequential actions have been taken:

1. All available work within each separate craft by tour has been combined.

2. Work of different crafts in the same wage level by tour has been combined.

The appropriate representatives of the affected Unions will be informed in advance of the reasons for establishing the combination full-time assignments within different crafts in accordance with this Article.

21

**Article 7.3**

B. In the event of insufficient work on any particular day or days in a full-time or part-time employee's own scheduled assignment, management may assign the employee to any available work in the same wage level for which the employee is qualified, consistent with the employee's knowledge and experience, in order to maintain the number of work hours of the employee's basic work schedule.

C. During exceptionally heavy workload periods for one occupational group, employees in an occupational group experiencing a light workload period may be assigned to work in the same wage level, commensurate with their capabilities, to the heavy workload area for such time as management determines necessary.

[see Memo, page 283]

**Section 3. Employee Complements**

A. The Employer shall staff all postal installations which have 200 or more man years of employment in the regular work force as of the date of this Agreement as follows:

1. With respect to the combined bargaining units represented by the APWU, as set forth in Article 1—80% full-time employees.

B. The Employer shall maximize the number of full-time employees and minimize the number of part-time employees who have no fixed work schedules in all postal installations; however, nothing in this paragraph B shall detract from the USPS' ability to use the awarded full-time/part-time ratio as provided for in paragraph 3.A. above.

C. A part-time flexible employee working eight (8) hours within ten (10), on the same five (5) days each week, and the same assignment over a six month period will demonstrate the need for converting the assignment to a full-time position.

[see Memo, pages 282-284]

# ARTICLE 8
# HOURS OF WORK

**Section 1. Work Week**

The work week for full-time regulars shall be forty (40) hours per week, eight (8) hours per day within ten (10) consecutive hours, provided, however, that in all offices with more than 100 full-time employees in the bargaining units the normal work week for full-time regular employees will be forty hours per week, eight hours per day within nine (9) consecutive hours. Shorter work weeks will, however, exist as needed for part-time regulars.

[see Memos, pages 285-295]

**Section 2. Work Schedules**

A. The employee's service week shall be a calendar week beginning at 12:01 a.m. Saturday and ending at 12 midnight the following Friday.

B. The employee's service day is the calendar day on which the majority of work is scheduled. Where the work schedule is distributed evenly over two calendar days, the service day is the calendar day on which such work schedule begins.

**Article 8.2**

## Article 15.1
### Section 9. Field Federal Safety and Health Councils

In those cities where Field Federal Safety and Health Councils exist, one representative of the Union who is on the Local Safety and Health Committee in an independent postal installation in that city and who serves as a member of such Councils, will be permitted to attend the meetings. Such employee will be excused from regularly assigned duties without loss of pay. Employer authorized payment as outlined above will be granted at the applicable straight time rate, provided the time spent in such meetings is a part of the employee's regular work day.

(The preceding Article, Article 14, shall apply to Transitional Employees)

## ARTICLE 15
## GRIEVANCE-ARBITRATION PROCEDURE

### Section 1. Definition

A grievance is defined as a dispute, difference, disagreement or complaint between the parties related to wages, hours, and conditions of employment. A grievance shall include, but is not limited to, the complaint of an employee or of the Union which involves the interpretation, application of, or compliance with the provisions of this Agreement or any local Memorandum of Understanding not in conflict with this Agreement.

### Section 2. Grievance Procedure Steps

**Step 1:**

(a) Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within

## Article 15.2 (Step 1)

fourteen (14) days of the date on which the employee or the Union first learned or may reasonably have been expected to have learned of its cause. The employee, if he or she so desires, may be accompanied and represented by the employee's steward or a Union representative. The Union also may initiate a grievance at Step 1 within 14 days of the date the Union first became aware of (or reasonably should have become aware of) the facts giving rise to the grievance. In such case the participation of an individual grievant is not required. A Step 1 Union grievance may involve a complaint affecting more than one employee in the office. When the Union files a class action grievance, Management will designate the appropriate employer representative responsible for handling such complaint.

(b) In any such discussion the supervisor shall have authority to settle the grievance. The steward or other Union representative likewise shall have authority to settle or withdraw the grievance in whole or in part. No resolution reached as a result of such discussion shall be a precedent for any purpose.

(c) If no resolution is reached as a result of such discussion, the supervisor shall render a decision orally stating the reasons for the decision. The supervisor's decision should be stated during the discussion, if possible, but in no event shall it be given to the Union representative (or the grievant, if no Union representative was requested) later than five (5) days thereafter unless the parties agree to extend the five (5) days period. Within five (5) days after the supervisor's decision, the supervisor shall, at the request of the Union representative, initial the standard grievance form that is used at Step 2 confirming the date upon which the decision was rendered.

(d) The Union shall be entitled to appeal an adverse decision to Step 2 of the grievance procedure within ten (10) days after receipt of the supervisor's decision. Such appeal

**Article 15.2 (Step 2)**

shall be made by completing a standard grievance form developed by agreement of the parties, which shall include appropriate space for at least the following:

1. Detailed statement of facts;
2. Contentions of the grievant;
3. Particular contractual provisions involved; and
4. Remedy sought.

**Step 2:**

(a) The standard grievance form appealing to Step 2 shall be filed with the installation head or designee. In any installation of twenty (20) or less employees, the Employer shall designate an official outside of the installation as the Step 2 official, and shall so notify the Union Step 1 representative.

(b) Any grievance initiated at Step 2, pursuant to Article 2 or 14 of this Agreement, must be filed within 14 days of the date on which the Union or the employee first learned or may reasonably have been expected to have learned of its cause.

(c) The installation head or designee will meet with the steward or a Union representative as expeditiously as possible, but no later than seven (7) days following receipt of the Step 2 appeal unless the parties agree upon a later date. In all grievances appealed from Step 1 or filed at Step 2, the grievant shall be represented in Step 2 for all purposes by a steward or a Union representative who shall have authority to settle or withdraw the grievance as a result of discussions or compromise in this Step. The installation head or designee in Step 2 also shall have authority to grant or settle the grievance in whole or in part.

92

**Article 15.2.(Step2).(g)**

(d) At the meeting the Union representative shall make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought. The Union representative may also furnish written statements from witnesses or other individuals. The Employer representative shall also make a full and detailed statement of facts and contractual provisions relied upon. The parties' representatives shall cooperate fully in the effort to develop all necessary facts, including the exchange of copies of all relevant papers or documents in accordance with Article 31. The parties' representatives may mutually agree to jointly interview witnesses where desirable to assure full development of all facts and contentions. In addition, in cases involving discharge either party shall have the right to present no more than two witnesses. Such right shall not preclude the parties from jointly agreeing to interview additional witnesses as provided above.

(e) Any settlement or withdrawal of a grievance in Step 2 shall be in writing or shall be noted on the standard grievance form, but shall not be a precedent for any purpose, unless the parties specifically so agree or develop an agreement to dispose of future similar or related problems.

(f) Where agreement is not reached the Employer's decision shall be furnished to the Union representative in writing, within ten (10) days after the Step 2 meeting unless the parties agree to extend the ten (10) day period. The decision shall include a full statement of the Employer's understanding of (1) all relevant facts, (2) the contractual provisions involved, and (3) the detailed reasons for denial of the grievance.

(g) If the Union representative believes that the facts or contentions set forth in the decision are incomplete or inaccurate, such representative should, within ten (10) days of receipt of the Step 2 decision, transmit to the Employer's representative a written statement setting forth corrections or

93

additions deemed necessary by the Union. Any such statement must be included in the file as part of the grievance record in the case. The filing of such corrections or additions shall not affect the time limits for appeal to Step 3 or arbitration.

(h) The Union may appeal an adverse Step 2 decision to Step 3. Any such appeal must be made within fifteen (15) days after receipt of the Employer's decision unless the parties' representatives agree to extend the time for appeal. However, the Union may appeal an adverse Step 2 decision directly to arbitration for disciplinary grievances or contract grievances which involve the interpretation, application of, or compliance with the provisions of any local Memorandum of Understanding not in conflict with this Agreement, and those issues the parties have agreed are appealed to Expedited Arbitration. These grievances will be appealed to the appropriate Grievance/Arbitration Processing Center within thirty (30) days after the receipt of the Employer's Step 2 decision. Any appeal must include copies of (1) the standard grievance form, (2) the Employer's written Step 2 decision, and, if filed, (3) the Union corrections or additions to the Step 2 decision.

**Step 3:**

(a) Any appeal from an adverse decision in Step 2 shall be in writing to the appropriate management official at the Grievance/Arbitration Processing Center, with a copy to the Employer's Step 2 representative, and shall specify the reasons for the appeal.

(b) The grievant shall be represented at the Employer's Step 3 Level by a Union's Regional representative, or designee. The Step 3 meeting of the parties' representatives to discuss the grievance shall be held within fifteen (15) days after it has been appealed to Step 3. Each party's representative shall be responsible for making certain that all

94

relevant facts and contentions have been developed and considered. The Union representative shall have authority to settle or withdraw the grievance in whole or in part. The Employer's representative likewise shall have authority to grant the grievance in whole or in part. In any case where the parties' representatives mutually conclude that relevant facts or contentions were not developed adequately in Step 2, they shall have authority to return the grievance to the Step 2 level for full development of all facts and further consideration at that level. In such event, the parties' representatives at Step 2 shall meet within seven (7) days after the grievance is returned to Step 2. Thereafter, the time limits and procedures applicable to Step 2 grievances shall apply.

(c) The Employer's written Step 3 decision on the grievance shall be provided to the Union's Step 3 representative within fifteen (15) days after the parties have met in Step 3, unless the parties agree to extend the fifteen (15) day period. Such decision shall state the reasons for the decision in detail and shall include a statement of any additional facts and contentions not previously set forth in the record of the grievance as appealed from Step 2. If either party's Step 3 representative believes that an interpretive issue under the National Agreement or some supplement thereto which may be of general application is involved in the case, the issue will be discussed with the appropriate National Union/Management Representatives at the Headquarters Level. If either party's National Representative determines the issue to be interpretive, a written notice will be sent to the other party specifying in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the initiating party's contention. The grievance(s) shall be held at the Area and/or District Level pending discussion at the national level or the outcome of a National Arbitration award.

(d) The Union may appeal an adverse decision directly to arbitration at the appropriate Grievance/Arbitration Process-

95

**Article 15.2.(Step 3)**

ing Center within twenty-one (21) days after the receipt of the Employer's Step 3 decision in accordance with the procedure hereinafter set forth.

(e) Where grievances appealed to Step 3 involve the same, or substantially similar issues or facts, one such grievance to be selected by the Union representative shall be designated the "representative" grievance. If not resolved at Step 3, the "representative" grievance may be appealed to arbitration in accordance with the above and placed at the head of the appropriate arbitration docket, or the issue will be referred to the parties' national representatives at the Headquarters level pursuant to (c) above. All other grievances which have been mutually agreed to as involving the same, or substantially similar issues or facts as those involved in the resolution of the "representative" grievance, provided they were timely filed at Step 1 and properly appealed to Steps 2 and 3 in accordance with the grievance procedure.

Following resolution of the "representative" grievance, the parties involved in that grievance shall meet at Step 3 to apply the resolution to the other pending grievances involving the same, or substantially similar issues or facts. Disputes over the applicability of the resolution of the "representative" grievance shall be resolved through the grievance-arbitration procedures contained in this Article; in the event it is decided that the resolution of the "representative" grievance is not applicable to a particular grievance, the merits of that grievance shall also be considered.

(f) In order to discourage the filing of multiple local grievances involving any new or changed District or Area-wide policy, instructions, or guidelines, the APWU Regional Coordinator or National Business Agent may file one grievance concerning such policy, instructions, or guidelines, directly at Step 3 of the grievance procedure. The grievance

96

**Article 15.2.(Step 4)**

may be filed within fourteen (14) days of the date on which such union representative first learned or may reasonably have been expected to have learned of the implementation of such policy, instructions, or guidelines. Timely local grievances, which had already been filed concerning such policy, instructions, or guidelines, will be held at or returned to Step 2 of the grievance procedure, as applicable, pending the resolution of the grievance filed directly at Step 3. Thereafter, local grievances will be finally adjudicated in accordance with the resolution of the grievance filed directly at Step 3. If not resolved, the grievance filed directly at Step 3 may be appealed to arbitration within twenty-one (21) days and placed at the head of the appropriate arbitration docket.

**Step 4:**

(a) In any dispute properly initiated at this Step by the appropriate National Union/Management Representative, the parties shall meet at the National level promptly, but in no event later than thirty (30) days after initiating such dispute in an effort to define the precise issues involved, develop all necessary facts and reach agreement. The Union representative shall have authority to settle or withdraw the dispute in whole or in part. The Employer's representative shall have authority to grant or settle the dispute in whole or in part. The parties' Step 4 representatives may, by mutual agreement, return any dispute to Step 3 where (a) the parties agree that no national interpretive issue is fairly presented or (b) it appears that all relevant facts have not been developed adequately. In such event, the parties shall meet at Step 3 within fifteen (15) days after the dispute is returned to Step 3. Thereafter the procedures and time limits applicable to Step 3 grievances shall apply. Should the parties at the National level fail to reach agreement, then within fifteen (15) days of such meeting each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to the interpretive dispute. In the event the parties have failed to reach agreement within

97

**Article 15.3**

sixty (60) days of the initiation of the dispute, the Union then may appeal it to national arbitration within thirty (30) days thereafter. Any local grievances filed on the specific interpretive issue shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute.

[see Memo, page 316]

**Section 3. Mediation**

Where the local parties identify the need for either assistance in the grievance/arbitration procedure or the need to improve mediation where they identify such a need in a particular installation. Such joint request must be in writing and submitted to the parties' designated Area/Regional level representatives.

A. The local installation head and the local Union president (local parties) may jointly initiate a request for mediation where they identify such a need in a particular installation. Such joint request must be in writing and submitted to the parties' designated Area/Regional level representatives.

B. Such Area/Regional level representatives may also recommend mediation for a particular installation. However, when a recommendation for mediation is made by the Area/Regional level representatives, such recommendation must be discussed with and agreed to by the local parties before the mediation process can be invoked at the local site.

C. The mediation will be conducted jointly by the Union official designated by the President of the Union and management official designated by the Vice President/Labor Relations (USPS). The designated officials will have been trained, and/or certified in the dispute resolution process. Such designated union/management mediation representatives will be utilized to assist the local parties in an effort to resolve timely grievances, as defined in Article 15,

98

**Article 15.3.F**

Sections 1 and 2, as well as any identified local issues or problems.

D. The designated union/management mediation representatives will meet at the local installation within thirty (30) days of the joint mediation request, which is described in Section 3.A or B above. At least seven (7) days prior to the on-site meeting, the local parties will jointly provide the mediation representatives with an agenda and all available relevant information. In the event the local parties cannot agree on an agenda for mediation, each party will submit their respective agendas to the mediation representatives seven (7) days prior to the on-site meeting, as well as all available relevant information.

E. The mediation will be held with the local parties to explore ways of resolving the previously submitted agenda items, as well as to seek ways of improving the labor/management climate within the installation. The mediation process, including all meetings connected with mediation, is considered to be off-the-record. However, all resolutions will be on the record, in writing and jointly signed by the local parties. Where the local parties agree, a particular mediation resolution(s) will serve as precedent for that installation, provided such resolution does not violate the National Agreement.

If the local parties are unable to reach a resolution on pending grievances of those local issues for which they have jointly requested mediation, then the mediation representatives may jointly resolve any of the above referenced issues or grievances.

F. The Employer's mediation representative will provide to the appropriate Union official a statement of position for each grievance(s) listed on the agenda, which is not resolved through mediation, within fifteen (15) days of the final mediation meeting. Within twenty-one (21) days of

99

Article 15.5.A.2

2. No grievance may be arbitrated at the National level except when timely notice of appeal is given the Employer in writing by the National President of the Union. No grievance may be appealed to arbitration at the District panel level except when timely notice of appeal is given in writing to the appropriate management official at the Grievance/Arbitration Processing Center by the certified representative of the Union in the Area. Such representative shall be certified to appeal grievances by the National President of the Union to the Employer at the National level.

3. All grievances appealed to arbitration will be placed on the appropriate pending arbitration list in the order in which appealed. The Employer, in consultation with the Union, will be responsible for maintaining appropriate dockets of grievances, as appealed, and for administrative functions necessary to assure efficient scheduling and hearing of cases by arbitrators at all levels.

4. In order to avoid loss of available hearing time, except in National level cases, a minimum of six (6) expedited or three (3) regular cases, when available, are to be scheduled for each hearing date. In addition, pending cases on the docket in the order in which appealed should be assigned to the designated advocates no less than sixty (60) days prior to the scheduled date and, if possible, the parties will discuss the cases no less than thirty (30) days prior to the scheduled date. The parties agree that backup cases will include all cases pending arbitration at the location. These backup cases will be scheduled in the order they appear on the District docket when available in the event of late settlement or withdrawal of grievances before the hearing. In the event that either party withdraws all cases less than

102

Article 15.5.A.6

five (5) days prior to the scheduled arbitration date, and the parties are unable to agree on scheduling other cases on that date, the party withdrawing the cases shall pay the full costs of the arbitrator for that date. In the event that the parties settle and/or withdraw all cases five (5) or more days prior to the scheduled arbitration date, backup cases on the appropriate arbitration list shall be scheduled. If the parties settle cases less than five (5) days prior to the scheduled arbitration date and are unable to agree to schedule another case, the parties shall share the costs of the arbitrator for that date. This paragraph shall not apply to National level arbitration cases.

5. Arbitration hearings normally will be held during working hours where practical. Employees whose attendance as witnesses is required at hearings during their regular working hours shall be on Employer time. When appearing at the hearing, provided the time spent as a witness is part of the employee's regular working hours. Absent a more permissive local past practice and at no cost to the Employer, the Employer will permit one (1) change of work schedule per case scheduled for arbitration for either the grievant or a witness, provided notice is given to his or her immediate supervisor at least two (2) days prior to the scheduled arbitration hearing.

6. All decisions of an arbitrator will be final and binding. All decisions of arbitrators shall be limited to the terms and provisions of this Agreement, and in no event may the terms and provisions of this Agreement be altered, amended, or modified by an arbitrator. Unless otherwise provided in this Article, all costs, fees, and expenses charged by an arbitrator will be shared equally by the parties.

103

**Article 15.5.B.5**

Headquarters level. If either party's representative at the Headquarters level determines the case is interpretive, a notice will be sent to the other party. The case will be held pending the outcome of the National Interpretive dispute. If both parties' representatives determine the case does not involve an interpretive issue, the case if already scheduled for arbitration will be heard before the same arbitrator who was originally scheduled to hear the case. Further, if the hearing had convened, the case will continue at the same stage of arbitration.

[see Memo, page 316]

6. The arbitrators on each Regular District Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. The hearing time available for arbitration will be distributed among offices and crafts.

7. Normally, there will be no transcripts of arbitration hearings or filing of post-hearing briefs in cases heard in Regular District level arbitration, except either party at the National level may request a transcript. Either party at the hearing may request to file a post-hearing brief in contract arbitrations. In Regular District level discipline/discharge arbitrations, post-hearing briefs will be permitted only by mutual agreement of the parties or by direction of the arbitrator. However, each party may file a written statement setting forth its understanding of the facts and issues and its argument at the beginning of the hearing and also shall be given an adequate opportunity to present argument at the conclusion of the hearing.

8. The arbitrator in any given case should render an

---

**Article 15.5.C.3**

award therein within thirty (30) days of the close of the record in the case.

**C. District Level Arbitration - Expedited**

1. The parties agree to continue the utilization of an expedited arbitration system for disciplinary cases of 14 days suspension or less which do not involve interpretation of the Agreement and for such other cases as the parties may mutually determine.

[see Memo, page 311]

2. If either party concludes that the issues involved are of such complexity or significance as to warrant reference to the Regular District Arbitration Panel, that party shall notify the other party of such reference at least twenty-four (24) hours prior to the scheduled time for the expedited arbitration.

3. The hearing shall be conducted in accordance with the following:

   a. the hearing shall be informal;

   b. no briefs shall be filed or transcripts made;

   c. there shall be no formal rules of evidence;

   d. the hearing shall normally be completed within one day;

   e. if the arbitrator or the parties mutually conclude at the hearing that the issues involved are of such complexity or significance as to warrant reference to the Regular District Arbitration Panel, the case shall be referred to that panel; and

Article 15.5.C.3.f

f. the arbitrator may issue a bench decision at the hearing but in any event shall render a decision within forty-eight (48) hours after conclusion of the hearing. Such decision shall be based on the record before the arbitrator and may include a brief written explanation of the basis for such conclusion. These decisions will not be cited as a precedent. The arbitrator's decision shall be final and binding. An arbitrator who issues a bench decision shall furnish a written copy of the award to the parties within forty-eight (48) hours of the close of the hearing.

4. No decision by a member of the Expedited Panel in such a case shall be regarded as a precedent or be cited in any future proceeding, but otherwise will be a final and binding decision.

5. The Expedited Arbitration Panel shall be developed by the National parties, on a District level.

**D. National Level Arbitration**

1. Only cases involving interpretive issues under this Agreement or supplements thereto of general application will be arbitrated at the National level.

2. A docket of cases appealed to arbitration at the National level shall be maintained for the Union. The arbitrators on the National Panel shall be scheduled to hear cases on a rotating system basis, unless otherwise agreed by the parties. Cases on the docket will be scheduled for arbitration in the order in which appealed, unless the Union and Employer otherwise agree.
108

---

Article 16.1

**Section 6. Administration**

The parties recognize their continuing joint responsibility for efficient functioning of the grievance procedure and effective use of arbitration. Commencing April 1, 1979, and quarterly thereafter, the Employer will furnish to the President of the Union a copy of a quarterly report containing the following information covering operation of the arbitration procedure at the National level, and for each Grievance/Arbitration Processing Center separately:

(a) number of cases appealed to arbitration;

(b) number of cases scheduled for hearing;

(c) number of cases heard;

(d) number of scheduled hearing dates, if any, which were not used;

(e) the total number of cases pending but not scheduled at the end of the quarter.

(The preceding Article, Article 15, shall apply to Transitional Employees).

[see Memo, page 317]

### ARTICLE 16
### DISCIPLINE PROCEDURE

**Section 1. Principles**

In the administration of this Article, a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to,



109