UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

AMERICAN POSTAL WORKERS UNION,
AFL-CIO,

    Plaintiff,

    v.

(RBW/ak)

NATIONAL POSTAL MAIL HANDLERS
UNION, A DIVISION OF THE
LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA,

    and

UNITED STATES POSTAL SERVICE,

    Defendants.

---

Case No. 1:05-CV-01290

# Exhibit 9 to Hill Declaration (part 1)

**BEFORE ARBITRATOR**
**ERIC J. SCHMERTZ**

In the Matter of the Arbitration Amongst

|  |  |
|---|---|
| ) | |
| **The National Postal Mail Handlers** ( | **Grievant: NPMHU** |
| **Union, AFL-CIO, CLC** ) | |
| ( | **Grievance Nos**: 93-107 |
| -and- ) | 93-203 |
| ( | |
| **The United States Postal Service** ) | **Place: Brooklyn GMF** |
| ( | Brooklyn, New York |
| -and- ) | |
| ( | **Date:** 2/18/05 |
| **The American Postal Workers Union**) | |
| ( | |

**OPENING STATEMENT OF THE UNION ON BEHALF OF THE MAIL HANDLERS' CRAFT AT THE BROOKLYN GMF FACILITY IN BROOKLYN, NEW YORK**

Issue: Are the two above-captioned cases, Label Room and Copy Duties arbitrable or not. What shall be the remedy?

On the Opening Brief:
Lawrence Hill
New York State Rep. Local 300
452 Dawson Lane
Jericho, New York
11753-2555
516-681-2888
Fax: 516-681-1375
E-Mail: LHILL93601@aol.com

1

NPMHU-0017

## ARBITRABILITY ISSUE ON COPY ROOM DUTIES AND LABEL MAKER DUTIES

At the onset of the instant hearing, the APWU and the USPS, as the moving parties presented it's best cases on the issue of arbitrability in an attempt to deprive the NPMHU from arbitrating to restore the copy/duplicating and label-making duties at the Brooklyn GMF. The arguments submitted by the parties were quite reminiscent of those launched against the NPMHU at the Mid Hudson Facility on arbitrability regarding the Low Cost Tray Sorter there. As was in that case, it is abundantly clear that both parties missed their marks by a long shot. Although the NPMHU believes that the want of merits to the USPS/APWU argument speak for themselves already, here in this case, this Union will make it totally clear to the Arbitrator that those arguments are fully misplaced.

For example, in the Mid Hudson case, four witnesses testified vociferously for the APWU/USPS team. In the instant case on arbitrability, here in Brooklyn, the same parties failed to call even one witness between the two. They also submitted the most feeble of evidence. Their submission of evidence proves virtually nothing and offers no corroboration whatsoever of anything that they claimed. Indeed, the evidence that they do submit bolsters the NPMHU' argument.

2

### DISPOSAL OF USPS TIMELINESS ARGUMENT

Let us first dispose of the USPS argument. USPS exhibits **M-1** and **M-4**, i.e., their opening statements on arbitrability set forth identical arguments ALLEGING UNTIMELINESS only. That is the sole argument set forth by them. They cite two local agreements of no consequence at all to the instant cases, designated by the USPS as **M-2** and **M-3** respectively. Instead and notably, at that time in 1993, the USPS was at the inception of an entire Regional withholding process wherein Mail Handler craft vacancies where being withheld for the possibility of clerk craft employees being excessed into the Mail Handler residual vacancies. In essence, the USPS was launching the RI-399 process, a major Northeast Regional excessing of clerk craft employees and a Northeast Regional withholding process at the same cited by management were clearly more of a favor to the USPS than anything, so that they were not bogged down with grievances.

Moreover and notwithstanding the above, **M-2** and **M-3** are of no significance or consequence whatsoever to the NPMHU, because the **individual facts circumstances giving rise to the NPMHU grievances did not develop until just before the filing of the two grievances circa 10/16/93.** If you believed the USPS advocate here, you would believe that those two documents forbade the NPMHU from ever filing cross craft or

3

jurisdictional issues ever again.  That is simply not close to the truth whatsoever.  New fact circumstances develop each and every day since then that give rise to grievances of all types.

Moreover, the entire evidence of record in the instant cases supports the NPMHU position on this issue.  NPMHU exhibits **A-1** and **B(1-6)**  show beyond any doubt whatsoever that the craft has exclusive <u>primary craft jurisdiction</u> of the dispute work from at least the 1970's onward., **nationally,** not just locally here in Brooklyn.  NPMHU employees were performing copy/duplicating duties and label-making duties at the Brooklyn GMF and it's forerunner from the early 1970's until 1993 when a single USPS manager improperly stripped  this work from the NPMHU.  APWU only alleges it performed the work since the 1980's.  B(1-6) are documents that are nationally assigned and recognized <u>key and standard Mail Handler craft positions</u>  implemented by statute from the **<u>1970 Postal Reorganization Act</u>**, 39 U.S.C. 1001 <u>et. seq.</u>, and it's predecessors laws, the old post office department.

In addition to the above evidence, the following exhibits clearly nullify advocate Betty Peek's 11th hour assertion that the grievances were untimely.  NPMHU exhibits **C-1** and **C-2** are the U.S. Postal Service's own grievance records.  They are called **<u>Step One Grievance Summary</u>** forms

4

utilized by postal management, and are also called in the vernacular,

"**2608's.**"[1]  For both the copying/duplicating grievance and the label-maker

grievance, block number #6 clearly shows on both **C-1** and **C-2,** that the

grievances were timely filed.  The forms were signed by Management

Official A.R. Douglas in block (a) on the bottom of the respective pages.

NPMHU exhibits **D-1** and **D-2** are the step two USPS decision letters

on the respective subjects both dated November 23, 1993. They both deny

the grievance stating in rote fashion 'that the Union failed to prove it's case.'

**Both** management **step two decisions** <u>failed</u> to call the grievances untimely.

Mr. Arbitrator, <u>Article 15.3B</u> of the National Agreement states with regards

to timeliness issues as follows;

"The failure of the employee or the Union in Step 1, or the Union
thereafter to meet the prescribed time limits of the Steps of this procedure,
including arbitration, shall be considered as a waiver of the grievance.
**However, if the employer fails to raise the issue of timeliness at Step 2,**
**or at the step at which the employer or Union failed to meet the**
**prescribed time limits, whichever is later, such objection to the**
**processing of the grievance is waived.**" (Emphasis and underscoring
added).

Simply put, there was clearly no call of untimeliness at <u>any step</u> of the

grievance procedure, including step three. (See **NPMHU exhibits E-1 and**

**E-2)    You will note that at all three steps of the grievance procedure,**

**the USPS reps basically stated different reasons for denial but not one**

---

[1] See bottom left hand corner of the Grievance Summary – Step 1 form for the 2608 designation.

NPMHU-0021

of them called the dispute untimely at any step.  Betty Peek is thereby, in accordance with 15.3 prohibited from backdating untimeliness in the grievance procedure in which she took no part in.

NPMHU exhibit **F-1** shows that the cases were properly certified to Regular Regional Arbitration before **Arbitrator Sarah Cannon-Holden** from Massachusetts.

Next we have NPMHU exhibit **G-1** generated in early **1999** by Brooklyn GMF, USPS Senior Labor Relations Specialist **Douglas Dawson.** Mr. Arbitrator, the parties recognize at the national level that grievances can and are often referred by any of the parties into the RI-399 Dispute Resolution procedure.  Even the vociferous Douglas Dawson knew that the cases were **NOT** untimely.

You will recall that the RI-399 procedures permit any party to introduce or refer an issue into the Dispute Resolution procedure at whatever stages of the grievance procedure as is appropriate.  Here, USPS's own Mr. Dawson referred the case to the 399 procedure himself.  **Dawson properly states the condition that permits the case to be introduced into the procedure.**  Clearly Dawson looked at the facility Inventory and saw that the NPMHU, having nationally recognized primary craft designation, noted that the facility inventory was void of this designation and referred the case

6

to the Regional Dispute Resolution Committee.   Later on, as a result of

USPS Labor Relations Specialist Dawson's referral five years later in 2004,

the Local Dispute Resolution Committee finally met and generated a

tripartite decision letter.  Even the parties' joint Tripartite Decision Letters

make no reference to any claim of untimeliness of the disputes.  Obviously,

USPS Advocate Dawson's referral of the cases into the Dispute Resolution

Procedure covered all bases.

Suffice it to say that the entire grievance record indicates that the

grievance was timely from beginning to end.  This fact provides estoppel

against the USPS's advocate claiming untimeliness.

### DISPOSAL OF THE APWU ARGUMENT

Mr. Arbitrator, the APWU case is so unfounded in all aspects to

render it nonsensical.  Once again you will recall the wild allegations that

the APWU put forth at the Mid Hudson and other facilities.  Unfortunately,

the APWU has a problem with telling arbitrators the WHOLE truth in

almost every instance.  For example, in every single facility over the past

few months wherein the parties engaged in tripartite arbitrations, the APWU

continuously promulgated it's long stale and misplaced **"mantra"** that the

**"clerks always performed these functions."**  They bring in witnesses who

repeatedly say that **"we used to perform this work"** or **"when the machine**

7

was being fixed, we performed the work" or "we always perfomed that work." However, in order to be recognized as the <u>primary craft for assignment</u> to **any duties**, either craft must meet certain criteria. One is to have written **preferred duty assignments** or what is called in the vernacular, **"job bids,"** and still another way is to have a tripartite sign-off on the **installation's facility inventory** recognizing that the party has <u>primary craft jurisdiction</u>. Another way is to have what is provided by statute from the **Postal Reorganization Act,** 39 U.S.C. 1001 et. seq., wherein the parties were provided at the national level with both **"key position"** and **"standard position"** designations.

In summary, either Union may have <u>primary craft jurisdiction</u> by virtue of
   (a) **Preferred duty assignments (job bids)**
   (b) **Installation's facility inventory signed off on a tripartite basis**
   (c) **Possession of statutorily and nationally recognized <u>"key positions"</u> and <u>"standard positions."</u>**

On the other hand, details, temporary assignments, ad-hoc assignments, cross craft, light and limited duty assignments, or featherbedded or assignments by favoritism **do not qualify** or <u>provide the requisite elements of proof</u> to establish primary craft jurisdiction. In almost every instance, the APWU's ad nauseum **"mantra"** espouses one or more of these **fallacious assignments**. And the amount of time spent performing these types of duties does not provide either craft with proper jurisdiction.

8

NPMHU-0024

An analogy of the APWU's ridiculous assertions that "**it always performed the work**" can be likened to another venue. It would be like an everyday automobile driver stating that since he speeds on the Long Island Expressway every Saturday night, that he is therefore an Indianapolis Speedway racer. Virtually every person who has worked in the post office has work in cross craft assignments in other crafts during their careers. This Union rep worked in the early part of his career across craft lines for many, many years as a Platform Expediter (TME) managing 67 truck trips a night. My time spent performing that cross craft work cannot in any way be considered in the Mail Handler craft overturning primary craft jurisdiction and taking the work from the APWU clerk craft. And in no way can this cross craft assignment by the clerks on the copy and label maker duties be counted toward their overturning primary craft designation. In the instant cases, the NPMHU has enjoyed statutory primary craft designation recognized nationally in the disputed jobs for "**key positions**" and "**standard positions," namely, copying duties and label maker duties.**

In summary, the following **mis-assignment types** do not at all provide the requisite elements needed to establish primary craft assignments nor does the amount of time spent working in these type of assignments (junk time) grant either party that primary designation;

9

(a) details do not count as primary craft designation
(b) temporary assignments do not count
(c) ad hoc assignments do not count
(d) cross craft assignments do not count
(e) light duty assignments do not count
(f) limited duty assignments do not count
(g) featherbedded or assignments by favoritism don't count

Mr. Arbitrator, in the instant cases, the APWU once again spouted it's ridiculous "mantra" in it's belated opening memorandum sent to the NPMHU on 2/14/05 rather than on the promised 2/4/05 date. Even the post office copied the APWU's ridiculous mantra by stating in the TDL's that the clerks had performed the work since the 1980s. **Mr. Arbitrator, the work performed by the clerk craft was nothing other than that same work which falls into the category for which no primary craft jurisdiction may be made.** Clearly junk time.

So, Mr. Arbitrator, to this very day, there is not a signed inventory designation either way for the Brooklyn GMF. **However, the NPMHU never lost it's "key position" nor it's "standard position" status.** That status was given to the NPMHU at the national level by statute from the PRA. Neither the USPS at the national level, nor Brooklyn management at the local level has stripped the NPMHU of it's primary craft designations for copying duties and label maker duties. Mr. Arbitrator, we maintain primary craft jurisdiction of this work. It was never taken away from us formally or

10

NPMHU-0026

officially.  There is only APWU employees malingering in these assignment

because a single manager refused to allow Mail Handlers to continue

working their assignments.  The USPS's own Senior Labor Relations

Specialist Doug Dawson himself, tried to rectify the situation.  Recognizing

that the NPMHU was the primary craft by virtue of **the key**

**position/standard position status,** but with APWU workers from October

1993 onward working cross craft or light/limited duty details, Dawson

referred the cases to 399.  The APWU performance of this work can only be

counted as non-qualified "junk time" for purposes of claiming primary craft

designation of any work.  This means that the last 12 years, when these

clerks were working ad hoc details crossing crafts and when the Dispute

Resolution Procedure was virtually dysfunctional in the N.Y. Metro Area

cannot count against the NPMHU with regards to primary craft designation.

The APWU to this very day, performs the work in at least one of the non-

qualified descriptions listed in **(a) through (g) above,**  that we properly refer

to as junk time.  The ad-hoc cross craft details being improperly worked by

clerk craft now confer no more right to overturning the proper primary craft

assignment of the Mail Handler craft than I personally had when I performed

the Platform Expediter work of the clerks for 6-8 years day in and day out.

APWU would have you believe that the time it's clerks or injured and ill

11

truck drivers working in the copy and label maker duties to allow them to have a pay check counts against the NPMHU for purposes of primary craft jurisdiction is wholly unfounded.

The NPMHU had in 1993, more than a twenty year history of performing the copy/duplicating work and the label maker work in Brooklyn **under the auspices of the <u>key position/standard position</u> status, which the APWU <u>cannot</u> claim.** From the early **1970's** until October of 1993, full-time career regular Mail Handlers **Paul Wrighton**, **Lou Williams**, **Neil Sherlin** and **Joseph Henry** worked these **key/standard** Mail Handler craft positions.

At this point, it is necessary and appropriate to discuss the individual fact circumstances which gave rise to the two grievances filed by the NPMHU. By all accounts, the above-named Mail Handler Joseph Henry was assigned to the above work and after seeing some copy work that he had performed for management, began discussing it "publicly" within the Brooklyn GMF and with the Mail Handler's Union. **It got back to postal manager Lillian McPhall, who then unilaterally stripped the work ostensibly forever from the NPMHU employees.** Rather than counseling Mr. Henry against such conduct, she basically took the assignments away from the entire Mail Handler craft and gave them to the Clerk employees.

12

McPhall has continued to featherbed the improperly ad-hoc working clerks

with this work illegally and improperly for the past 12 years, albeit they are

clearly malingering. <u>Prior to 1993,</u> the only clerks who worked in these

areas on an ad hoc or temporary basis were light or limited duty truck

drivers needing work to feed their families. Since they did not disturb the

work assignments of the Mail Handlers and only supplemented them, the

NPMHU **charitably** acquiesced in allowing these folks to earn a paycheck.

They basically assisted Mail Handlers performing the copy and label maker

functions. Mr. Arbitrator, using the analogy of the proverbial **"man coming**

**to dinner,"** here in this instance, the man brings his family and not only

stays for 12 years past his welcome, but deposes the hosts who charitably

fed him and his family and throws the hosts into the street. Essentially, the

clerks have been malingering in nationally recognized key/standard position

work of Mail Handlers here in Brooklyn for over 12 years. And this must

come to a stop.[2]

Mr. Arbitrator, **the APWU advocate,** under the banner of their never-

ending phony mantra that **"every thing is their work"** and they have

**"always performed every work that exists in the post office,"** clearly

---

[2] It is notable and interesting that Regular Regional postal Arbitrator, Sarah Cannon-Holden who was
originally scheduled to hear the instant cases on a cross craft basis, see NPMHU Exhibit F-1, rendered an
award on almost the identical issue in a case in Huntington Station, Long Island, wherein she restored the
status quo ante and ordered a misplaced Mail Handler position restored.

13

evades the truth on this subject in his mailed "Opening Memorandum." In the 4th paragraph of his **"Summary of Opening by APWU"** he <u>ridiculously</u> asserts, (referring to the 1992 National MOU on Dispute Resolution), that "this memorandum required both the Mail Handlers and the APWU to cease filing grievances over work assignments **(cross crafts)."** Nothing could be further from the truth. The National MOU instead not only permits, but facilitates and even mandates clear craft delineation. If anything, it enhances both Union's abilities to file cross craft grievances when the work is no longer technically in dispute. In his fifth paragraph of the mailed "Summary of Opening," he surreptitiously states that the "new Brooklyn facility clerks were assigned to these functions." He does not disclose the fact that they were only light/limited duty or ad hoc work assignments supplementing Mail Handler craft employees at least until Mail Handler Joseph Henry and others were improperly deposed. In the 6th paragraph of his mailed "Summary," the APWU advocate makes the proverbial quantum leap by mixing in a paraphrase from the National MOU with a wholly fallacious assertion from the previous paragraph that **"the Brooklyn facility clerks were assigned to these functions."** Mr Arbitrator, the only reason that the clerks were charitably allowed to work ad hoc light/limited in this section in the first place was from the kindheartedness of the NPMHU who acquiesced

14

in letting those APWU clerks or truck drivers draw a paycheck by assisting the Mail Handlers in the copy and label maker duties. Advocate LaPoint would have you believe that the USPS properly changed crafts and the NPMHU bungled the cases by filing cross craft grievances. He certainly has trouble with the truth in this regard. He continues to assert that the clerks always performed the work. They only performed the work as junk time which does not count toward the overthrow of the key and standard position statuses.

Mr. Arbitrator, there is only one way in which a transition of work from one craft to another may properly and legally occur after the implementation of the 1992 National MOU. **The RI-399 procedures require the USPS to give 30 days notice to the parties and to meet with them as the LDRC to discuss the change of crafts due to new work/new facility status or operational change. This never occurred in Brooklyn.** **<u>The USPS never formally attempted to officially strip the key/standard position assignments away from the NPMHU.</u>** Mr. Arbitrator, you will recall the identical circumstance occurring at the Mid Hudson facility on the issue of arbitrability on the LCTS case. **As in that case, the USPS never once notified the Unions in Brooklyn that a change in primary craft assignment was taking place.** The only craft which ever had any primary

15

craft jurisdiction at the Brooklyn GMF or it's previous facilities for the duties of copy and label maker was and is the NPMHU. There was no evidence submitted at the hearing by either the APWU or USPS that proved that a legal or valid craft change occurred. The only thing that APWU has to hang it's hat on is the unilateral action by Lillian McPhall, i.e., the featherbedding of the malingering APWU craft employees who in reality enjoy no status whatsoever allowing them to stay in this work.

They (the APWU malingerers have no (1) **prefered duty assignments**, they have (2) **no statutory key/standard position status** and they certainly, as Douglas Dawson clearly saw and pointed out, (3) **no signed inventory to back them up**. The APWU employees are clearly **malingering** on a cross craft basis **in Mail Handler craft work secured by statute and national level recognition**. The USPS argued in their grievance papers that that they don't have "authorized positions" for the copy and label maker duties. **(That was only because of the 1993 temporary Northeast Regional vacancy withholding process).** If that is case, then why are the clerks currently malingering in those duties basically full time today? Suffice it to say that the overwhelming evidence nullifies the APWU argument that they had <u>primary craft jurisdiction</u> of the copy and label maker work. If their argument held any weight whatsoever, then they

16

NPMHU-0032

would clearly have a signed inventory designating them as primary craft for these jobs. They do not enjoy that status as Dawson clearly stated in his referral of the cross craft grievance to RI-399.

## THE QUESTION OF THE INVENTORY

It is quite obvious that the APWU advocate hasn't a scintilla of knowledge concerning the bargaining history of the RI-399 process in Brooklyn. He should have thoroughly investigated this history. He would have learned of some exceptional elements in the situation especially why neither party was entered into the installation facility inventory for the currently disputed jobs. Instead, he chooses to mix paraphrasing of authority with totally untruthful non-facts to make his case.

The Arbitrator may himself be wondering why the parties did not sign off on the copy/duplicating duties and label maker duties on the Brooklyn GMF facility inventory. There are several reasons for this in the bargaining history of the inventory process. First of all, the NPMHU, by virtue of it's long held statutory right to the work by the key/standard position designations, brought forth the work to the committee. In the discussions on this work, the USPS stated that **(1)** it did not have authority to create any full time duty assignments at that time. You will recall that the USPS was going into Northeast Regional Vacancy Withholding process in 1993 and could not

17

NPMHU-0033

at that time properly create new positions or full time preferred duty assignments to post and implement for the Mail Handlers, Clerks or any crafts.  **(2)** The USPS was accommodating both crafts with light/limited duty work **details** when needed in the copy and label maker area under the auspice of National Agreement Article 13, **(3)** Another topic of discussion was the fact that both the **label-maker** and **copy/duplicating duties MAY** actually fall outside the auspices of the RI-399 **Mail Processing Work Assignment Guidlelines.**   The USPS stated that the Mail Handler craft actually had jurisdiction of the cited work by virtue of the statutorily derived **key/standard position** assignments. But since the work was clearly not in mail processing **but instead** clearly performed in the facilities **front offices** totally away from the mail processing on the work floor, that these two positions may have been the exception to the intent of the RI 399 Mail Processing Work Assignment Guidelines. Indeed, the "Introduction" to RI-399 states in pertinent part as follows;

> "I. INTRODUCTION - The enclosed "Mail Processing Work Assignment Guideline" provide primary craft designations relative to the performance of **specific mail processing functions**.......These assignment guidelines are to be implemented at all postal installations which perform mail processing." (**See Letter of Intent, RI-399, NPMHU contract p.157, spiral version).  (Emphasis and underscoring added).**

18

Based on the attendant scenario at the time and on the fact that no new assignments could be created in 1993 due to the Northeast Regional Withholding taking place, **the parties clearly acquiesced** in the fact that the Mail Handlers were still primary craft, albeit no entry was made in the facility inventory. The NPMHU anticipated that after the regional withholding process ceased, the creation of biddable positions would occur in due time.

Notwithstanding the above potential exceptions to the RI-399 process, the National Dispute Resolution Committee never took up this issue, but may well do so now. One of the options of remedy for the Arbitrator would be to refer the case to the NDRC for clarification as to the intent of the parties on the national level on this issue as it relates to the Brooklyn inventory and whether or not the cases should be heard by the RI-399 Arbitrator or be referred to the Regular Regional Arbitrator as a cross-craft issue. The instant arbitrator would invoke of course retention of jurisdiction and the national parties would remand it back to him to decide the merits.

**Moreover, the APWU had the opportunity at the national level to dispute the NPMHU national assignment to the <u>key/standard positions</u> by way of Article 1.5(A) of their National Agreement which states clearly;**

19

NPMHU-0035

**Article 1.5(A).**
"**Each newly created position shall be assigned by the Employer to the <u>national craft unit</u> most appropriate for such position within 30 days after it's creation. Before such assignment of each new position, the Employer shall consult with the Union for the purpose of assigning the new position to the national craft unit most appropriate for such position......**"
**<u>Article 1.5B</u> of the National Agreements state as follows;**
"**B. The union shall be notified promptly by the Employer regarding assignments made under this provision. Should the Union dispute the assignment of new positions within thirty days from the date the Union has received notification of the assignment of the position, the dispute shall be subject to the provisions of the <u>grievance and arbitration procedure</u> provided for herein.**"

Mr. Arbitrator, the NPMHU has had primary craft designation for the copy and label maker jobs on a national basis for decades before the clerks in Brooklyn even began malingering on them. The national level assignment to the NPMHU nullifies the APWU's entire argument and their mantra that they, "Brooklyn clerks have always performed this work." The APWU themselves either did not file the requisite grievance at the national level pursuant to the provisions of Article 1.5 cited above or they were not successful if they did. This is because there is no evidence whatsoever that the **key/standard positions** (copy and label maker) have disappeared at the national level or in the local level in Brooklyn. These designations just do not disappear when clerks cross crafts. Ergo, the NPMHU filed a fully legitimate cross craft grievance in October of 1993 based upon the fact

20

circumstances which arose at that time.  There was nothing improper with the NPMHU filing a cross craft case.  Cross craft cases are permitted apparently much to the disdain of the APWU advocate.  Indeed this NPMHU representative has arbitrated and won over 30 cross craft cases over the past 4-5 years throughout the New York Metro area alone.  The only reason that this case was referred into the RI-399 procedure is that Labor Relations Specialist Doug Dawson noticed that despite the NPMHU **statutory key/standard position** status, there was no signed inventory on the duties discussed here. The National Dispute Resolution Committee has never taken up the issue of whether **copy/duplicating** and **label maker** functions should be within the purview of the RI-399 Mail Processing Work Assignment Guidelines or not given the fact that the NPMHU already enjoys key/standard position status and that status has never been formally challenged in Brooklyn nor has any notice been given that the USPS was attempting to change crafts.  The fact that the genesis of this current dispute arises from the grievance procedure on a cross craft basis under Articles 7.2 and 12, respectively does not negate arbitrability.  It just makes the case more interesting.  As a matter of fact, Sarah Cannon-Holden restored the status quo ante in a case in Huntington Station, Long Island where a similar management indiscretion occurred.  She stated that the RI 399 procedures

21

were not complied with and that the USPS could not strip the work from the NPMHU unless it went throught the Dispute Resolution process with the required 30 day notification letter.  She would have been expected to render a similar decision in the instant cases.

- Mr. Arbitrator, we thank you for hearing our argument on the issue of arbitrability.  We believe that it is overwhelmingly clear that the NPMHU filed the proper grievance dispute.  At no time was the jurisdiction changed from the NPMHU to the APWU in Brooklyn mandating a 30 day letter and LDRC meetings . At no time was a 30 day notice of such sent to this Union. Therefore, the **key/standard position** status remains the same.  APWU cannot make the same claim.  They can only claim that they have been malingering on legitimate NPMHU work for 12 years.  That is clearly a cross craft violation.  However if Doug Dawson is correct, then the RI-399 Inventory record must be set straight because he indeed referred it into the procedure pre-arbitration.

### REMEDIAL ACTION REQUESTED BY THE NPMHU

The NPMHU believes that the instant Arbitrator has at least three options as remedy to the instant arbitrability issues.

1. **The parties shall proceed to the merits of the copy/duplicating case and the label maker case in the RI-399 venue.**
2. **The NPMHU has summarily proven that they have primary craft jurisdiction by virtue of the <u>statutory key/standard</u>**

22

position status on the national level.  The cases are thereby remanded and referred to the Article 15 grievance-arbitration procedure for hearing on the merits of cross craft issue.  ( the Arbitrator should also in this instance deem the work to be included into the Brooklyn inventory.)

3.  (If the Arbitrator has any doubt whatsoever he can)  refer both cases to the National Dispute Resolution Committee for any clarification, interpretation or action by the parties who formulated the National MOU, of the proper course for these two potentially exceptional cases.

4.  Or whatever just and proper remedy the Arbitrator deems appropriate.

Respectfully submitted,

Lawrence Hill
NY State Rep. Local 300
NPMHU

23

# APPENDIX A

# DOCUMENTARY EVIDENCE SUBMITTED

NPMHU-0040

**GRIEVANCE SUMMARY - STEP 1**

CLASS ACTION 93-107

NPMHU C-1

Forward the original of this form to your Step 2 Management Official. Complete Items 1 through 12 and 21.
If grievance is denied, complete Items 13 through 20. If additional space is required, continue on reverse.
See Handbook P-32, Supervisor's Guide to Handling Grievances, Part V for instructions.

| FACILITY | 3. CRAFT | 4. GRIEVANT'S TITLE |
|---|---|---|
| G MF | M/H | M/H |

| DATE OF | 6. WAS GRIEVANCE TIMELY AT STEP 1? | 7. DATE OF STEP 1 ANSWER | 8. UNION OFFICIAL |
|---|---|---|---|
| INCIDENT / STEP 1 MEETING 10/16/93 | ☒YES ☐No | 10/25/93 | R. BOSALAVAGE |

**ISSUE** *(Complaint or alleged violation)*

THE JOBS IN THE LABEL ROOM ARE MAIL HANDLER FUNCTIONS AND ARE CURRENTLY FILLED BY CLERKS.

**REMEDY REQUESTED** *(Specify requirements to resolve grievance)*

CEAST USING CLERKS IN THE LABEL ROOM AND POST BIDS FOR MAIL HANDLER POSITIONS.

**DECISION** *(Check one)* ☐ SUSTAINED ☐ SETTLED ☒ DENIED ☐ CLOSED ☐ WITHDRAWN ☐ OTHER *(Specify)*

**REASONS FOR DECISION**

SEE ITEM # 19 BELOW

| GRIEVANCE DATA | | | | | 14. CRAFT OR RELEVANT SENIORITY DATE |
|---|---|---|---|---|---|
| LEVEL | b. STEP | c. TOUR | d. SECTION | e. PAY LOCATION | |

**CHECK ONE**
☐ FTR   ☐ PTR   ☐ PTF   ☐ RURAL DESIGNATION CODE_____

| 16. OFF DAYS | 17. WORK SCHEDULE |
|---|---|

**BACKGROUND** *(State all relevant information and attach all supporting documents)*

THE UNION CONTENDS THAT MANAGEMENT HAS BEEN STAFFING THE LABEL ROOM WITH CLERKS. THE JOBS IN THE LABEL ROOM ARE CLEARLY MAIL HANDLER FUNCTIONS
2-579, 2-580, 2-581, 2-632, 2-578.

**MANAGEMENT'S POSITION**

THE POSITIONS LISTED IN ITEM 18 ABOVE ARE NOT AUTHORIZED IN THE BROOKLYN G.M.F.

**UNION'S POSITION**

MANAGEMENT CEASE USING CLERKS IN THE LABEL ROOM AND POST BIDS FOR THE MAIL HANDLERS CRAFT. MAIL HANDLERS BE MADE WHOLE FOR ALL TIME LOST.

| a. MANAGEMENT OFFICIAL *(Name and Title)* | b. TEL ☐ FTS ☐ COM | c. SIGNATURE | |
|---|---|---|---|
| A.R. DOUGLAS - SDO | 348-3026 | [signature] | 10/25/93 |

Form 2608
1980

☆ U.S. GOVERNMENT PRINTING OFFICE: 1981—750-088/4102

U.S. POSTAL SERVICE
**GRIEVANCE SUMMARY - STEP 1**

| 1. GRIEVANT'S NAME.(Last, First and Middle Initial) |
|---|
| CLASS ACTION - 93-203 |

Forward the original of this form to your Step 2 Management Official. Complete Items 1 through 12 and 21.
If grievance is denied, complete Items 13 through 20. If additional space is required, continue on reverse.
See Handbook P-32, Supervisor's Guide to Handling Grievances, Part V for instructions.

NPMHU C-2

| FACILITY GMF | 3. CRAFT M/H | 4. GRIEVANT'S TITLE R. BOSALAVAGE |
|---|---|---|

| 5. DATE OF | | | |
|---|---|---|---|
| 1. INCIDENT | STEP 1 MEETING 10/16/93 | 6 WAS GRIEVANCE TIMELY AT STEP 1? ☒YES ☐NO | 7. DATE OF STEP 1 ANSWER 10/25/93 |

8. UNION OFFICIAL R. BOSALAVAGE

**9. ISSUE** *(Complaint or alleged violation)*
THE DUPLICATING UNIT IS PRESENTLY STAFFED BY CLERKS. ~~XXXX~~

**10. REMEDY REQUESTED** *(Specify requirements to resolve grievance)*
MANAGEMENT MUST CEASE USING CLERKS ON THE COPYING MACHINES AND POST BIDS FOR MAIL HANDLERS AS SHOWN IN STANDARD POSITION 2-579

**11. DECISION** *(Check one)* ☐SUSTAINED ☐SETTLED ☒DENIED ☐CLOSED ☐WITHDRAWN ☐OTHER *(Specify)*

**12. REASONS FOR DECISION**
SEE ITEM #19 BELOW

| 13. | | GRIEVANCE DATA | | | 14. CRAFT OR RELEVANT SENIORITY DATE |
|---|---|---|---|---|---|
| a. LEVEL | b. STEP | c. TOUR | d. SECTION | e. PAY LOCATION | |

| 15. CHECK ONE | | | | 16. OFF DAYS | 17. WORK SCHEDULE |
|---|---|---|---|---|---|
| ☐FTR ☐PTR ☐PTF ☐ RURAL DESIGNATION CODE_____ | | | | | |

**18. BACKGROUND** *(State all relevant information and attach all supporting documents)*
THE UNION CONTENDS THAT THE JOB OF OPERATING THE PHOTO COPYING MACHINES ARE CLEARLY A MAIL HANDLER FUNCTION AS SHOWN IN SP2-579 AND SP0 KP 0008.

**19. MANAGEMENT'S POSITION**
STANDARD POSITION 2-579 TITLE - "LABEL MACHINE OPERATOR" IS NOT AUTHORIZED IN THE BROOKLYN G.M.F.

**20. UNION'S POSITION**
MANAGEMENT CEASE USING CLERKS ON THE COPY MACHINES AND POST THE BID FOR MAIL HANDLERS. MAIL HANDLER BE MADE WHOLE FOR ALL TIME LOST.

NPMHU-0049

| 21. | a. MANAGEMENT OFFICIAL *(Name and Title)* A. R. DOUGLAS | b. TEL ☐FTS ☐COM 348-3026 | c. SIGNATURE |
|---|---|---|---|

Form 2608
n. 1980

☼ U.S. GOVERNMENT PRINTING OFFICE: 1981—750-088/4193

NPMHU D.



**United States**
**Postal Service**

NOV 22 1993

Brooklyn, New York  11256

Mr. Michael Nash
Adm. Vice-President
L.I.U.N.A —Local 300
Brooklyn, New York  11256

| | |
|---|---|
| Subject: | Class Action |
| USPS #: | 93M-384 |
| Union #: | 93-107 |
| Brooklyn GMF | 11256 |

Dear Mr. Nash:

On November 17, 1993, I met with Mr. Robert Bosalavage to discuss the above captioned grievance at Step II of our contractual grievance procedure.

This grievance pertains to the contention of the union that Management violated Article 7.2 and Article 12 of the National Agreement by staffing the Label Room with Clerks since the building opened in 1992. The union further contends that the Label Room jobs are clearly Mailhandler functions as shown in Standard Positions 2-578, 2-579, 2-580, 2-581 and 2-632.

Upon full discussion and consideration of the facts, it is determined that this grievance is **DENIED**.

The reason for this decision is that the union has failed to demonstrate any violation of the National Agreement. The positions described in the listing of Standard Positions are not authorized positions in the Brooklyn Processing and Distribution Center. In view of the foregoing, there exists no Contractual Violation.

Lillian McPhaul
Management Designee
Step II

NPMHU-0050

*NPMHUD-*



**United States
Postal Service**

*NOV 22 1993*

Brooklyn, New York    11256

Mr. Michael Nash
Adm. Vice-President
L.I.U.N.A –Local 300
Brooklyn, New York    11256

|  |  |
|---|---|
| **Subject:** | **Class Action** |
| **USPS #:** | **93M-385** |
| **Union #:** | **93-203** |
| **Brooklyn GMF** | **11256** |

Dear Mr. Nash:

On November 17, 1993, I met with Mr. Robert Bosalavage to discuss the above captioned grievance at Step II of our contractual grievance procedure.

This grievance pertains to the contention of the union that management has violated Articles 7.2 and 12 of the National Agreement by staffing the Duplicating Room with Clerks. The union further contends that the job of operating the photo copying machines are clearly mailhandler functions as shown in Standard Positions 2-579 and KP0008.

Upon full discussion and consideration of the facts, it is determined that this grievance is DENIED.

The reason for this decision is that the union has failed to demonstrate any violation of the National Agreement. The positions described in the listing of Standard Positions are not authorized positions in the Brooklyn Processing and Distribution Center. In view of the foregoing, there exists no Contractual Violation.

Lillian McPhaul
Management Designee
Step II

NPMHU
E-1

 **UNITED STATES POSTAL SERVICE**

LABOR RELATIONS SPECIALIST
NEW YORK METRO AREA OFFICE
1250 BROADWAY – 5TH FLOOR
NEW YORK NY 10001-3701
(212) 613-8730
FAX: (212) 613-8732

March 28, 1994

A90M-1A-C 94010505    DIST 113
12/03/93 93M384
CLASS ACTION
BROOKLYN          NY 11256 9042

Mr. Terrence Donahue
Northeast Regional Representative
National Postal Mail Handlers Union
820A Prospect Hill Road
Windsor CT 06095-1570

Dear Mr. Donahue:

On February 3, 1994, we met to discuss the above captioned grievance at Step 3 of our grievance procedure. This grievance pertains to an alleged violation of Articles 7.2 and 12 of the National Agreement. The Union contends that the Label Room has been staffed with clerks since the opening of the Brooklyn GMF in 1992. The Union contends that Label Room work belongs to the Mail Handler craft. The Union requests as remedy, that this practice cease. The Union further requests that bids be posted for the mail handler craft and; the Union requests that the mail handler craft be made whole for all time lost.

After full discussion and consideration of the facts of this case, it is determined that this grievance is denied. The reasons for this decision are the case file lacks specificity and substantive documentation in support of the Union's contention that Articles 7.2 and 12 of the National Agreement have been violated since the Brooklyn GMF opened in 1992. Specifically, the Union has failed to identify this position in the building inventory as required in Regional Instruction 399 guidelines (new facility). In accordance with RI-399 guidelines, inventories must be completed by both parties (APWU and NPMHU); and, jurisdictional disputes must be filed within fourteen days of the Union's review of the inventory. The Union has failed to identify employees improperly assigned to Label Room duties. Further, the Union has failed to demonstrate that Label Room work qualifies as a full time position in accordance with Article 7 of the National Agreement.

In our judgment, the grievance does not involve any interpretive issue(s) pertaining to the National Agreement or any supplement thereto which may be of general application. Unless the Union believes otherwise, the case may be appealed directly to regional arbitration in accordance with the provisions of Article 15 of the National Agreement.

Barbara L. Phipps
Labor Relations Specialist
New York Metro Area

CC: Postmaster/Dist Dir HR/HR Analyst P&D/File

RECEIVED
MAR 30 1994
N.P.M.H.U.
NE REGION

NPMHU-0052

NPMHU
E-2

 **UNITED STATES POSTAL SERVICE**

LABOR RELATIONS SPECIALIST
NEW YORK METRO AREA OFFICE
1250 BROADWAY - 5TH FLOOR
NEW YORK NY 10001-3701
(212) 613-8730
FAX: (212) 613-8732

March 28, 1994

A90M-1A-C 94010504    DIST 113
12/03/93 93M385
CLASS ACTION
BROOKLYN        NY 11256 9042

Mr. Terrence Donahue
Northeast Regional Representative
National Postal Mail Handlers Union
820A Prospect Hill Road
Windsor CT 06095-1570

Dear Mr. Donahue:

On February 3, 1994, we met to discuss the above captioned grievance at Step 3 of our grievance procedure. This grievance pertains to an alleged violation of Articles 7.2 and 12 of the National Agreement. The Union contends that clerks have been assigned to mail handler craft duties from the time the building opened in 1992. The Union contends that photo copying is mail handler craft work. The Union requests as remedy, that this practice cease. The Union further requests that bids be posted for the mail handler craft and; the Union requests that the mail handler craft be made whole for all time lost.

After full discussion and consideration of the facts of this case, it is determined that this grievance is denied. The reasons for this decision are the case file lacks specificity and substantive documentation in support of the Union's contention that Articles 7.2 and 12 of the National Agreement have been violated since the Brooklyn GMF opened in 1992. Specifically, the Union has failed to identify this position in the building inventory as required in Regional Instruction 399 guidelines (new facility). In accordance with RI-399 guidelines, inventories must be completed by both parties (APWU and NPMHU); and, jurisdictional disputes must be filed within fourteen days of the Union's review of the inventory. The Union has failed to identify employees improperly assigned to copying machine duties. Further, the Union has failed to demonstrate that operation of copying machines qualifies as a full time position in accordance with Article 7 of the National Agreement.

In our judgment, the grievance does not involve any interpretive issue(s) pertaining to the National Agreement or any supplement thereto which may be of general application. Unless the Union believes otherwise, the case may be appealed directly to regional arbitration in accordance with the provisions of Article 15 of the National Agreement.

Barbara L. Phipps
Labor Relations Specialist
New York Metro Area

CC: Postmaster/Dist Dir HR/HR Analyst P&D/File

RECEIVED
MAR 30 1994
N.P.M.H.U.
NE REGION

*NPMHU F-1*

RECEIVED

12-30-98

JAN 0 4 1999

NPMHU NE REGION

SARAH HOLDEN
P.O. BOX 347 - LC
LINCOLN, MA  01773-1234

Pursuant to Article 15, Section 4, B.2, of the 1990 National Agreement, the following arbitration case(s) has been scheduled before this arbitrator on the Regular Regional Arbitration Panel.  The hearing will begin at 10:00 a.m. on March 2, 1999 at the postal facility located at 1050 FORBELL ST           BROOKLYN,  NY.

| A94M-1A-D 97036653 | 96593 | | | |
|---|---|---|---|---|
| A94M-1A-D 98108516 | 98453 | HERNANDEZ | DISC BROOKLYN | NY |
| A94M-1A-D 98108518 | 98445 | WRIGHT | DISC BROOKLYN | NY |
| A90M-1A-C 94010504 | 93M385 | REUBEL | DISC BROOKLYN | NY |
| A90M-1A-C 94010505 | 93M384 | CLASS ACTION CNTR | BROOKLYN | NY |
| | | CLASS ACTION CNTR | BROOKLYN | NY |

Where more than one case is scheduled at a location, cases will be heard in the order listed unless the parties mutually agree to present the cases in a different order.

This letter does not constitute a waiver by either party of any issue of arbitrability or timeliness as it relates to the processing of the grievances, as it merely serves to confirm to the arbitrator the location, date and time, pursuant to the terms of Article 15, Section 4,B.2 of the 1990 National Agreement and the back-up case(s) pursuant to Article 15, Section 4,A.4 of the 1990 National Agreement.

Gary Johnston
Labor Relations Specialist

Raymond Sokolowski
Regional Director - MH

cc:  Labor Relations,  110
     Regional Director - MH
     Postmaster

NPMHU-0054

*NPMHU G-1*

LABOR RELATIONS SPECIALIST
LABOR RELATIONS OFFICE

*Brooklyn*

**UNITED STATES
POSTAL SERVICE**

Raymond Sokolowski
N.E. Regional Director
N.P.M.H.U.
82A Prospect Hill Road
Windsor, CT  06095 – 1570

Dear Mr. Sokolowski:

The following two grievances are schedul                                    rch
2, 1999 before Arbitrator Sarah Holden:

A90M-1A-C  94010504   *copy*   93M385        Class Action

A90M-1A-C  94010505   *label*   93M384        Class Action

# 93M385 refers to an R.I. – 399 complaint about what craft should staff the
duplicating room at the Brooklyn GMF.

# 93M384 refers to an R.I. – 399 complaint about what craft should staff the label
making room at the Brooklyn GMF.

Neither position is referred to in the *Installation inventory of Mail Processing
Operations* signed on September 15, 1992 by representatives of both the A.P.W.U.
and the Mail Handler Unions.

Therefore, I am requesting that these two grievances go to the R.I. 399 Regional
Dispute Resolution Committee and be taken off the Arbitration Docket for March 2,
1999. There are other cases on the docket that will go forward.

*Douglas Dawson*
Douglas Dawson
Labor Relations Specialist
Brooklyn, NY

cc:      Mario Rubino            Arbitration Coordinator, Windsor, Ct.
         Tom Stanziale          AVP Brooklyn, NY
         Helene Moore Kondek     Sr. Labor Relations Specialist
         Harry Johnson          Area Labor Relations Specialist

                                            **RECEIVED**

1050 FORBELL STREET                          FEB 2 2 1999
BROOKLYN, NY 11256-9401
(718) 348-3224
FAX: (718) 348-6890                        NPMHU NE REGION

                                            **NPMHU-0055**

NPMHU H-2

## THE BROOKLYN P&DC
## RI-399 LOCAL DISPUTE RESOLUTION COMMITTEE (LDRC)

### TRIPARTITE DECISION LETTER

### CASE #: 93-203

**Issues in Dispute:**   Duplicating Room                 **Operation #:**   None identified

**Function**                          **Designated Craft**              **Disputed by:**

Duplication of paper work for the                Clerks                    Mailhandlers
   Brooklyn P&DC & Customer Service

**Disputing Union's Position:**
See letter addressed to Tommy Guttadauro dated May 11, 1994 in case file (attached). Local 300
wants to use said letter (verbatim) as their position. In addition, it was given to the mail handler craft
in the local agreement as a light duty assignment.

**USPS Management's Position:**
Only clerks have worked in the duplicating room from 1987 to the present. The mail handler union
had the opportunity to do an inventory in 1993 and 1994, but failed to do so. In 1993, a grievance was
filed with no evidence of who did the job and no documentation has been presented in 2004. In
addition, this function was performed by Customer Service.

**Intervener Union's Position:**
Only clerks have worked in the duplicating room from 1987 to the present. The mail handler union
had the opportunity to do an inventory in 1993 and 1994, but failed to do so. In 1993, a grievance was
filed with no evidence of who did the job and no documentation has been presented in 2004. In
addition, this function was performed by Customer Service.

**The signatories to this document acknowledge that by signing this document in no way
represents agreement or acceptance of the other parties' position. The signatures on this
document is only acknowledgement that the aforementioned position(s) of the respective parties
are accurately reflected based on discussions during the RI-399 LDRC meetings.**

_____          _____          _____
APWU – Local 251                         USPS                           NPMHU – Local 300

Date Signed:

NPMHU-0056

NPMHU - H-1

### THE BROOKLYN P&DC
### RI-399 LOCAL DISPUTE RESOLUTION COMMITTEE (LDRC)

### TRIPARTITE DECISION LETTER

#### CASE #: 93-107

**Issues in Dispute:**    Label room                    **Operation #:**   None identified

**Function**                          **Designated Craft**          **Disputed by:**

To make labels for all operations           Clerks                    Mailhandlers

**Disputing Union's Position:**
See letter addressed to Tommy Guttadauro dated May 11, 1994 in case file (attached). Local 300 wants to use said letter (verbatim) as their position.

**USPS Management's Position:**
Only clerks have worked in the label room from 1987 to the present. The mail handler union had the opportunity to do an inventory in 1993 and 1994, but failed to do so. In 1993, a grievance was filed with no evidence of who did the job and no documentation has been presented in 2004.

**Intervener Union's Position:**
Same position as management's, in addition, clerks have done this job since 1983, the beginning of automation in Brooklyn.

**The signatories to this document acknowledge that by signing this document in no way represents agreement or acceptance of the other parties' position. The signatures on this document is only acknowledgement that the aforementioned position(s) of the respective parties are accurately reflected based on discussions during the RI-399 LDRC meetings.**

APWU – Local 251          USPS                  NPMHU – Local 300

12.29.06

Date Signed:

NPMHU-0057