UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. (RBW/ak) | ) | Case No. 1:05-CV-01290 |
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, | ) ) ) ) ) | |
| and | ) ) | |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendants. | ) ) ) | |

# Exhibit 9 to Hill Declaration (part 2)

# APPENDIX B

# ARBITRATION DECISIONS SAME OR SIMILAR IN NATURE

NPMHU-0058

*General Duties*

STD POSITION DESCRIPTION

✔ U. S. Postal Service

MAILHANDLER, ME-04 ✔    **NPMHU-AI**

FUNCTIONAL PURPOSE ✔

Loads, unloads, and moves bulk mail and performs other duties to support the movement and processing of mail.

DUTIES AND RESPONSIBILITIES

1. Unloads mail from trucks. Separates all mail received from trucks and conveyors for dispatch to other conveying units and separates and delivers mail for delivery to distribution areas.

2. Places empty sacks or pouches on racks, labels them where prearranged or where racks are plainly marked, dumps mail from sacks, cuts ties, faces letter mail, carries mail to distributors for processing, places processed mail into sacks, removes filled sacks and pouches from racks and closes and locks sacks and pouches. Picks up sacks, pouches, and outside pieces, separates outgoing bulk mails for dispatch and loads mail onto trucks.

3. Handles and sacks empty equipment; inspects empty equipment for mail and restrings sacks.

4. Cancels stamps on parcel post, operates cancelling machines, carries mail from cancelling machine to distribution cases.

5. Assists in supply and slip rooms and operates copy machine and related office equipment. ✔

6. Performs other duties as assigned, such as making simple distribution of parcel post mail that requires no scheme knowledge; operating electric fork lifts; rewrapping damaged parcels; weighing incoming sacks, cleaning and sweeping work areas, offices, rest rooms, and trucks where work is not performed by a regular cleaner.

7. With approval of Regional Chief Postal Inspector, acts as an armed guard for valuable registry shipments and as a watchman and guard around post office building.

SUPERVISION

Supervisor, Mails; or other designated supervisor.

SELECTION METHOD

Senior Qualified

BARGAINING UNIT

MAIL HANDLER ✔

KEY POSITION REFERENCE ✔

KP-0008 ✔

(End of Document)

Document Date: 03-03-92 ✔    SPD Number: KP-0008    Occupation Code: 2315-01XX

Page:    1

NPMHU-0041

*Standard Position Descriptions*
*Occupational Code 4401–05*
*Craft–Mailhandler\**

NPMHU B-1

*Chapter C*
*Standard Position 2-579*

## U.S. POSTAL SERVICE

Title:  Label Machine Operator
Key Position Reference No. 7

Salary Level: PS-4

**BASIC FUNCTION.** Operates various machines such as elliot, tickometer, stencil cutter, and graphotype to print labels and facing slips required in mail distribution operations of post offices, terminals and airport mail facilities. Or operates photo composing, photocopying and multilith machines, and performs related work in preparing case labels.

## DUTIES AND RESPONSIBILITIES

A. Sets up and operates elliot and tickometer printing machines, adjusting for either labels or facing slips and for differing size and weight of stock.

B. Prepares stencils on stencil-cutting machines, spacing and lining type for proper placement, and using stylus to draw lines and special symbols to be reproduced on labels and facing slips by printing machines.

C. Prepares metal plates on graphotype, cutting, bending, shaping and affixing metal stock to printing arms.

D. Participates in the preparation of headliner case labels, as directed, by performing such functions as operating photo composing, photocopying and multilith machines; cutting film into strips and cementing strips on mats; spraying reproduced sheets, and cutting labels.

E. Cleans, oils, and adjusts machines to maintain them in proper working order.

F. Packs completed labels and facing slips for delivery; receives and stores supplies of paper stock; maintains schedule of pickup and delivery.

**ORGANIZATIONAL RELATIONSHIPS.** Reports to a foreman, label printing center, or other designated supervisor.

*Filled by senior-qualified mailhandler

TL-74-1, 8-1-74  ✓

NPMHU-0042

NPMHUB-2

Occupational Code 4401-06                                    Chapter C
Craft-Mail Handler*                              Standard Position 2-578

## U.S. POSTAL SERVICE

Title: Label Printing Technician                        Salary Level: PS-5
Key Position Reference No. 12

**BASIC FUNCTION.** Produces case labels, scheme cards, rack headers, label and facing slips used by post offices and other postal installations in the distribution and dispatch of mails; makes frequent change in stencil sets; operates and services machines used to produce these items.

## DUTIES AND RESPONSIBILITIES

A. Sets up and operates LP III and LP 300 label printing machines and tickometer to produce labels and facing slips; adjusts machines for either labels or facing slips and for differing size and weight of stock.

B. Prepares metal plates on graphotype, cutting, bending, shaping and affixing metal stock to printing arms to provide good printing rings for the tickometer.

C. Is responsible for the maintenance of current up-to-date stencil sets, making changes in the sets from mailing directions and case rack diagrams furnished, and changes issued by the regional schemes and routing office to insure proper direction of mail within the installations and in transit to destinations.

D. Based on knowledge of mail distribution methods gives instructions to the typist to make necessary corrections in format, title abbreviations, and symbols on new stencils.

E. Verifies new or changed stencils prepared, removes stencils no longer authorized and inserts new or changed stencils in the sets in proper sequence of printing and usage. Recommends elimination or combining of sets when size of set no longer meets departmental criteria.

F. Is responsible for the quality of machine output by ensuring proper inking, maintenance of proper margins and performing other adjustments designed to produce maximum legibility.

G. Frequently makes revisions based on notice of changes after production has started and correctness of revisions are dependent on technician's knowledge and experience.

H. Maintains machines in proper working order, operating so as to prevent breakdowns but maintaining maximum production; oils, cleans parts and makes minor repairs to machines.

**ORGANIZATIONAL RELATIONSHIPS.** Reports to a foreman, label printing center, or other designated supervisor.

---

*Filled by senior-qualified mailhandler

TL-74-1, 8-1-74

NPMHU-0043

*Standard Position Descriptions*
*Occupational Code 4401–05*
*Craft–Mailhandler**

**NPMHU B-3**

*Chapter C*
*Standard Position 2-579*

## U.S. POSTAL SERVICE

Title: Label Machine Operator
Key Position Reference No. 7

Salary Level: PS-4

**BASIC FUNCTION.** Operates various machines such as elliot, tickometer, stencil cutter, and graphotype to print labels and facing slips required in mail distribution operations of post offices, terminals and airport mail facilities. Or operates photo composing, photocopying and multilith machines, and performs related work in preparing case labels.

## DUTIES AND RESPONSIBILITIES

A. Sets up and operates elliot and tickometer printing machines, adjusting for either labels or facing slips and for differing size and weight of stock.

B. Prepares stencils on stencil–cutting machines, spacing and lining type for proper placement, and using stylus to draw lines and special symbols to be reproduced on labels and facing slips by printing machines.

C. Prepares metal plates on graphotype, cutting, bending, shaping and affixing metal stock to printing arms.

D. Participates in the preparation of headliner case labels, as directed, by performing such functions as operating photo composing, photocopying and multilith machines; cutting film into strips and cementing strips on mats; spraying reproduced sheets, and cutting labels.

E. Cleans, oils, and adjusts machines to maintain them in proper working order.

F. Packs completed labels and facing slips for delivery; receives and stores supplies of paper stock; maintains schedule of pickup and delivery.

**ORGANIZATIONAL RELATIONSHIPS.** Reports to a foreman, label printing center, or other designated supervisor.

*Filled by senior–qualified mailhandler

TL-74-1, 8-1-74

NPMHU B-4

*Occupational Code 7002-03*
*Craft-Mailhandler\**

Chapter C
Standard Position 2-581

## U.S. POSTAL SERVICE

Title: Packer-Shipper
Key Position Reference No. 8

Salary Level: PS-4

**BASIC FUNCTION.** Performs work involved in packaging and shipping items printed in the label printing center, and, in the receipt and storage of supplies used in the center.

## DUTIES AND RESPONSIBILITIES.

A. Removes and/or receives completed nonstandard labels, facing slips and scheme cards from production area and arranges items in lots for shipping.

B. Withdraws from storage, standard items needed to complete requisition and combines lots for packaging; reports withdrawals to maintain inventory.

C. Assures that labels and facing slips as ordered are properly packaged, sealed and labeled for delivery to correct postal installations; loads packages on rolling equipment and takes them to dispatch area.

D. Receives, examines and stores supplies of paper stock, stencils, ink, cartons, etc; in stock room or designated storage area; reports additions and withdrawals to maintain current inventory.

E. Places sufficient quantities of paper stock in production area to meet normal daily needs of machine operators.

F. Performs other related duties as assigned or directed.

G. Verifies the shipping destination of finished goods.

H. Performs "on the spot" quality evaluation prior to packaging finished goods.

I. Consults with supervisor in determining economic lot size of products to be shipped and most convenient packaging size and configuration.

## ORGANIZATIONAL RELATIONSHIPS. Reports to foreman, label printing center, or other designated supervisor.

\*Filled by senior qualified mailhandler.

-74-1, 8-1-74

*Standard Position Descriptions*                                                    *Chapter C*

*Occupation Code 4401-02*                                          *Standard Position 2-632*
*Craft: Mailhandler*

**U.S. POSTAL SERVICE**                                                    NPMHU- B5

Title: Computer Print Line Production Operator                          Salary Level PS—5
Key Position Reference No. 12

**BASIC FUNCTION.** Operates and monitors production effectiveness of assigned print lines and to interface with the computer system through the controls on the computer and on each piece of print line equipment.

**DUTIES AND RESPONSIBILITIES**

A. Energizes remote print line computers and other equipment such as printers, dereelers, cutter-slitter, and stacker tyers that make up the print line in the production of labels, facing, slips, and other printed matter.

B. Synchronizes functions between the printer and separation subsystem whenever power has been turned off on the printer.

C. Ensures that operating controls are performing properly to bring the desired print lines on line.

D. Replenishes supplies to the print line to ensure continuity of production.

E. Monitors print lines to ensure quality of the operation.

F. Performs minor maintenance and clears jams; notifies maintenance personnel repairs are needed.

G. Operates multilith and/or other printing equipment during emergencies or need for increased production.

H. Operates Elliott Label Printing Machine in the production of scheme cards and over-sized airmail and express mail cards.

I. Performs other job related tasks in support of primary duties.

**ORGANIZATIONAL RELATIONSHIPS.** Reports to the supervisor, computer operations, or other designated supervisor.

P-1, TL-76-1, 4-2-76

*Occupational Code 0322-04*
*Craft—Mailhandler* *

*Chapter C*
*Standard Position 2-580*

NPMHU B -6

U.S. POSTAL SERVICE

Title: Typist-Label Printing
Key Position Reference No. 7

Salary Level: PS-4

=====================================================================

**BASIC FUNCTION.** Prepares label, facing slip and scheme card stencils and types carrier case labels from approved copy or instructions.

**DUTIES AND RESPONSIBILITIES.**

A. Prepares stencils on manual or electric stencil cutting machine in accordance with instructions and list furnished.

B. Spaces and lines type for proper placement on stencil according to established format; uses stylus to draw lines and special symbols to be reproduced on labels and facing slips by printing machines.

C. Types labels on carrier case label typewriter or flatbed writing machine from approved copy, observing and following all special markings requested.

D. In addition, may perform any of the following duties:

(1) Operates mimeograph, addressograph, collator, folder, inserter and sealer machines.

(2) Prepares notices and charts on a bulletin type typewriter.

(3) Types correspondence and memorandum from rough drafts or general information.

**ORGANIZATIONAL RELATIONSHIPS.** Reports to foreman, label printing center, or other designated supervisor.

--------------------
*Filled by senior-qualified mailhandler; then open office-wide, best qualified.

TL-74-1, 8-1-74

NPMHU-0047

05835.pdf
S.HOLDEN:JUNE10,2002
SUSTAINED:NPMHU
00240742:REGIONAL

## REGULAR ARBITRATION PANEL

| | |
|---|---|
| <u>In the Matter of the Arbitration Between</u> | Grievant: **CLASS ACTION** <br> (D. Ciranni et al.) |
| The United States Postal Service | Post Office: **Huntington Station, NY** <br> **Melville Branch** |
| and | Case No.  **USPS  A98M-4A-C  00240742** <br> **NPMHU  00003** |
| National Postal Mail Handlers Union, AFL-CIO | |

BEFORE:  Sarah Cannon Holden, Arbitrator
APPEARANCES:

|  | |  |
|---|---|---|
| | For the Postal Service: | **Mary Doyle-Finn** |
| | For the Union: | **Lawrence Hill** |

| | |
|---|---|
| PLACE OF HEARING: | **Huntington, New York** |
| DATE OF HEARING: | **May 2, 2002** |
| DATE OF AWARD: | **June 10, 2002** |

## ISSUE.

Did the U.S. Postal Service violate the national Agreement and/or any supplement thereto, when it abolished Mail Handler craft bid 96-01 in the Melville Substation?  If so, what shall be the remedy?

## BACKGROUND.

On September 6, 2000 Postmaster Ronald Mirro informed Mail Handler (MH) D. Ciranni that his bid position, 96-01, would be abolished effective September 12, 2000 and that, thereafter, MH Ciranni would become an unassigned regular. MH Ciranni had held the bid position for more than 10 years[1].

According to the information on the Standard Grievance Form the jobs of all Mail Handlers at Huntington Station were abolished, but after consultation between

---

[1] The evidence was unclear on how long MH Ciranni worked for the Postal Service; it was somewhere between 10 and 16 years.

The Union argued that the APWU has never challenged the assignment of the duties of the position in question to the Mail Handler craft. It further argued that after June 1, 1994, if the APWU did not dispute an assignment, then the assignment was to be considered proper.

In sum, the Union argued that a "craft assignment can only be turned over if the work is new to the post office or if the Local Dispute Resolution Committee agrees unanimously to turn a duty assignment to another craft". Neither of these conditions, the Union argued, exists here.

For remedy, the Union asks that the duty assignment be properly reinstated to the Mail Handler craft and that it be re-posted for Mail Handler bidding. In addition, it asks that my award make it clear that the Postal Service cannot unilaterally strip a duty assignment from one craft and reassign that work or duty assignment to another unless done under the RI 399 mechanism..

MH Ciranni has bid upon another position and does not wish to return to the abolished duty assignment.

### The Postal Service

The Postal Service argued that the duty assignment was abolished for good reason and that under the National Agreement it is up to management to determine the methods it must use to conduct an efficient operation. It argued that it reviewed the work load at the Melville Branch and that there were less than 4 hours.

The Postal Service further argued that what work MH Ciranni was doing is now being done by clerks because it is their work. It argued further that the APWU would have no reason to file a grievance because Mail Handlers were helping them with their work.

In sum, the Postal Service argued that under Article 3 of the National Agreement, management has the sole responsibility to maintain the efficiency of the operation. To that end, the Postal Service argued, it determined that it no longer needed a Mail Handler for 8 hours at the Melville facility and it abolished the position.

The Postal Service asks that the grievance be denied.

3

NPMHU-0060

**DISCUSSION.**

Article 3, Management Rights, provides the Postal Service with exclusive rights, subject to the provisions of the National Agreement, to do the following:

> "3.1 To direct employees of the Employer in the performance of official duties;
> ...
> "3.3 To maintain the efficiency of the operations entrusted to it;
>      and
> "3.4 To determine the methods, means, and personnel by which such operations are to be conducted.
> ..."

Postmaster Mirro testified that he conducted an operational review following increased automation and consolidation. As a consequence and under the provisions of Article 3, all Mail Handler positions and 25 clerk positions in the Melville facility were abolished. Subsequently and after consultation with the Union, the abolishments of the Mail Handler positions, with the exception of duty assignment 96-01, were rescinded. Postmaster Mirro testified further that he was not totally familiar with the circumstances surrounding the formation of MH Ciranni's bid. MH Ciranni testified that there were pretty close to 8 hours of work every day for him to do.

The duty assignment in question was established under the provisions of Article 7.2 A-D wherein tasks from different crafts are combined to establish maximum full-time employment and provide necessary flexibility. The undisputed testimony was that MH Ciranni performed a variety of tasks under duty assignment 96-01. Postmaster Ronald Mirro testified, however, that while he "knew of the duties that MH Ciranni was doing, he did not know why he was doing them because they were clerk duties". Yet, the undisputed testimony and evidence was that the American Postal Workers Union never challenged, under the provisions of RI 399, the appropriateness of the tasks assigned to MH Ciranni. In accordance with the National Memorandum of Understanding Tri-partite Agreement, since no timely challenge was made the work remains under the jurisdiction of the Mail Handler craft.

4

NPMHU-0061

Peter J. Didier, the APWU's Chief Shop Steward, testified that the work that MH Ciranni was doing is still being done at the Melville facility and that, in fact, there is even more Mail Handler work than before. He testified further that to his knowledge the APWU never filed a grievance to take the work from MH Ciranni.

Mail Handler William E. Dockerty testified that he was called over to the Melville facility when MH Ciranni was out and that there was a very high volume of work. He testified that even with consolidation there were easily 8 hours of work per day.

The picture that is created by the testimony of witnesses and the evidence presented is that some automation occurred which may have affected the Melville facility, but that the work done by MH Ciranni continued to be done albeit by clerks.

I find that the APWU never challenged the assignments given to MH Ciranni, thereby acknowledging that they were Mail Handler duties. I find further that while the Postal Service has the right "to determine the methods, means, and personnel by which such operations are to be conducted", there is no provision for abolishing a position in one craft and reassigning the duties to another craft unless the RI 399 tripartite process has been utilized. There was no evidence to indicate that such a process was used.

Therefore, I award as follows:

The Postal Service violated the National Agreement when it abolished Mail Handler craft bid 96-01 in the Melville Substation.

The Postal Service is directed to rescind the abolishment of duty assignment 96-01 and to repost the position at the Melville Substation.

Sarah Cannon Holden

5

REGULAR REGIONAL
ARBITRATION PANEL

In the Matter of Arbitration        )Grievant: Class Action
                                    )
            between                  )Post Office: Riverhead, NY
                                    )
United States Postal Service        )Case No.: A98M-4A-C00108265
                                    )
              and                   )Local No.:      00040
                                    )
National Postal Mail Handlers Union )

Before:  Joseph S. Cannavo, Jr., Arbitrator

Appearances:

        For the Postal Service:  Carmine Palladino
                                 Labor Relations Specialist


        For the Union:           Robert Lussos
                                 Branch President


        For the APWU:            Mike Puterio
                                 Area Rep.

Place of Hearing: Riverhead, New York

Dates of Hearing: May 21, and June 21, 2002

Briefs Filed: August 1, 2002

Date of Award: January 20, 2003

Award: Grievance sustained.

                        Award Summary

The Union established that the Postal Service violated the
National Agreement when it changed the Warehouse position from the
Mail Handler Craft to the Maintenance Craft without following any
of the procedures established in 1992 Memorandum of Understanding.
The Arbitrator also finds that the Postal Service violated a pre-
arbitration agreement which established the Warehouse position as
a Full Time Mail Handler position.  The Maintenance Craft position
shall be abolished and the position shall be re-posted for bidding
by Mail Handlers only.


_____
Joseph S. Cannavo, Jr., Arbitrator

## ISSUE

Did the US Postal Service violate the a pre-arbitration settlement and the National Agreement when it, under a vacancy announcement, provided identical work to the Maintenance craft that was previously preformed by the Mail Handler craft?

## PRELIMINARY STATEMENT

On February 4, 2000 the Union filed a grievance alleging that the Postal Service violated Articles 1, 5, 8, 12 & 19, the LMOU and pre-arbitration settlements and past practices.  The grievance states that the Postal Service violated the Labor Agreement by posting a position identified SPD SP-1009, primary craft, Building Equipment Maintenance as opposed to a re-posting of a position for the Mail Handler Craft pursuant to past, current duties and practices and provided for under a good faith settlement dated October 5, 1999.  The grievance asserts that local Management has established by past and present work practices that the duties normally performed at the Calverton Annex Post Office (warehouse section) has always been performed by the Mail Handler Craft; but that Management has unilaterally (without out Union imput or consultation) under a vacancy announcement dated January 25, 2000 provided this identical work and location to the Building/Maintenance Craft thereby voiding out the Mail Handler Craft as the primary craft to perform such work.  The grievance states that this change in craft jurisdiction violates the

Page 2

NPMHU-0064

National Agreement and that any change in craft jurisdiction must be bargained over with the effected organization; and that when this position/duties was created or established, Management had chosen the Mail Handler Craft as the primary craft to perform such work in accordance with Regional Instruction 399 and Section 1.5 of the National Agreement.  The grievance states that Management can not change unilaterally.  It states that the work preformed by the Mail Handler Craft at the Calverton Annex Warehouse is same or similar as to what will be performed by the Maintenance Craft. The Union requests as a remedy that the Postal Service rescind Posting SP-1009 and re-post the position as identified in the October 5, 1999 pre-arbitration settlement; and that the duties, past and currently performed, shall be deemed as falling within the Mail Handler craft and that restitution for all hours worked by non-Mail Handlers, be paid to the Mail Handler craft.

The Postal Service denied the grievance and although a Step 2 meeting was held on February 28, 2000 a written Step 2 decision was not rendered and a SP Form 2609 simply stated that the job belonged to the Maintenance Craft.

It is from the filing of this grievance and the failure of the parties to resolve it from which this arbitration arises.

Page 3

NPMHU-0065

## THE CONTENTIONS OF THE PARTIES

### The Position of the Union

The Union makes several arguments on its behalf.  First of all the Union states that the issue before the Arbitrator is one of jurisdiction.  The Advocate states that the position in question was assigned to the Mail Handlers and that if the APWU had a problem with the assignment of that position to a Mail Handler, then it should have filed a complaint at the time that a Mail Handler occupied the position; and that this complaint should have been heard in front of an Arbitrator who was selected upon by the parties to hear and adjudicate Regional Instructions 399 Issues.  The Union also refers the Arbitrator to a Memorandum of Understanding dated April 18, 1992 regarding operational changes. The Advocate notes that this memorandum provides that Management will not engage in operational changes for the purpose of effecting the jurisdiction of assignments in a facility; and that it is the intent of the parties to continue craft jurisdictional assignments which are not already the subject of a grievance.  The Advocate notes that contained in this memorandum is the understanding that all local craft jurisdictional assignments which are not already a subject of a pending locally initiated grievance will be deemed as a proper assignment for that facility. The Advocate notes that no grievances were filed by the APWU when the work/work functions were disseminated into a job posting which is distributed throughout the Riverhead facility.  The Advocate

Page 4

NPMHU-0066

states that when the Warehouse position of the Calverton Annex was officially awarded on October 1, 1999, to the Mail Handler Craft as the primary craft to perform such work, no grievances had been filed by the APWU and that no grievance was filed on or after the dates that this hearing was held in May and June, 2002 when a APWU Representative was present. The Advocate further states that no grievance was filed nor was there any objection by any Union or the Postal Service concerning a pre-arbitration Agreement in October 1999 which established that the Warehouse position belonged to the Mail Handlers Craft. The Union states that this settlement Agreement was a good faith Agreement to correct or to establish two remedies, one of which was to convert a PTF to a full time employee who held the Warehouse position for over 6 months; and to create and subsequently post the job for bid. The Advocate notes that the very position that the Mail Handlers and the Postal Service created for the Mail Handler Craft was posted as a Maintenance Craft job and that it was awarded to the very Mail Handler, Steven Barbara, that was the subject of the prior grievance settlement. The Union requests that the position in the Warehouse awarded to Mr. Barbara be abolished and that the Warehouse position be re-posted and opened to Mail Handlers only at the Calverton Annex as provided by Article 12 and the pre-arbitration Agreement. The Advocate also seeks back pay for the time worked in the position by Barbara as a member of another craft Union.

NPMHU-0067

On the basis of the foregoing, the Union prays that the grievance be sustained and that the remedy requested be granted.

### The Position of the Postal Service

The Postal Service argues that there was no violation of the National Agreement and that the Warehouse work falls to the ownership of the Building Maintenance Craft and not to the Mail Handler Craft. The Postal Service argues that under Article 3 of the National Agreement it has the discretion to determine who is to perform what jobs and where and that the Union has failed to establish other contract language that would prohibit the Postal Service from making the determination that the work properly belonged to the Maintenance Craft. The Postal Service also argues that the job description in the Maintenance Craft fits the duties and assignments of the job that was posted and awarded to Steven Barbara.

On the basis of the foregoing, the Postal Service prays the grievance be denied.

Page 6

NPMHU-0068

## DISCUSSION AND OPINION

In matters of alleged contract violation, the burden of proof is on the Union to establish that the Postal Service violated the contract. In order to meet this burden of proof, the Union may rely on the clear and unambiguous language of the contract, if, in fact, it is clear and unambiguous. If the language is not clear and unambiguous, the Union may rely on the intent of the language and try to establish this intent by referring to past practices, and customs and practices in the industry. The Union may also rely on the bargaining history.

After reviewing the arguments, testimony and documentation offered by the parties, the Arbitrator is compelled to sustain the grievance. The reason for this decision is as follows:

The facts of this case are not in dispute. The facts of this case establish that there was a settlement agreement between the Union and the Postal Service establishing a Mail Handler position in the Warehouse and that this occurred in October 1999. The facts of this case further establish that this job was posted and put up for bid and was awarded to a Mail Handler. As correctly pointed out by the Union, herein, the APWU did not object to the posting and awarding of this job to a Mail Handler and did not file a complaint with the Regional Instruction 399 Arbitration Panel. Shortly after the position was awarded to the successful bidder, Mr. Steven Barbara, he voluntarily requested to be reassigned to the Maintenance Craft and his request was approved

Page 7

NPMHU-0069

and that Management decided to also allow Barbara to continue to perform the Warehouse position. The Advocate states to do this, Management had to change the craft of the existing position. The record establishes that Management rescinded the Mail Handler position and re-posted the same position and that Barbara performed the same duties, but in the Maintenance Craft, not in the Mail Handler Craft. The record does not establish that any duties have been added or changed from the time that Barbara held the position as a Mail Handler to now as a Maintenance Craft employee. The Arbitrator finds that Management's reason that the position falls within the jurisdiction of the Maintenance Craft is without foundation. There is no doubt but that prior to October 1999 Management examined the work functions performed by Steven Barbara and declared that assignment falling within the Mail Handler Craft. The Arbitrator finds that nothing has changed that would preclude the Mail Handler Craft as the primary craft to perform this work. Furthermore, the Arbitrator finds that this assignment, prior to the change in crafts, was provided to the Mail Handler Craft in accordance with Section 1.5 of the National Agreement.

The Arbitrator also agrees with the Union and finds that Management has not contradicted the Union and that Management failed to make contact with the Union under the Memorandum of Understanding to discuss the changing of craft jurisdiction. The Arbitrator finds that the Union established a clear violation of

Page 8

NPMHU-0070

the Memorandum of Understanding.  The Arbitrator finds that the Postal Service violated the National Agreement and the Memorandum of Understanding of April 16, 1992 by changing craft jurisdiction without following the principles of that Memorandum.  It is clear from the reading of the Memorandum, that when Management wanted to change from the Mail Handler Craft to the Clerk Craft, they had a procedure to follow; and that if the Arbitrator finds that Management did not follow the procedure, then the remedy is that the position goes back to the Mail Handler Craft.  This is a conclusion that is reasonable for this Arbitrator to reach.

Furthermore, the Arbitrator finds that not only did the Postal Service violated the Memorandum of Understanding and the other provisions of the National Agreement referred to, above, but the Postal Service also violated, ignored, and voided the pre-arbitration settlement of October 5, 1999 which converted the part time position of Mr. Barbara to a full time position and which established that Warehouse position as a part of the Mail Handler Craft.  It is obvious to the Arbitrator that for reasons unknown, Mr. Barbara had a inside track that it cleared the way for him to go from PTF to career employee and from Mail Handler to Maintenance Craft employee.  It appears that this employee should certainly be in Management as he had definitely learned the path to success.  Unfortunately, his last stop was not made in accordance with the rules and regulations established by the parties.

Page 9

NPMHU-0071

Based on the foregoing, the grievance is sustained. The Postal Service is directed to abolish the Warehouse position in the Maintenance Craft awarded to Steven Barbara. Furthermore, this Warehouse position shall be re-posted. As the Mail Handler's Union has certainly been wronged by Barbara and the Postal Service, the Arbitrator feels compelled to leave the bidding for this Warehouse position open only to Mail Handlers.

Thus, consistent with the award of Arbitrator Sarah Cannon Holden in Case No. A98M-4A-C00240743 submitted to the Arbitrator by the Union, the remedy imposed is that the Warehouse position be re-posted to the Mail Handler Craft as stated, above. However, if for any reason the Postal Service decides not to post the position after it abolishes the Maintenance Craft position, it shall pay the Mail Handler Craft for all hours worked by Mr. Barbara as a Maintenance Craft employee

**AWARD**

Grievance sustained.

_____
Joseph S. Cannavo, Jr., Arbitrator

Page 10

NPMHU-0072

REGULAR REGIONAL
ARBITRATION PANEL

In the Matter of Arbitration )
)  Grievant: Class Action
between )
)  Post Office: Mid-Island
United States Postal Service )
)  Case No: A98M-1A-C99126579
and )
)  Local No.:  98-517
National Postal Mail Handlers Union)

Before:  Joseph S. Cannavo, Jr., Arbitrator

Appearances:

    For the Postal Service:  Charles Spina
                         Labor Relations Specialist

    For the Union:  Robert Lussos
                     Branch President

Place of Hearing: Hicksville, New York

Dates of Hearing: June 4, 2001

Brief Filed: July 15, 2001

Award:  In re: Jurisdiction - Grievance Sustained.
        In re: 710 Test - Grievance denied.

Date of Award: November 8, 2001

_____
Joseph S. Cannavo, Jr., Arbitrator

## ISSUE

. Did the US Postal Service violate the National Agreement when it posted the Office Machine Operator Job 98038 for bid to all . employees regardless of craft and including the requirement of the PS Test 710?

## PRELIMINARY STATEMENT

On January 31, 1998 the Union filed a grievance alleging that Management violated the National Agreement when it posted Job Posting 98/038 for all employees regardless of craft to bid on. The grievance states that a Office Machine Operator position shall fall within the jurisdiction of the Mail Handler craft and that irrespective to its detail assignment, shall be limited to the terms and conditions set forth under the Standard Position Description which makes it a Level 5, Primary Bargaining Unit, Mail Handler position. The grievance states that the Postal Service has implemented new changes in the working conditions such that all employees are required to take Postal Service Test 710. In this regard, the grievance states that under the Standard Position Description of the Office Machine Operator there is no such requirement for this test and that on the job training requires an employee to undergo the test. The grievance states that this condition constitutes a change in working conditions which has not been bargained over and is prohibited by the National Agreement and the National Labors Relations Act. The Union requests as a remedy that the position of Office Machine Operator detail or otherwise shall fall only within the ranks of the Mail Handler craft and that the Postal Service be directed to pay back pay for all hours worked by, if applicable, inappropriate

2

NPMHU-0074

personnel performing such assignment.

The Postal Service denied the grievance stating that this bid was posted for the Hauppauge facility and open to all employees to bid on; and that according to the personnel clerk in Hauppauge, this is the way that they did it the last time they put it up. The Step 2 designee states that he has no jurisdiction in this grievance and that he can only answer for bids that he requests for this facility in Hicksville and not Hauppauge.

The grievance was further denied at Step 3 of the grievance procedure and in that denial it is stated that the only evidence submitted by the Union is a Notice dated December 9, 1998 for Job Posting 98/038 to include a job description for Office Machine Operator, MH-05, which was posted under the best qualified process. The denial states that Article 12 does not list this position and that the Union has not provided any evidence to support its argument that Management can not require a test for the position and open the position to all crafts on a best qualified basis. The denial states that the Union has failed to demonstrate the alleged violation of the contract.

It is from the filing of this grievance and the failure of the parties to resolve it from which this arbitration arises.

## THE CONTENTIONS OF THE PARTIES

## The Position of the Union

The Union states that the Postal Service violated the National Agreement when it required employees to bid on the Office Machine Operator to have passed the 710 test and when it posted this job for employees of all crafts. The Advocate for the Union

NPMHU-0075

states that the Office Machine Operator position, detailed or otherwise, falls in the ranks of the Mail Handler craft and that the Postal Service should not be permitted to include un-bargained for qualifications. The Advocate states that this position has always been a Mail Handler job and that its been performed by Mail Handlers. The Advocate notes that Mail Handler Lanyon held this position from the 1970's until the time that he retired in 1992; and that the position became vacant and when it was not posted, the Union filed a grievance claiming that Lanyon's job should be posted for bid. The Advocate also refers the Arbitrator to the Step 2 decision in this matter and notes that it is silent regarding the issue of requiring the applicants to have passed the 710 test. The Advocate states that although there was discussion regarding this topic, it was not addressed by the Postal Service. He therefore concludes that this omission establishes that there should be no requirement for having passed the 710 test. The Advocate also refers the Arbitrator to the 1993 settlement requiring Lanyon's position to be posted for bid. In this regard, the Advocate notes that there was no talk or inclusion in the settlement of additional responsibilities or skills; and that there was simply an agreement to post the job at that time. The Advocate notes that while this job was posted according to the settlement, the posting was withdrawn and later re-posted with no skills required except for the opportunity to take and pass a 710 test. The Advocate notes that this position was open and posted to all qualified employees regardless of craft. The Advocate for the Union states that the Union complained about this and that the Postal Service amended the posting and made the job a Mail Handler

4

NPMHU-0076

position with the presentation of Office Machine Operator, MH-05.
In regards to this grievance, the Union states that there is no
dispute except that there was a "Job Announcement" but not a bid
position. The Union notes that Management wanted this to be a
Best Qualified Position with the passing of the 710 test and that
on November 8 the job was awarded to Clerk Demerest and that this
clerk still occupies that position. The Union refers the
Arbitrator to the Standard Job Description and argues that this
establishes that the position of Office Machine Operator falls
under the jurisdiction of the Mail Handler's Union and craft. The
Advocate argues that if Management makes this a new position, then
Section 1.5 - New Positions of the National Agreement should be
followed. The Union argues that when Mail Handler Lanyon retired,
the position changed to the extent that Management added the
requirement of having passed the 710 test without bargaining with
the Union.  In this regard, the Advocate for the Union argues that
Article 5 of the National Agreement has been violated as
Management changed the unit craft position. Additionally, the
Advocate for the Union argues that ELM 511.523 makes the
requirement of the 710 test inappropriate as, according to sub-
paragraph e, it unduly restricts the number of eligible candidates
or favors a particular candidate. The Advocate states that adding
this test has nothing to do with the position and that it is clear
that Management wants to steer this job out of the Mail Handler
craft.  The Advocate argues that if this job is given to a non-
Mail Handler, that person must become or that person becomes a
Mail Handler.  The Advocate also refers the Arbitrator to ELM
524.4 - Best Qualified PS positions noting that this section of

5

NPMHU-0077

the ELM provides that the best qualified positions must be posted for promotional opportunity in accordance with the appropriate provision of the Labor Agreement and that this section does not cover those positions controlled by ELM 524.3; and that this posting must, importantly to the Union, designate the craft, in accordance with the provisions of applicable Collective Bargaining Agreement.  In this regard, the Advocate for the Union argues that the provision in question, that of the Office Machine Operator, has been a Mail Handler position; should be designated as such; and should be open for bid to Mail Handlers; and now if the job is filled by a clerk, that clerk should become a Mail Handler.  The Union requests as a remedy that this job be awarded to a Mail Handler and that if it has been awarded to a clerk, that the Mail Handler be paid out of schedule pay until the situation is corrected.

On the basis of the foregoing, the Union prays that the grievance be sustained and that the remedy requested be granted.

## The Position of the Postal Service

The Postal Service argues that it did not violate the National Agreement when it created a skill requirement of passing the 710 test and awarding the job to a Clerk.  The Advocate for the Postal Service notes that the Union filed a grievance when a Clerk was awarded the position when this was a Mail Handler's position.  The Advocate states that this clerk took over at the end of 1993 and that at that time it did not provide that this was a Mail Handler position.  The Advocate further notes that in 1998 the Union filed a grievance because of a posting of a detail for

6

this position for all crafts. The Advocate for the Postal Service states that the person who got the detail was a Mail Handler and that this makes any remedy moot. Referring to a Bargaining Unit Qualification Standard dated November 30, 1987, the Advocate for the Postal Service notes that this document requires passing the test 710 and that the positions will be posted for application by employees of any craft and that selection will be made on a Best Qualified basis. The Advocate further notes that there are two Office Machine Operator positions and that the Mail Handler craft is omitted from the bargaining unit that this position covers. The Advocate notes that as there are two positions, the second position omits the Mail Handler craft and obviously does not include them, while the position with Occupation Code 01XX is exclusively for the Mail Handlers. The Advocate states that the Union grieved job 01XX. However, he notes that job 02XX was put up on the job posting 98/038 in 1998. The Advocate argues that the Union has to establish that the Postal Service did something wrong. He states that the Step 2 decision is not applicable and that the remedy is not appropriate because a Mail Handler was awarded that position in February 1999 and that she continues to be a Mail Handler. The Advocate notes that even though the posting for job 02XX did not include Mail Handlers, the posting was open to all employees and that Mail Handlers could bid on the job and a Mail Handler got the job. In this regard, the Advocate states that it is the other Union that should be grieving. As such, the Advocate also states that this is a case of just a misunderstanding and that there is no violation of the National Agreement.

NPMHU-0079

On the basis of the foregoing, the Postal Service prays that the grievance be denied.

### DISCUSSION AND OPINION

In matters of alleged contract violation, the burden of proof is on the Union to establish that the Postal Service violated the contract. In order to meet this burden of proof, the Union may rely on the clear and unambiguous language of the contract, if, in fact, it is clear and unambiguous. If the language is not clear and unambiguous, the Union may rely on the intent of the language and try to establish this intent by referring to past practices, and customs and practices in the industry. The Union may also rely on the bargaining history.

The matter before the Arbitrator is one of craft jurisdiction. In this grievance, the Union contends that as the Mid-Island P&DC Management has opened a Mail Handler craft position to all crafts. That position is Office Machine Operator - PS 5. The Union asserts that this position falls within the jurisdiction of the Mail Handler Craft, Standard Positions Description/Occupational Code 0350-01xx - SP 1035, Level 5. The Union also argues that Management has implemented changes in the working position with additional conditions such as all employees are required to take a Postal Service test titled 710. In this regard, the Union requests that the Arbitrator remove the test requirements from the position. Obviously, the Union also requested that this be deemed a Mail Handler craft position exclusively.

There is no doubt but that the job that was posted on

8

NPMHU-0080

December 9, 1998 was for Job Posting #98/038 and that this was in accordance with a job description for Office Machine Operator, MH-05 with Occupational Code 0350-01xx and that this was to be a best qualified position.   The Occupational Code was identified during the posting and during the grievance procedure and duly noted in the Step 3 denial.   It is this "01xx" designation in the Occupational Code that compels the Arbitrator to sustain the grievance in regards to the Union's position that this job is to be within the exclusive jurisdiction of the Mail Handler craft. This determination is based on the history developed by the Postal Service and the Mail Handler's Union dating back to at least 1993. At that time, the Postal Service posted a job announcement for the position of Office Machine Operator PS-05.   This posting was dated July 19, 1993 and it also included the opportunity for all applicants to take and pass Postal Service Test 710.   However, on July 23, 1993 a corrected posting was made and the correction made was from PS-05 to MH-05.   This posting too also contained the opportunity for all applicants to take and pass the Postal Service Test 710.   It also provided that if the successful applicant is from a different craft that seniority will be determined in accordance with Mail Handler's National Agreement.   The Arbitrator notes that this Office Machine Operator, MH-05 position is contained in the Standard Position Description with the Occupational Code 0350-01xx.

Once the Postal Service acknowledged, as it did in the Step 3 denial, that the position was for the Occupation Code with the designation "01xx", that job was to be a Mail Handler-05 position. This is distinguished from the Office Machine Operator, PS-05 job

NPMHU-0081

with Occupational Code 0350-02xx. That position would properly
not be within the exclusive jurisdiction of the Mail Handler
Craft. Furthermore, that position provides that the successful
applicant is responsible to a designated supervisor and directs
the work of two or more office clerks. There is no indication
that that was what was contemplated for the posting in the instant
case which took place in 1998. On December 9, 1998 a job posting
for a Office Machine Operator, PS-05 was posted and awarded to a
Clerk. Nothing in the record indicates that the successful bidder
would direct or supervise two or more employees. What is more,
the posting of this position was inspired by the retirement of an
employee who was a Mail Handler and who held the job previously.
Additionally, that Mail Handler retired and vacated the job was
replaced pursuant to the settlement of a grievance where it was
determined that the Postal Service violated the agreement when the
vacant assignment was not posted in accordance with Article 12.3.b
of the National Agreement. From 1993 to 1998 the position was
filled on a detail and there was never two or more employees
working the operation. Consequently, the record establishes that
a Mail Handler got the job after a clerk was on the detail.
Again, the Arbitrator notes that the history of this job is for
the "01xx" designation in the Occupational Code. As such, the job
falls under the jurisdiction of the Mail Handler's Union.

On the basis of the foregoing, the Arbitrator sustains the
grievance in regards to the jurisdiction of this position.

However, the Arbitrator is compelled to deny the grievance in
regards to the Union's complaint that the Postal Service violated
the National Agreement by requiring and giving employees the

NPMHU-0082

opportunity to take the Postal Service Test 710. The Arbitrator finds that Article 3 permits the Postal Service to determine what qualifications are necessary for an employee to perform a job and therefore be awarded and stay on a new position. Nothing in the record indicates that the Postal Service abused its discretion by setting forth this qualification. What is more, this particular qualification has been in existence since at least 1993 and was not proven onerous then and not complained about by the Union at that time. As such, the Postal Service acted within its discretion and its rights to require the passing of the Postal Service Test 710.

On the basis of the foregoing, this portion of the grievance is denied.

## AWARD

In re: Jurisdiction - Grievance Sustained.

In re: 710 Test - Grievance denied.

NPMHU-0083