UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, )<br><br>Plaintiff, )<br><br>v. )<br>(RBW/ak)<br><br>NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, )<br><br>and )<br><br>UNITED STATES POSTAL SERVICE, )<br><br>Defendants. ) | Case No. 1:05-CV-01290 |

# Exhibit 14 to Hill Declaration

*My Copy*

| | |
|---|---|
| In the Matter of Arbitration Between          ) | |
| )  | |
| **U.S. Postal Service** ) | **Before:** |
| **(Brooklyn, NY)** ) | **Honorable Eric J. Schmertz** |
| )  | **Arbitrator** |
| **and** ) | |
| )  | |
| **American Postal Workers Union** ) | |
| )  | |
| **and** ) | |
| )  | |
| **National Postal Mail Handlers Union** ) | |
| ——————————————— ) | |

**Post-Hearing Brief Filed on Behalf of the U.S. Postal Service**

Re: Arbitrability of Grievance Case # A90M 1A-J 94010505 (Union # 93-107)
    Arbitrability of Grievance Case # A90M 1A-J 94010504 (Union # 93-203)

Hearing Date: February 18, 2005

*B. Peek*
_____
**Betty Peek**
**Labor Relations Specialist**
**U.S. Postal Service**
**1050 Forbell Street – Room 2011.2**
**Brooklyn, NY 11256-9401**
**(718) 348-3223**
**March 2, 2005**

1

NPMHU-0105

**Introduction**

At issue are two grievances that were filed in October of 2003 by the NPMHU - Local 300 at the Brooklyn P&DC. The grievances pertained to the union's claim that when facilities in Brooklyn were consolidated, management gave the work in the label room and duplicating room to clerks. The union alleges that this work had been done by mail handlers prior to the consolidation. The grievances were later sent to the RI-399 forum for adjudication in 1999.

**Issues Presented**

A hearing in the RI-399 forum was scheduled for January 21, 2005. At the outset of this hearing, the Postal Service and the APWU raised separate and distinct threshold issues of arbitrability and contended that the instant disputes/grievances are not properly at arbitration. The Service contends that both of these cases were untimely filed.

The reason for the Service's position is that in a letter dated November 24, 1992, management and the union agreed to hold in abeyance all crossing crafts and RI-399 grievances for a period of 120 days. On February 3, 1993, Timothy Healy, then plant manager of the Brooklyn P&DC, formulated a letter to "clarify" this agreement. This clarification letter was done as the result of a request from Local 300. The clarification letter assigned a specific date for the filing of such grievances, that date being March 26, 1993. The original agreement letter dated November 24, 1992 and the subsequent "clarification" agreement letter dated February 3, 1993 are both signed by the plant manager, Timothy Healy, and a Local 300 representative. As the moving party, these

2

NPMHU-0106

documents are part of the NPMHU's (Local 300) own case file. This is the basis of the Service's position that the disputes/grievances are not arbitrable.

Consequently, Mr. Arbitrator, the RI-399 cases that were brought before you on January 21, 2005 were initiated as grievances in October of 1993, nearly a full seven (7) months after the filing date stipulated by the signed agreement dated February 3, 1993. The filing of the disputes/grievances is untimely; therefore, the Postal Service contends that the instant disputes/grievances are not arbitrable and requests that the instance cases be rejected.

**Summary of the Facts**

The RI-399 Dispute Resolution Procedures MOU was signed by all three parties on April 16, 1992 and established the procedures for resolving jurisdictional disputes. The Brooklyn facility consolidation took place in July of 1992. The agreement letter between management and the NPMHU at the Brooklyn P&DC stipulating that the crossing-craft and RI-399 grievances would be held in abeyance for 120 days was signed on November 24, 1992. A clarification letter stipulating the specific date to file a grievance as March 26, 1993 is signed by both parties and dated February 3, 1993. The instant grievances are filed on October 16, 1993 and October 18, 1993, seven months after the agreed upon filing date.

**Arguments**

On February 18, 2005, the NPMHU submitted a brief to respond to the APWU and Service's arbitrability arguments. On page 3 of the opening statement, it states that the two local documents submitted by the Service (Exhibit S-2 and S-3) are "of no consequence at all to the instant cases." Here the union is referring to the two agreement

3

letters mentioned above that were signed by the plant manager and a representative of the NPMHU (Local 300). If these documents are of no consequence as the union claims, then why did the union make them part of their case file? There is also a third letter in the case file (see Exhibit A), on NPMHU stationary, that references these very same documents that the union now wants to discard as of *no consequence*. The third letter just referenced is dated May 11, 1994 and by its date indicates that the letter (as well as the two agreement letters previously mentioned that came attached), appear to have been added to the case file *after* the grievance was appealed to arbitration. The letter is dated May 11, 1994 and the grievance was appealed to arbitration on April 4, 1994. The Service contends that this may be why the timeliness issue was not raised earlier when the grievance was first initiated. These agreement letters were probably not in the original case file. Mr. Arbitrator, please keep in mind that these cases are (12) twelve years old and there is no guarantee that the case file has not been changed over this long period of time. These case files have always been in the custody of the union.

Also on page 3, the union states (in bold type) that the "individual fact circumstances giving rise to the grievances did not develop until just before the filing of the two grievances circa 10/16/93." This is simply not true. A review of the case file shows that the Step 2 appeal dated 10/18/93 states the union's grievance as follows: "The union contends that management has been staffing the label room with clerks since the building opened in 1992." (See exhibit B). Clearly, the fact circumstances developed in 1992 and not circa 10/16/93 as the union states.

4

On page 4 (middle passage) of their response, the union abandons the arbitrability issue altogether and makes statements and offers exhibits that disregard the arbitrability issue and go into the merits of the cases.

On the lower part of page 4 and top of page 5, the union references the Step 1 Grievance Summary (Form 2608) that management uses to answer grievances at the Step 1 level. The union points out that the grievances were deemed timely at Step 1 by the Step 1 designee. However, the designee could only respond to the grievance as it was presented to him. In the case file, there is no hard copy of the original initiated grievance as it was presented at Step 1. We do not know if in the original grievance the union cited specific dates or a specific time period that they contend the infraction occurred. This information would have allowed the Step 1 designee to determine whether the grievance was timely filed or not. Since the original grievances that were filed by the union at Step 1 are not part of the case files we cannot know for a fact that they contained the same wording as the Step 2 appeal. It is not uncommon for the union to add or change language in the Step 2 appeal that differs from the original initiated grievance. Additionally, if the agreement letter that established the time frame for filing a grievance on this issue was not introduced into the case file until May 11, 1994, then the Step 1 designee may not have even been aware of the agreement and therefore could not have raised a timeliness issue at that time.

On page 6, the union references the point at which the grievances were scheduled for arbitration while they were still in the Article 15 process. After being scheduled for regular arbitration, the cases were referred to the RI-399 dispute process by Doug Dawson, the management labor advocate who determined that neither of the positions

5

were on the installation inventory, and based on this (see Exhibit C) requested that the two grievances be referred to the RI-399 Regional Resolution Committee. The union contends that this referral was an acknowledgement by Mr. Dawson that the grievances were timely filed. The Service disagrees with the union's assumption. Once again, there is no way to determine when the agreement letters or the third letter dated May 11, 1994 entered the case files, so there is no way to know whether Mr. Dawson was aware of the agreement signed by the union that set the 14-Day grievance filing period to begin on March 26, 1993. The union cannot speak for Mr. Dawson and say, as they have said on page 6, that he knew the cases were not untimely. The only person who can say what Mr. Dawson actually knew is Mr. Dawson himself.

On page 7, the union states that "the entire grievance record indicates that the grievance was timely from beginning to end." However, the absence or omission of the original initiated grievance from the case file indicates that we may not have the *entire* grievance record.

The NPMHU has also included an APPENDIX B – ARBITRATION DECISIONS SAME OR SIMILAR IN NATURE wherein they submit three arbitration awards in support of their position in regard to the merits of the instant grievances. In regard to these arbitration awards submitted by the NPMHU in its opening statement, the Service has several objections. Beginning with the award by Arbitrator Sarah Cannon Holden dated June 10, 2002, (Case # A98M-4A-C 00240742) the Service contends that the arbitrator should disregard this award first of all because it does not address an **arbitrability** issue, which is what the union's brief was supposed to address, and secondly because it is not presented in its entirety (there appears to be a page missing –

6

page 2). With this award, the NPMHU is once again diverting from the **arbitrability** issue and plunging headlong into the merits of the instant grievance. As the arbitrator repeatedly pointed out to the NPMHU on the day of the hearing, the purpose of the hearing was to allow the NPMHU to respond to the **arbitrability** issues raised by the APWU and the Service, not to address the merits of the case. That notwithstanding, the Holden award is not on point with the instant grievance, but instead addresses the abolishment of a mail handler position, which is not the same/similar issue as the instant grievance. The Holden award was not a dispute about craft jurisdiction. Additionally, there was never a bid job position posted or awarded for the disputed label room and duplicating room duties referenced in the instant grievance, subsequently the remedy applied in the Holden award would not apply.

As to the arbitration award by Arbitrator Joseph S. Cannavo, Jr., dated January 20, 2003, (Case # A98M-4A-C 00108265) once again the NPMHU is submitting an award that has nothing to do with arbitrability. Once again, the NPMHU deliberately deviates from the threshold issue of arbitrability and tries to steer us into the heart of the matter at hand, which has not yet been officially opened for discussion. And, like the Holden award, the Service contends that this award should also be disregarded. However, since it has been presented, and if the arbitrator should feel inclined to consider it, the Service offers that like the Holden award, the issues in the Cannavo award are not the same or similar issues in the instant grievance. In his discussion and opinion, Arbitrator Cannavo says that he sustained the mail handler's grievance because there was a prior settlement agreement that established a mail handler position for the work assignment in question. In that case, the position was posted, bid on, and awarded to the

7

successful mail handler who bid on it. In the instant grievance, no such agreement exists. Furthermore, as the Service has previously stated in reference to the instant case, there is not now, nor has there ever been an established bid job assignment in the label room or in the duplicating room.

The third arbitration award submitted by the NPMHU is also an award by Arbitrator Cannavo dated November 8, 2001 (Case # A98M-1A-C 99126579). Just as with the two awards mentioned above, the union once again has submitted an arbitration award that has absolutely nothing to do with arbitrability. While this arbitration award does pertain to a one-party jurisdictional grievance, the NPMHU is being premature in offering this award since the merits of the instant grievance have not been officially put up for discussion. This second Cannavo award is also dissimilar to the instant grievance because in that case the disputed work assignment had been vacated by a retired mail handler who held an official bid job assignment in the disputed work area. Mr. Arbitrator, I repeat the following for emphasis: As stated above, there is not now, nor has there ever been, in this facility or the previous facility, any bid job assignments for mail handlers in the label room or in the duplicating room.

**Conclusion**

In summation, based on the above contentions, the arbitrator should rule that the disputes are not arbitrable.

8

NPMHU-0112

 

**United States
Postal Service**

February 3, 1993

Ms. Amesha Hargrove
Administrative Vice President
Mailhandlers Union
Local 300 Brooklyn Branch
1050 Forbell Street
Mezzanine
Brooklyn, NY  11256

To clarify some issues concerning our agreement signed
November 24, 1992, I understand that the mailhandlers
organization would like to add the following three
points:

1.  The 120 day grievance "moratorium" provides
    the new Plant Manager and the Union the
    opportunity to immediately upon
    identification, the chance to resolve craft
    assignment and jurisdictional disputes.

2.  Disputes that are not so resolved, will be
    identified and Article 7 and/or RI 399
    Grievances will be filed after March 25,
    1993.

3.  The 14 Day filing period shall begin March
    26, 1993.

I agree to these 3 points and I hope it clears up any
concerns that the mailhandlers organization may have.
If you agree, please sign in the area indicated below
and return this letter to my office. Thank you for
your continued support and cooperation.

Timothy C. Healy
Plant Manager
Processing & Distribution
Brooklyn GMF

Amesha Hargrove
Admin. Vice President
Local 300
Mailhandlers Union

In order to resolve Crossing Craft grievances and RI-399 issues, we need to review our current Mailhandler Staffing. We recognize that we are short of career Mailhandlers at the present time and we will hire an additional (30) Mailhandlers. This will be done in addition to maintaining the casual cap limit.

Hopefully, these actions will provide us the proper staffing in order to perform all Mailhandler functions effective and efficently as possible. As with any changes in staffing, there need to be an evaluation and adjustment period in order to fine tune staffing requirements.

For this purpose, it is mutually agreed that the Mailhandlers Union will hold all Crossing Craft and RI-399 grievances for 120 Days, commencing with the signing of this agreement. It is duly noted, any grievances filed pertaining to the above mention areas, will not after the 120 Day period, be considered (waived). This period will allow Union/Management to review any violations that are not in conformation with the National Agreement or staffing needs where additional Mailhandlers may be needed.

If the Mailhandlers Union does not agree with the " total staffing package," any violation will be subject to the Grievance Procedures as defined in Article 15 of the National Agreement. All Crossing-Craft or RI-399 grievances will be considered retroactive from the dated of this agreement.

This agreement is mutually understood by the signing parties.

Timothy C. Healy
Plant Manager
Processing & Distribution
Brooklyn GMF

Daisey Bonknight
A/Administrative Vice-President
Mailhandlers Union
Local #300 Brooklyn Branch

Dated:   November 24, 1992

EXHIBIT  S-1

LABOR RELATIONS SPECIALIST
LABOR RELATIONS OFFICE

 **UNITED STATES**
**POSTAL SERVICE**

Raymond Sokolowski
N.E. Regional Director-
N.P.M.H.U.
82A Prospect Hill Road
Windsor, CT  06095 – 1570                    February 16, 1999

Dear Mr. Sokolowski:

The following two grievances are scheduled for arbitration in Brooklyn, NY for March
2, 1999 before Arbitrator Sarah Holden:

|  |  |  |
|---|---|---|
| A90M-1A-C  94010504 | 93M385 | Class Action |
| A90M-1A-C  94010505 | 93M384 | Class Action |

# 93M385 refers to an R.I. – 399 complaint about what craft should staff the
duplicating room at the Brooklyn GMF.

# 93M384 refers to an R.I. – 399 complaint about what craft should staff the label
making room at the Brooklyn GMF.

Neither position is referred to in the *Installation inventory of Mail Processing
Operations* signed on September 15, 1992 by representatives of both the A.P.W.U.
and the Mail Handler Unions.

Therefore, I am requesting that these two grievances go to the R.I. 399 Regional
Dispute Resolution Committee and be taken off the Arbitration Docket for March 2,
1999. There are other cases on the docket that will go forward.

*Douglas Dawson*
Douglas Dawson
Labor Relations Specialist
Brooklyn, NY

cc:      Mario Rubino          Arbitration Coordinator, Windsor, Ct.
         Tom Stanziale         AVP  Brooklyn, NY
         Helene Moore Kondek   Sr. Labor Relations Specialist
         Harry Johnson         Area Labor Relations Specialist

1050 FORBELL STREET
BROOKLYN, NY 11256-9401
(718) 348-3224
FAX (718) 348-6890

**EXHIBIT** *C*

NPMHU-0115

Group Leaders Division of the Laborers' International
Union of North America, AFL-CIO

RECEIVED
PR RELATIONS
MY 11256-9401

Pursuant to Article XV, Section 2, this form must be used to appeal a grievance to Step 2.

-2 PM 1:15

# STANDARD GRIEVANCE FORM

| DATE 10/18/93 | BRANCH GRIEV NO. 93-107 | USPS NO. |
|---|---|---|

| TO: U.S.P.S. STEP 2 DESIGNEE (NAME & TITLE) LILLIAN McPHUL | INSTALLATION G.M.F. | PHONE – OFFICE |
|---|---|---|

| FROM: LOCAL UNION BRANCH NO. 300 | BUSINESS ADDRESS 1050 Forbell St. Brooklyn N.Y. 11254 | |
|---|---|---|

| STEP 2: AUTHORIZED UNION REP. Robert Bosalavage | PHONE – OFFICE | PHONE – OTHER |
|---|---|---|

| STEP 1 MEETING: HELD ON (DATE/TIME) | BETWEEN: U.S.P.S. REPRESENTATIVE | AND: GRIEVANT AND/OR STEWARD BOSALAVAGE |
|---|---|---|

| GRIEVANT'S NAME (OR CLASS) CLASS | | PHONE |
|---|---|---|

| HOME ADDRESS | CITY | STATE | ZIP |
|---|---|---|---|

| JOB CLASSIFICATION MAILHANDLER | CRAFT SENIORITY DATE | SERVICE SENIORITY DATE | DUTY HOURS |
|---|---|---|---|

| INSTALLATION, STATION OR BRANCH G.M.F. | SOCIAL SECURITY NO. | | VETERAN ☐ YES ☐ NO |
|---|---|---|---|

| OFF DAYS FIXED [ ] CHECK AS APPLICABLE | SA | SU | M [ ] | T [ ] | W [ ] | TH [ ] | F [ ] | LEVEL | STEP | REG. | OTHER | OCC. | PTF | PTR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

| STEP 1: DECISION | RENDERED ON (DATE, TIME) | BY (NAME & TITLE) | SUPERVISOR'S INITIALS (UPON REQUEST) |
|---|---|---|---|

PURSUANT TO ARTICLE XV OF THE NATIONAL AGREEMENT, WE HEREBY APPEAL TO STEP 2 THE FOLLOWING GRIEVANCE

VIOLATION: INCLUDING BUT NOT LIMITED TO NATIONAL ART. & SECT. _____ ; LOCAL (ART. & SECT.) _____

OTHER GROUNDS _____

FACTS AND UNION CONTENTIONS: DATE, TIME & LOCATION _____

WHAT HAPPENED  THE UNION CONTENDS THAT MANAGEMENT HAS BEEN STAFFING THE LABEL ROOM WITH CLERKS
SINCE THE BUILDING OPENED IN 1992. THE JOBS IN THE LABEL ROOM ARE CLEARLY MAILHANDLER
FUNCTIONS AND ARE LISTED AS FOLLOWS: STANDARD POSITIONS 2-578, 2-579, 2-580, 2-581 & 2-632

☐ ADDITIONAL SHEET ATTACHED

CORRECTIVE ACTION REQUESTED:  THE UNION REQUESTS THAT MANAGEMENT CEASE USING CLERKS IN THE LABEL
ROOM AND POST THE JOBS FOR BID FOR THE MAILHANDLER CRAFT.

| ADMINISTRATIVE VICE PRESIDENT OR STEWARD | SIGNATURE Robert Bosalavage |
|---|---|

# EXHIBIT B

NPMHU-0116

# NATIONAL POSTAL MAILHANDLERS UNION
## LOCAL 300 - BROOKLYN
1050 Forbell Street, Brooklyn, N.Y. 11256
Telephone 348-9030/3802

*Mike J. Nash*
**Administrative Vice President**

*Robert Bosalavage*
**Chief Shop Steward**

DATE:     May 11, 1994

SUBJECT:     RI-399/Disputed Operations
Label Room and Duplicating Room

Dear Mr. Guttaraduro;

Local 300 is citing the following 2 operations, Lable room and Duplicating room, as in dispute for jurisdictional assignment for the following reasons;

Previous to consolidating the Brooklyn Postal Facilities into the Brooklyn General Mail Facility both the Label room and Duplicating room were designated as mailhandler assignments and fully staffed with regular mailhanders.  This consolidation took place on July 7, 1992.

Prior to moving into the new facility both Local 300 and management agreed to hold grievance in abeyance, see attached marked A and B.  Upon completing the inventory for this facility, the job assignments, craft, were not included and Local 300 and management continued to attempt to resolve the jurisdiction of these operations "Label-Duplicating Room".

Having failed to resolve this problem, Local 300 filed grievances for these operations on October 16, 1993 and October 18, 1993 (copy attached marked C and D).  Note that Step 2 decisions on both grievances clearly state that "There are no authorized positions in the Brooklyn Processing and Distribution Center".  Note Step 3 decisions state that these positions are not identified in the building inventory.

Brooklyn management has attempted to add these operations to the RI-399 agreement through the use of an addendum, to which Local 300 was not a party too and did not sign off on.  Copies attached of documentation, marked E and F, are grievances filed by Local 300 on the cited operations.

Respectfully,

*M. T. Nash*

Mike T. Nash
A.V.P., Local 300
Brooklyn

EXHIBIT *A*

NPMHU-0117

*9*

NPMHU-0118