UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br> (RBW/ak) <br><br> NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, <br><br> and <br><br> UNITED STATES POSTAL SERVICE, <br><br> Defendants. | Case No. 1:05-CV-01290 |

# Exhibit 15 to Hill Declaration

```
RI-399 REGIONAL JURISDICTIONAL
DISPUTE ARBITRATION PANEL
------------------------------------X
                                    :
IN THE MATTER OF THE ARBITRATION    :
                                    :
           between                  :
                                    :
NATIONAL POSTAL MAIL HANDLERS UNION :     OPINION AND AWARD
                                    :
           -and-                    :
                                    :     A90M-1A-J94010505
AMERICAN POSTAL WORKERS UNION       :
           -and-                    :     A90M-1A-J94010504
                                    :
UNITED STATES POSTAL SERVICE        :     ARBITRABILITY
                                    :
------------------------------------X
```

Before Eric J. Schmertz, Arbitrator:

Appearances:          For the NPMHU:

                      Mr. Lawrence Hill

                      For the APWU:

                      Mr. Michael E. LaPoint

                      For the U.S. Postal Service

                      Ms. Betty Peek

Place of Hearing:     Brooklyn GMF; Brooklyn, New York

Dates of Hearing:     January 21st, February 18th, 2005

The jurisdictional issues in dispute involve the staffing of the facility's Label room and Copy room. They are presently staffed with clerks of the Postal Workers Union. The Mail Handlers Union asserts that the staffing should be with its Mail Handler members.

However, at the threshold is the contention of non-arbitrability by both the Postal Service and the Postal Workers.

All parties agreed that the Arbitrator would first decide the arbitrability issues.

I find, for the following reasons that both issues are arbitrable under the collective bargaining agreement between the Mail Handlers and the Service, but not arbitrable under the tripartite RI-399 procedures.

In both circumstances, I find that the inaction and action of the Service resulted in the aforesaid arbitrability and non-arbitrability determinations.

Originally, the Mail Handlers filed grievances under the collective bargaining agreement with the Service in October 1993 protesting the clerk assignments to the Label room and the Copy room. The grievances alleged a "violation of Articles 7.2 and 12 of the National Agreement." The two grievances were processed to and through the contractual steps of the grievance procedure, and were denied by the Service.

2

Thereafter, still in accordance with the contractual grievance procedure, the two disputes were on December 30, 1998 certified by the Service and the Mail Handlers for arbitration before Arbitrator Sarah Holden and scheduled for a hearing on March 2, 1999.

However, prior to the hearing dates, by unilateral, but undisputedly proper action by the Service, and by letter dated in February 1999, Douglas Dawson, the Service's Labor Relations Specialist removed these cases from the contract Arbitration Docket and referred both to the RI-399 forum:

Under both of the two foregoing procedures, the clerks and the Service contend that the contractual grievances and the "class action" under RI-399 were both untimely and hence not arbitrable on the merits.

But for the Service's inaction in the handling of the grievances under the collective bargaining agreement, that non-arbitrability defense would be upheld. The staffing of the Copy room and Label room with clerks was commenced at the Brooklyn facility in early July, 1992. The Mail Handlers grievances were not filed until a year and three months later, in October 1993. Under an Agreement letter of February 3, 1993 this delay would have made these grievances untimely. The pertinent part of that

3

letter Agreement, signed by the Mail Handlers Administrative Vice President and the Service's Plant Manager provided.

> To clarify some issues concerning our agreement signed November 24, 1992, I understand that the mailhandlers organization would like to add the following three points:
>
> 1. The 120 day grievance "moratorium" provides the new Plant Manager and the Union the opportunity to immediately upon identification, the chance to resolve craft assignment and jurisdictional disputes.
>
> 2. Disputes that are not so resolved, will be identified and Article 7 and/or RI-399 Grievances will be filed after March 25, 1993.
>
> 3. The 14 Day filing period shall begin March 26, 1993.

In other words, the Mail Handlers were given 14 days to file grievances, under the contract from the starting date of March 26, 1993. Clearly the grievance dates of October 1993, far exceeded that 14-day statute of limitations.

However, at no point during the processing of the grievance did the Service raise an objection or even call attention to the apparent untimeliness of the grievances. Under Article 15.3B of the collective bargaining agreement, a failure to so object or raise the issue of untimeliness constituted a waiver of that defense. Article 15.3B reads:

> "The failure of the employee or the Union in Step 1, or the Union thereafter to meet the prescribed time limits of the Steps

4

of this procedure, including arbitration, shall be considered as a waiver of the grievance. **However, if the Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employer or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived."** (Emphasis added).

So, when the two grievances were referred to arbitration before Arbitrator Holden and scheduled for a hearing (after clearing the steps of the grievance procedure) the Service lost and waived what non-arbitrability defense it may have had.

As to the RI-399 procedure, that defense, asserted by the clerks (and apparently joined in by the Service) was not waived and therefore obtains. However, inadvertently, I am sure, but unquestionably, Mr. Dawson's referral of those issues to the RI-399 forum was at a time which a fortiori made the disputes non-arbitrable in that forum. Dawson's referral was effective on its receipt by the Mail Handlers on February 22, 1999. By that date, and not until that date, did the time limits of RI-399 have any applicability. But they now did, with the referral of the disputes to the RI-399 forum.

The Service calls attention to a letter of November 24, 1992, signed by the Mail Handler's Administrative Vice President and the Services Plan Manager (respectively Daisey Bouknight and Timothy C. Healy) which read in pertinent part:

> In order to resolve Crossing Craft grievances and RI-399 issues, we need to review our current Mailhandler Staffing. We recognize

5

> that we are short of career Mailhandlers at the present time and we will hire an additional (30) Mailhandlers. This will be done in addition to maintaining the casual cap limit.
>
> Hopefully, these actions will provide us the proper staffing in order to perform all Mailhandler functions effective and efficiently as possible. As with any changes in staffing, there need to be an evaluation and adjustment period in order to fine tune staffing requirements.
>
> For this purpose, it is mutually agreed that the Mailhandlers Union will hold all Crossing Craft and RI-399 grievances for 120 Days, commencing with the signing of this agreement. <u>It is duly noted, any grievances filed pertaining to the above mention areas, will not after the 120 Day period, be considered (waived)</u>. This period will allow Union/Management to review any violations that are not in conformation with the National Agreement or staffing needs where additional Mailhandlers may be needed. (emphasis added)

I am constrained to hold that this agreement between the Mail Handlers and the Service is enforceable by the Service as between these two entities and hence applicable between them in this case under RI-399.

The referral of these grievances to the RI-399 Forum placed in issue whether the Mail Handlers grievances were filed within the prescribed 120 day period. They were not. October 1993 is eleven months later. Whether Mr. Dawson knew this when he referred the disputes to the RI-399 forum, I do not know. But, clearly the <u>effect</u> of his action was to place the Mail Handlers in

6

a forum which at the time they were so placed, made their jurisdictional claims regarding the Copy room and the Label room untimely and hence not arbitrable.

The effect of Mr. Dawson's action was to deny the Mail handlers access to a due process forum, either under RI-399 or under the collective bargaining agreement. And I deem that, unfair, albeit probably inadvertent.

I do not have the authority to ignore the RI-399 time limits, because to do so would be to amend or vary the agreement of the parties, and that is proscribed. But I do have the authority to reinstate or reactivate the adjudicatory forum in which the disputes remain arbitrable - namely the arbitration provisions of the collective bargaining agreement between the Mail Handlers and the Service. In doing so, the rights of the Postal Workers who are not party to that arbitration, are expressly reserved.

### AWARD

The grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum.

DATED: March 23, 2005

Eric J. Schmertz
Arbitrator

7

STATE OF NEW YORK    )
                     ss:
COUNTY OF NEW YORK   )

    I, Eric J. Schmertz do hereby affirm upon my Oath as Arbitrator that I am the individual described in and who executed this instrument, which is my AWARD.

*[signature]*