UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AMERICAN POSTAL WORKERS UNION, AFL-CIO, | ) ) ) ) |  |
| Plaintiff & Counterclaim Defendant, | ) ) |  |
| v. | ) ) ) |  |
| NATIONAL POSTAL MAIL HANDLERS UNION, A DIVISION OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO, | ) ) ) ) ) ) | No. 1:05-CV-01290 (AK) |
| Defendant & Counter-Claimant, | ) ) |  |
| and | ) ) |  |
| UNITED STATES POSTAL SERVICE, | ) ) ) |  |
| Defendant & Cross-Claim Defendant. | ) ) |  |

## MEMORANDUM OPINION

Pending before this Court are cross-motions for summary judgment by Plaintiff American Postal Workers Union ("APWU" or "Plaintiff") and Defendant National Postal Mail Handlers Union ("NPMHU" or "Defendant").[1]  Defendant United States Postal Service (the "Postal Service") opposes NPMHU's motion for summary judgment (the "NPMHU Motion") [22], which requests confirmation of an underlying arbitration award, while the Postal Service assents

---

[1] The parties consented to this case being referred to the undersigned for all purposes and trial.  (*See* February 21, 2006 Minute Order by the Honorable Reggie B. Walton, referencing the Meet and Confer Statement [17].)

-1-

to APWU's motion for summary judgment (the "APWU Motion") [21], which requests that such award be vacated, or alternatively, that the case be remanded to the arbitrator for clarification of his award.  A hearing on these two Motions was held on December 7, 2006, and during that hearing, the parties discussed the fact that the arbitrator who entered the Opinion and Award no longer serves as an arbitrator.  At the conclusion of the hearing, the Court directed the parties to provide supplemental briefing on the issue of the unavailability of the original arbitrator and whether this fact would preclude a remand.  The parties provided this Court with their supplemental briefs in late December 2006.[2]  Upon careful consideration of the arguments presented by the parties, for reasons set forth below, APWU's Motion [21] is DENIED, and NPMHU's Motion [22] is GRANTED, with the effect that the arbitration award is confirmed.  An appropriate Order accompanies this Memorandum Opinion.

## I. Background

In their Statements of Material Facts Not in Dispute, both the NPMHU and APWU set forth extensive background information, summarized as follows.  The NPMHU and the APWU are labor organizations representing employees of the Postal Service.  (NPMHU Statement of

---

[2]In their supplemental briefing, the Postal Service reiterates its request that the arbitration award be vacated and the case be remanded to the arbitration panel for a *de novo* hearing; the NPMHU reiterates its request that the arbitration award be affirmed and the APWU takes the position that "the appropriate remedy is not for the Court to remand for arbitration but to vacate the [arbitrator's] [a]ward or deny enforcement of the [arbitrator's] [a]ward (which will have the same effect)." (Position of APWU on Remand to an RI-399 Regional Arbitrator [31] at 2.)  The Court notes that merely vacating the arbitration award without remanding it to the arbitration forum may preclude the NPMHU from obtaining any determination on the merits of this issue since the dispute relates to grievances originally filed in October 1993, and it is unclear whether NPMHU could seek any relief at this late date.

Undisputed Material Facts ("Statement") at ¶1.)[3] The Postal Service recognizes NPMHU and APWU as the collective bargaining representatives for all mail handlers and clerical employees, respectively. (*Id.* at ¶¶2-3.) The Postal Service has entered into separate collective bargaining agreements with the NPMHU and APWU (also known as the NPMHU-USPS National Agreement and the APWU-USPS National Agreement, respectively). (*Id.* at ¶4.) The grievance procedure is separate for each union under each collective bargaining agreement. (APWU Statement of Undisputed Material Facts ("Statement") at ¶2.) Article 15 of each collective bargaining agreement sets forth the procedure for bringing and processing grievances under such agreements. (NPMHU Statement at ¶5.)

In 1979, the Postal Service issued Regional Instruction No. 399 ("RI-399") delineating the criteria for making craft assignments; i.e., whether the clerk craft or the mail handler craft will be assigned to carry out various functions. (NPMHU Statement at ¶7, APWU Statement at ¶2.) On April 16, 1992, the two unions and the Postal Service entered into an tripartite agreement entitled "Memorandum of Understanding" ('MOU") pertaining to RI-399 Dispute Resolution Procedures (APWU Statement at ¶3.) Following the adoption of the RI-399 Dispute Resolution Procedures in 1992, jurisdictional disputes were to be resolved by tripartite Dispute Resolution Committees, or by arbitration, if not resolved by the Committees. (NPMHU Statement at ¶10; APWU Statement at ¶4.) Disputes regarding the performance of work in violation of the craft assignments, which are referred to as "cross-craft" or "crossing craft" grievances, were still to be brought as grievances under Article 15 of the collective bargaining

---

[3]In citing to specific paragraphs contained in the parties' statements of undisputed material facts and to pages from the parties' pleadings, the Court will not reiterate the underlying supporting citations to the record referenced therein.

agreements. (NPMHU Statement at ¶11.)[4]

The dispute underlying this case arises from an arbitration award, issued by an arbitrator, Eric Schmertz, (hereinafter, the "Arbitrator") in favor of NPMHU. The arbitration was set for the purpose of resolving two grievances that were originally filed in October of 1993 by members of Local 300 of the NPMHU, pursuant to its collective bargaining agreement with the Postal Service. These grievances challenged the Postal Service's decision to staff the Label Room and Duplicating Room of the Brooklyn General Mail Facility with clerical employees represented by APWU, rather than mail handlers represented by NPMHU. (NPMHU Motion, Exh. 9 [Declaration of Lawrence Hill] at ¶18.] [5]

In November 1993, and again in March 1994, the Postal Service denied the grievances during various stages of the contractual grievance procedure, and accordingly, the grievances were

---

[4]For purposes of clarification, the NPMHU explains that:

A jurisdictional dispute is one in which the grievant union seeks either to change what it acknowledges to be an established craft assignment in the other union's favor, or to determine an undecided craft assignment; whereas a cross-craft dispute is one in which the grievant union seeks to enforce what it contends is an established craft assignment in its favor.

(NPMHU Reply at 3, n.1.) During the period 1979 through 1992, NPMHU and APWU filed their grievances under their respective collective bargaining agreements if they "believed that the Postal Service mistakenly assigned functions to the other craft." (APWU Statement at ¶3.) If the grievance was not resolved during the grievance procedure, it would subsequently be heard by an arbitrator selected by either NPMHU and USPS or APWU and USPS, and the party who was not involved in the arbitration might seek to intervene in such arbitration. (APWU Memorandum in support of Motion at 4.) If the arbitrator did not allow intervention, the other union could file its own grievance. (*Id.*)

[5]Lawrence Hill is an Executive Board Member for NPMHU Local 300, which represents Mail Handlers in New York, New Jersey and Connecticut. Mr. Hill has also been an arbitration advocate for Local 300 since 1987, and has served as a Shop Steward and Chief Shop Steward for Local 300. (Exh. 7 at ¶¶ 1-2.)

then certified for arbitration and scheduled for a March 1999 hearing. (Hill Declaration at ¶¶19-21.) In February 1999, approximately six years after the grievance procedure commenced and about one month prior to scheduled arbitration, the Postal Service unilaterally referred the grievances to the RI-399 dispute resolution process because it believed that the grievances presented jurisdictional disputes.[6] (APWU Statement at ¶6; NPMHU Statement at ¶¶20-21.)

In accordance with the RI-399 dispute resolution process, the grievances were referred to the Local Dispute Resolution Committee but because they were not resolved by such Committee, they were then scheduled for arbitration before Arbitrator Eric Schmertz, who served on a panel of arbitrators appointed by NPMHU, APWU, and the Postal Service. (Hill Declaration at ¶¶23-24; APWU Motion, Exh. 1 [Declaration of Michael Gallaher] at ¶6.) Arbitrator Schmertz held hearings on January 21, 2005 and February 18, 2005. (Hill Declaration at ¶25.) In an Opinion dated March 23, 2005, the Arbitrator determined that "[t]he grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room [at the Brooklyn, New York General Mail Facility] are arbitrable under the [Mail Handlers'] collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum." (APWU Motion, Exh. 3 to Gallagher Declaration [Opinion and Award] at 7.) APWU and the Postal Service challenge the Arbitrator's decision.

The parties agree that the sole issue to be determined by this Court is whether the Arbitrator exceeded his authority by remanding the NPMHU's grievances for further processing

---

[6]NPMHU asserts that the underlying grievances were presented by the NPMHU as cross-craft grievances because the grievances alleged that the disputed work "clearly [encompassed] Mail Handler functions" and "cited five specific USPS national standard position descriptions encompassing those functions." (NPMHU Reply at 3; *see* Exh. 7 at NPMHU 0048-49 [grievances], NPMHU 0041-47 [five USPS national standard position descriptions.])

under the grievance procedure contained in the bilateral collective bargaining agreement between NPMHU and the Postal Service, and consequently, whether the Arbitrator's award should be affirmed or vacated.

## II. Legal Standard

### A. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the pleadings and evidence show that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-52 (1986). In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. However, the nonmoving party must present more than a "scintilla of evidence" and must come forward with specific facts that would enable a reasonable jury to find in its favor. *Id*. at 252; *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the evidence presented by the nonmoving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Under Fed. R. Civ. P. 56(c), a court should grant summary judgment if "the pleadings, depositions, answers to interrogatories and admissions . . ., together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. at 323; *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Although a court should draw all reasonable inferences from the records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Anderson v. Liberty Lobby, Inc.*,

477 U.S. at 248.  The nonmoving party must demonstrate specific facts in the record which create a genuine issue as to a material fact to oppose the motion for summary judgment.  The party opposing summary judgment must adduce evidence which, when considered in light of his burden of proof at trial, could be a basis for the jury finding for the nonmoving party.  *Alcman Services Corp. v. Bullock*, 925 F. Supp. 252, 256 (D.N.J. 1996), *aff'd,* 124 F. 3d 185 (3d Cir. 1997).  To be genuine, the issue must be supported by admissible evidence such that a reasonable trier of fact could find for the nonmoving party; to be material, the factual assertion must be capable of affecting the substantive outcome of the litigation.  *See Anderson*, 477 U.S. at 248; *see also Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment.  The nonmoving party bears the affirmative duty to present, by affidavits or other means, specific facts showing that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 248-49.  The adverse party must do more that simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Review of Arbitration Awards

It is well established that the scope of review of labor arbitration awards is "extremely narrow."  *APWU v. USPS,* 52 F.3d 359, 361 (D.C. Cir. 1995).  *See also Utility Workers Union of Am., Local 246 v. NLRB,* 39 F.3d 1210, 1216 (D.C. Cir. 1994) (Review of labor arbitration awards calls for "the greatest deference imaginable . . . "); *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17*, 531 U.S. 57, 62 (2000) (Such awards may be set aside only "in rare instances.")  "A reviewing court is only to decide whether the grievance is arbitrable, and, if so,

whether the arbitrator's award 'draws its essence from the collective bargaining agreement.'" *Washington Hospital Center v. Service Employees International Union Local 722*, 796 F. Supp. 574, 576 (D.D.C. 1992) (citing *United Steelworkers of America v. Enterprise Wheel & Car Co.*, 363 U.S. 593, 597 (1960)). *See also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37 (1987) (quoting *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 (1960)) (In reviewing labor arbitration awards, a court has "no business weighing the merits of the grievance [or] considering whether there is equity in a particular claim. . . . ") Similarly, an "arbitrator's view of the issues submitted to him for arbitration therefore receives the same judicial deference as an arbitrator's interpretation of a collective bargaining agreement." . *Madison Hotel v. Hotel Employees Restaurant Employees International Union, Local 25,* 144 F.3d 855, 857 (D.C. Cir. 1998).

In cases where "[a]n arbitration award [ ] fails to draw its essence from the collective bargaining agreement[,]" the award cannot stand. *Id*., 144 F.3d at 858 (citing *United Steelworkers of America v. Enterprise* Wheel, 363 U.S. at 597). The arbitrator's award "cannot simply reflect the arbitrator's own notions of industrial justice." *United Paperworkers Int'l Union*, 484 U.S. at 38. The arbitrator is not prohibited from looking beyond the express provisions of the contract and consider the parties' past practices, industry practices, and the structure of relevant agreements, in the course of formulating an award. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-81 (1960). "An arbitrator cannot, [however,] 'render [ ] a judgment based on external legal sources, wholly without regard to the terms of the parties' contract'" *Madison Hotel*, 144 F.3d at 859 (quoting *American Postal Workers Union v. United States Postal Service*, 789 F.2d 1, 8 (D.C. Cir. 1986)). "But as long as the arbitrator is even

-8-

arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

The Supreme Court has held that ambiguity is not a reason to refuse to enforce an arbitration award, even in the case where the ambiguity permits an inference that the arbitrator may have exceeded his authority. *Enterprise Wheel*, 363 U.S. at 598. "Arbitrators have no obligation to the court to give their reasons for an award." *Id.* Even if the basis for an arbitrator's decision is ambiguous, courts are not entitled to review the merits of the underlying contract dispute. *See W.R. Grace & Co. v. Local Union 759, Int'l Union*, 461 U.S. 757, 764 (1983).

The "scope of an arbitrator's authority is itself a question of contract interpretation that the parties have delegated to the arbitrator." *Id.*, 461 U.S. at 765; *see also Madison Hotel*, 144 F.3d at 857. The arbitrator's conclusions regarding the scope of his authority are thus entitled to judicial deference similar to that given to an arbitrator's interpretation of a collective bargaining agreement. *Id.*

### III. ANALYSIS

The Arbitrator began his inquiry into the staffing dispute grievances by noting that the threshold issue was the "contention of non-arbitrability [asserted] by both the Postal Service and the Postal Workers." (Opinion and Award at 2.) The Arbitrator explained that after the two grievances were processed through the NPMHU's collective bargaining agreement with the Postal Service, they were denied by the Service. (*Id.*) In accordance with that grievance procedure, the grievances were then certified for arbitration by the Postal Service and the NPMHU, on December 30, 1998, and scheduled for a March 2, 1999 hearing [before a different arbitrator].

Approximately one month prior to that hearing date, however, "the [Postal] Service's Labor Relations Specialist removed these cases from the contract Arbitration Docket and referred both to the RI-399 forum." (*Id.* at 3.)

During the arbitration proceeding, APWU and the Postal Service asserted that the grievances " under RI-399 were both untimely and hence not arbitrable on the merits." (*Id.*) The Arbitrator noted that the NPMHU did not file its grievances protesting clerk assignments until October 16, 1993, even though the staffing of the Copy room and Label room commenced at the Brooklyn facility in July 1992. (Opinion and Award at 3. ) APWU and the Postal Service argued that "under [the] MOU on Dispute Resolution Procedures [dated April 16, 1992], the MHU was required to have filed grievances by April 29, 1992, over the work in question for the dispute to be heard, unless there was an operational change, new work in a new facility, or a new facility or consolidation of facilities." (APWU Statement at ¶7.) APWU and the Postal Service accordingly concluded that because the NPMHU 's dispute was not filed by the April 29, 1992 deadline, and the work in dispute was not new work, or work being done at a new facility, or work resulting from an operational change, "the dispute was not arbitrable." (*Id.*)[7] The Arbitrator concluded that NPWHU's grievances were not timely filed but in so doing, "[t]he arbitrator did not rule on this [particular] argument." (APWU Statement at ¶7.) Instead, the Arbitrator agreed with an alternative argument propounded by the Postal Service.

The Postal Service [alternatively] relied on a bilateral agreement between NPMHU and itself, which set deadlines applying to both cross-craft grievances and jurisdictional disputes, in

---

[7]The position advanced by the Postal Service and the APWU seeks a determination that would deprive the NPMHU of any opportunity for a resolution on the merits of its grievances.

support of its contention that the grievances were not timely. That bilateral agreement, dated November 24, 1992, provided that "the Mailhandlers Union will hold all Crossing Craft and RI-399 grievances for 120 Days, commencing with the signing of this agreement [,] [then,] any grievances filed pertaining to the above mention[ed] areas [ ] will not after the 120 Day period, be considered [ ]."(Opinion and Award at 6, quoting November 24, 1992 Letter Agreement)

The Arbitrator noted that "[t]he [February 22, 1999] referral of these grievances to the RI-399 Forum placed in issue whether the Mail Handlers grievances were filed within the prescribed 120 day period [and] [t]hey were not [because] October 1993 is eleven months later [than the November 1992 Letter Agreement.]" (APWU Statement at ¶8, Opinion and Award at 6.) In his Opinion and Award, the Arbitrator also referenced a Letter Agreement dated February 3, 1993, which attempts to clarify some issues concerning the November 24, 1992 Letter Agreement, and states in pertinent part that "[d]isputes that are not so resolved, [pursuant to the 120 day grievance 'moratorium'] will be identified and Article 7 and/or RI-399 Grievances will be filed after March 25, 1993 [and] [t]he 14 Day filing period shall begin on March 26, 1993." (Opinion and Award at 4, quoting February 3, 1993 Letter Agreement.) The Arbitrator found that the grievance filing dates of October 1993 clearly "exceeded that 14-day statute of limitations." (Opinion and Award at 4.)

The Arbitrator subsequently addressed the issue of waiver [of the untimeliness], which was raised by NPMHU during the hearing. (NPMHU Statement at ¶25.) The Arbitrator found that the Postal Service's failure to object to the untimeliness of the grievances "constituted a waiver of that defense" pursuant to the collective bargaining agreement and accordingly, the disputes could

still be resolved pursuant to the collective bargaining agreement. (Opinion and Award at 4-5.)[8]

The Arbitrator found that waiver did not similarly apply in the RI-399 forum, because "[a]s to the RI-399 procedure, that defense [of untimeliness], asserted by the clerks (and apparently joined in by the Service) was not waived and therefore obtains." (Opinion and Award at 5.) The Arbitrator thus determined that: "[t]he grievances of the Mail Handlers, regarding the staffing of the Label room and the Copy room are arbitrable under the collective bargaining agreement with the Postal Service but not arbitrable in the RI-399 Forum." (Opinion and Award at 7.)[9]

> APWU argues that:
>
> The [arbitrator's] decision [that the MHU dispute was beyond his jurisdiction to consider] was correct, but not for the reasons he gave. The arbitrator exceeded his authority, which is limited to resolving disputes under the Dispute Resolution Procedures established under the MOU, by enforcing a void bilateral agreement between the MHU and the Postal Service.

(APWU Memorandum in support of Motion at 14.)

---

[8] Article 15.3B of the collective bargaining agreement states in part that "if the Employer fails to raise the issue of timeliness at Step 2, or at the step at which the employer or Union failed to meet the prescribed time limits, whichever is later, such objection to the processing of the grievance is waived." (Opinion and Award at 4-5, quoting Article 15.3B.)

[9] In the instant case, "the grievances were treated as cross-craft grievances by the Postal Service and the NPMHU for more than five years, and they were scheduled for arbitration as cross-craft grievances under the NPMHU-USPS National Agreement in 1999." (NPMHU Reply at 3-4.) The grievances were then unilaterally transferred to the RI-399 forum by the Postal Service one month prior to the arbitration scheduled pursuant to the NPMHU collective bargaining agreement. The Postal Service proffers no reason why it waited over five years to make a determination that the grievances were jurisdictional in nature, thus necessitating a transfer to a forum where such grievances would be considered untimely. The Arbitrator found that the [Postal Service's] transfer of the disputes to the RI-399 arbitration process effectively "den[ied] the Mail handlers access to a due process forum, either under RI-399 or under the collective bargaining agreement." (Opinion and Award at 6-7.) During the arbitration, NPMHU sought to have the grievances remanded to the Article 15 process [the grievance-arbitration provision of the NPMHU-USPS National Agreement].

This Court is charged with the task of determining whether the arbitrator exceeded his authority in referring the grievances to the grievance-arbitration process under the NPMHU's collective bargaining agreement with the Postal Service. APWU requests that this Court overturn the Arbitrator's award in this case on grounds that the Arbitrator's award was "in violation of the jurisdiction conferred on the arbitrator by the MOU on Dispute Resolution Procedures" based upon their contentions that: 1) under the terms of the MOU, "all bilateral agreements such as the one relied on by Arbitrator Schmertz are null and void;" 2) the MOU supplants the grievance procedures under the collective bargaining agreement "with respect to all jurisdictional disputes;" 3) the Arbitrator was not empowered to direct a dispute to grievance resolution other than resolution under the MOU; and 4) the MOU did not give the Arbitrator jurisdiction to make a determination that the dispute could be heard under the collective bargaining procedures. (APWU Statement at ¶11.)[10]

Contentions numbered 1 and 2 above are undisputed or inconsequential to the determination of whether the Arbitrator exceeded his authority when he returned the grievances to the collective bargaining forum. As a preliminary matter, the parties acknowledge that bilateral agreements set forth the procedures used to resolve cross-craft disputes while jurisdictional disputes are resolved pursuant to the procedures set forth in the MOU. NPMHU does not dispute

---

[10]The Postal Service indicates that:
[it] agrees with the APWU's first argument that bipartite agreements, such as the one the arbitrator relied upon here in concluding that the NPMHU's grievances were untimely in the RI-399 forum, that purport to cover jurisdictional disputes between the three parties in the RI-399 process are null and void under the applicable tripartite agreements.

(Postal Service Opposition to NPMHU Motion and Response to APWU Motion at 5.) This is inconsistent with the argument made by the Postal Service at the hearing before Arbitrator Schmertz.

-13-

APWU's contention that "the bilateral agreement in question was void to the extent that it purported to alter the parties' obligations with respect to the time limits for asserting jurisdictional claims." (NPMHU Reply at 13.) NPMHU asserts however that the Arbitrator's reliance on that agreement was "harmless error" because the Arbitrator "*agreed* with the APWU and the Postal Service that the NPMHU's alternative jurisdictional claims were time-barred *even under the extended time limit* [and] [t]hus, the APWU and Postal Service [cannot] argue that they were harmed by the Arbitrator's reliance . . . , but complain only that the Arbitrator gave the wrong reason for reaching the correct result on the timeliness issue presented." (NPMHU Reply at 14; *see* APWU Opposition at 2 [recognizing that the decision that the Mail Handlers' dispute was not arbitrable in the RI-399 forum was correct but not for the reason given].) NPMHU asserts that "[h]armless error is *not* a valid ground for vacatur of an arbitration award." (Reply at 14, citing *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 243 (3d Cir. 2005); *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128, 1134 (9th Cir. 2003)).

With regard to APWU's contention number two above, all three parties agree that "the RI-399 dispute resolution procedures set forth in the parties' tripartite agreements are the agreed-upon procedures for resolving jurisdictional disputes among the parties." (Postal Service Opposition/Response at 7, citing APWU and NPMHU Briefs.) [11] The parties disagree however on whether the underlying grievances involve jurisdictional or cross-craft disputes, and such disagreement was not specifically resolved by the Arbitrator, when he concluded that the

---

[11] The parties also acknowledge that "[e]ven after 1992, where the craft assignment, or jurisdiction, of work has already been decided, disputes over the performance of work in violation of craft assignments are still brought as grievances under Article 15 of the National Agreements." (NPMHU Statement at ¶11.)

grievances could be arbitrated under the collective bargaining agreement, without making a specific finding that such grievances constituted cross-craft grievances. The Postal Service argues that the Arbitrator "did not determine that the dispute presented by the grievances was not jurisdictional in nature [and,] [t]o the contrary, two of [his] statements from the Award strongly suggest . . . the polar opposite . . . ." (Postal Service Opposition and Response at 7-8.) The Postal Service focuses on two statements by the Arbitrator, which are taken out of context, and uses them to support its assumption that the Arbitrator considered the dispute to be jurisdictional in nature.

This Court finds that even though the Arbitrator's Opinion and Award fails to specify whether the grievances involve cross-craft or jurisdictional disputes, this deficiency does not invalidate the Award and mandate a remand to the Arbitrator [or an arbitration panel.] *See Sargent v. Paine Webber Jackson & Curtis, Inc.*, 882 F.2d 529, 532-33 (D.C. Cir. 1989) (where the D.C. Circuit ordered the district court to confirm an arbitration award, holding that "arbitral awards may be made without explanation" and it is the district court's duty to confirm an award when the arbitration record discloses a "permissible route" to the arbitrator's stated conclusion. In *Sargent*, the district court had ordered a remand to the arbitration panel on grounds that "in the absence of an explanation it could not be sure that the arbitrators had not exceeded their powers." 882 F.2d at 532 (internal quotation marks omitted.)   Nor should this Court make an independent determination regarding the classification of grievances but rather, this Court's inquiry focuses on whether there is a lawful "possible interpretive route" to the Arbitrator's decision to return the NPMHU's grievances to the Article 15 process. *Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc.*, 935 F.2d 1501, 1506 (7th Cir. 1991). *See also W.R. Grace & Co.*, 461 U.S. at

764 (finding that courts are not entitled to review the merits of a contract dispute even if the basis of the arbitrator's decision is ambiguous.)

APWU contends that the Arbitrator was not empowered to direct a dispute to grievance resolution because this would have entailed a determination that there was a cross-craft dispute whereas in this case, "the only issue the parties submitted to Arbitrator Schmertz was whether the jurisdictional dispute before him was timely, and [therefore] this was the only issue he decided." (APWU Opposition [26] at 4.) APWU explains that the focus of the Arbitrator was "timeliness, not whether the dispute was in reality a cross-craft grievance." (APWU Opposition at 5.) This assertion contradicts the language of the Opinion and Award, wherein the Arbitrator states that he "would *first* decide the *arbitrability issues*." (Opinion and Award at 1.) (Emphasis added.) NPMHU suggests that there is nothing in the Award that limits the first phase of arbitration to consideration of timeliness and in fact, "the issues of timeliness and the proper forum were inextricably intertwined here, given the Arbitrator's finding that the Postal Service waived its timeliness objection within the Article 15 process but not within the RI-399 forum." (NPMHU Reply [28] at 9-10, n.4.) A review of the Arbitrator's Opinion and Award indicates that he considered the issue of arbitrability to encompass issues of timeliness of the grievances and waiver of any untimeliness in both the collective bargaining forum and the RI-399 forum. In connection with his determination that the RI-399 time limits prohibited the parties from proceeding in that forum, he recognized that he did not have authority to ignore those limits. He did however note that he "[had] authority to reinstate or reactivate the adjudicatory forum in which the disputes remain arbitrable - namely the arbitration provisions of the collective bargaining agreement between the Mail Handlers and the Service." (Opinion and Award at 7.)

The Arbitrator's assertion of authority is consistent with NPMHU's position during the hearing that the Arbitrator could refer the disputes back to the Article 15 grievance process under the NPMHU-USPS collective bargaining agreement. (NPMHU Statement at ¶26.)  NPMHU specifically noted that returning the dispute to the Article 15 grievance process would be consistent with the August 2000 Settlement Agreement's provision stating that "grievances not dealing with jurisdictional issues shall not be referred to the RI-399 Dispute Resolution Procedures and, if such cases already have been referred, shall be removed from the RI-399 Dispute Resolution Procedures for further processing under the terms of Article 15 of the appropriate National Agreement." (NPMHU Memorandum at 8.)  In its Memorandum, NPMHU references several cases in which arbitrators have determined that they have the authority to return a grievance to the contractual grievance process under Article 15 of the relevant National Agreement, where such cases involve underlying cross-craft grievances.[12] (NPMHU Memorandum at 18.)

In this case, APWU and the Postal Service fail to adequately demonstrate that the Arbitrator lacked the authority to transfer these grievances back to the Article 15 forum, and

---

[12]NPMHU notes that, in another case involving Arbitrator Schmertz, the APWU took a position contrary to its argument herein when it requested that certain disputes be adjudicated under Article 15 of the collective bargaining agreement between the APWU and the Postal Service, and it was acknowledged by the parties therein to be within the arbitrator's authority to return a grievance to the Article 15 process where such case involved a cross-craft grievance. (NPMHU Memorandum at 18.)

therefore that the Award should be vacated or the case remanded.[13]  While the Award is not a model of clarity in explaining the reasons for the transfer, the Award should be confirmed because the Arbitrator's determination drew its "essence" from the relevant labor contracts. *W.R. Grace & Co.*, 461 U.S. at 765; *Madison Hotel*, 144 F.3d at 858.  This Court further finds that the Arbitrator's Award is entitled to deference because there was a "possible interpretive route" to his Award, *Chicago Typographical Union,* 935 F.2d at 1506, consistent with the August 2000 Settlement Agreement and prior arbitration awards in which arbitrators returned certain grievances to an alternate forum.  *See United Steelwokers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580-81 (whereby an arbitrator may take into account the parties' past practices, industry practices and the structure of relevant agreements in fashioning his award.)[14]


DATE: February 21, 2007                    _____/s/_____
                                           ALAN KAY
                                           UNITED STATES MAGISTRATE JUDGE

---

[13]APWU does not address NPMHU's assertions regarding the August 2000 Settlement Agreement or the cases in which arbitrators have returned grievances to another forum.  The Postal Service claims that such cases are inapposite insofar as they support the proposition that "an RI-399 arbitrator may return only non-jurisdictional disputes to the Article 15 grievance-arbitration process" and this case involves a jurisdictional dispute. (Postal Service Opposition [23] at 9, n.3.)

[14]The Postal Service argues that "courts [regularly] choose to remand ambiguous awards to the arbitrator for clarification." (Postal Service Opposition at 11, string citing cases.)  In the instant case, while the Arbitrator's explanation for the "remedy" he selected is not unambiguous, the Award is not ambiguous because it clearly provides that NPMHU's grievances should be returned to the Article 15 forum for resolution of claims asserted in those grievances.